STEPHEN T. O'NEILL (115132)
ROBERT A. FRANKLIN (091653)
THOMAS T. HWANG (218678)
DORSEY & WHITNEY LLP
305 Lytton Avenue
Palo Alto, CA 94301
Telephone: (650) 857-1717
Facsimile: (650) 857-1288
Email: oneill.stephen@dorsey.com
Email: franklin.robert@dorsey.com
Email: hwang.thomas@dorsey.com

Attorneys for Debtors

BROWN RUDNICK LLP
CATHRINE M. CASTALDI (156089)
HOWARD L. SIEGEL (pro hac vice)
R. BENJAMIN CHAPMAN (pro hac vice)
2211 Michelson Drive, Seventh Floor
Irvine, CA 92612
Telephone: (949) 752-7100
Facsimile: (949) 252-1514
Email: ccastaldi@brownrudnick.com
Email: hsiegel@brownrudnick.com
Email: bchapman@brownrudnick.com

Attorneys for Official Committee of Unsecured Creditors

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

In re:

**CEP REORGANIZATION, INC.,**
formerly known as
ClearEdge Power, Inc.,
Employer Tax I.D. No. 20-0119415

**CEP REORGANIZATION, LLC,**
formerly known as
ClearEdge Power, LLC
Employer Tax I.D. No. 06-1517615

**CEP SERVICE REORGANIZATION, LLC,**
formerly known as
ClearEdge Power International Service, LLC
Employer Tax I.D. No. 27-3468551

Debtor(s).

1202 Kifer Road, Suite 100
Sunnyvale CA 94086

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No. 14-44191-CN-11

Case No. 14-44192-CN-11

Case No. 14-44193-CN-11

Cases Jointly Administered
Under Chapter 11

**AMENDED DISCLOSURE STATEMENT
FOR JOINT CHAPTER 11 PLAN OF
DEBTORS AND OFFICIAL COMMITTEE
OF UNSECURED CREDITORS
(Dated May 14, 2015)**

Date: June 18, 2015
Time: 10:30 a.m.
Place: 1300 Clay Street, Room 215
Oakland, CA 94612
Judge: Honorable Charles Novack

TTH
H:\Client Matters\- F&R\ClearEdge\PI\CE Inc\DS\5-14-15\v8.docx

AMENDED DISCLOSURE STATEMENT FOR JOINT CHAPTER
11 PLAN OF DEBTORS AND OFFICIAL COMMITTEE OF
UNSECURED CREDITORS (DATED MAY 14, 2015)

Case: 14-44191    Doc# 665    Filed: 05/14/15    Entered: 05/14/15 12:25:55    Page 1 of
109

# **TABLE OF CONTENTS**

Page

ARTICLE I.    INTRODUCTION ..................................................................................................1

ARTICLE II.    DEFINITIONS .....................................................................................................2

ARTICLE III.    SUMMARY OF PLAN TREATMENT ..............................................................2

   3.1    The Chapter 11 Process. ...............................................................................................2
   3.2    Voting Instructions........................................................................................................3
   3.3    Confirmation Hearing. ..................................................................................................3
   3.4    No Substantive Consolidation. ....................................................................................3
   3.5    Means of Implementation of the Plan. ........................................................................6

          3.5.1    Sale Proceeds. ................................................................................................6
          3.5.2    Continued Corporate Existence; Vesting of Assets of CEP. ........................6

   3.6    Specific Treatment. ......................................................................................................8

ARTICLE IV.    THE BANKRUPTCY FILING ........................................................................12

ARTICLE V.    HISTORY AND PRESENT POSTURE OF THE CASE ..................................13

   5.1    History and Description of the Business.....................................................................13
   5.2    Events Precipitating the Bankruptcy Filing. .............................................................13
   5.3    Significant Events During The Bankruptcy Cases .....................................................14

          5.3.1    Purchase Transaction With Doosan. ............................................................14
          5.3.2    Secured Lenders. ..........................................................................................16
          5.3.3    Reconciliation and Resolution of Claims. ...................................................19
          5.3.4    Income Tax Issues. .......................................................................................20
          5.3.5    Retention of Professionals. ..........................................................................21
          5.3.6    Allowance of Fees of Court-Appointed Professionals.................................22
          5.3.7    Appointment of Responsible Person.............................................................22
          5.3.8    Rejection of Real Property Leases. ..............................................................22
          5.3.9    Rejection of Executory Contracts. ...............................................................23
          5.3.10  Assumption of Executory Contracts .............................................................24
          5.3.11  Other Bankruptcy Administration Matters. ..................................................24
          5.3.12  Pending Litigation........................................................................................25

   5.4    Assets and Liabilities. ................................................................................................25

          5.4.1    Liens; Debtors' Secured Debts. ...................................................................26
          5.4.2    The Debtors' Unsecured Debts. ...................................................................33

ARTICLE VI.    CLAIMS AND EQUITY INTERESTS AND TREATMENT UNDER THE PLAN33

   6.1    Administrative Claims. ...............................................................................................34

          6.1.1    Description. ...................................................................................................34
          6.1.2    Administrative Claims – Estimate. ...............................................................34
          6.1.3    Administrative Claims (Excepting Fee Claims) – Treatment........................35
          6.1.4    Administrative Claims (Excepting Fee Claims) – Deadline for Requests for Payment............................................................................................................36

TTH
SF Claims\Mirabilis.Ltd\Clean\DS\Off COM\DS\5-14-Redline.docx

Case 14-44193    Doc# 665    Filed 05/14/15    Entered 05/14/15 21:51:55    Page 2 of
109

AMENDED DISCLOSURE STATEMENT FOR JOINT
PLAN FILED BY DEBTORS AND OFFICIAL COMMITTEE
OF UNSECURED CREDITORS (DATED MAY 14, 2015)

      6.1.5   Administrative Claims (Fee Claims) – Treatment ...................................36
      6.1.6   Administrative Claims (Fee Claims) – Deadline for Requests for Payment ...36

6.2    Tax Claims. ...................................................................................................37

      6.2.1   Description. ................................................................................37
      6.2.2   Tax Claims – Treatment. ..........................................................37

6.3    Class 1:  Secured Claim of Sale Proceeds Lienholders. ..........................38

      6.3.1   Description (Class 1 Under the Plan). .......................................38
      6.3.2   Secured Claims of Sale Proceeds Lienholders – Treatment. .........38

6.4    Other Secured Claims. ..................................................................................38

      6.4.1   Description (Class 2 Under the Plan). .......................................38
      6.4.2   Other Secured Claims – Treatment. ..........................................38

6.5    Priority Claims. .............................................................................................39

      6.5.1   Description (Class 3 Under the Plan). .......................................39
      6.5.2   Employee Priority Claims – Treatment. ...................................40

6.6    Administrative Convenience Claims. ...........................................................40

      6.6.1   Description (Class 4 under the Plan). ........................................40
      6.6.2   Administrative Convenience Claims – Treatment. ....................41

6.7    General Unsecured Claims Against CEP. .....................................................41

      6.7.1   Description (Class 5(a) under the Plan). ....................................41
      6.7.2   General Unsecured Claims Against CEP – Treatment. ...............41

6.8    General Unsecured Claims Against CEP LLC. ............................................42

      6.8.1   Description (Class 5(b) under the Plan). ...................................42
      6.8.2   General Unsecured Claims Against CEP LLC – Treatment. ..........43

6.9    General Unsecured Claims Against CEPIS. .................................................43

      6.9.1   Description (Class 5(c) under the Plan). ....................................43
      6.9.2   General Unsecured Claims Against CEPIS – Treatment. ...........44

6.10   Interests (Plan Sponsors Holding CEP Stock). ............................................45

      6.10.1 Description (Class 6(a) under the Plan). ....................................45
      6.10.2 Plan Sponsors Holding CEP Stock Interests - Treatment. ..............45

6.11   Interests (Plan Non-Sponsors Holding CEP Stock). ....................................46

      6.11.1 Description (Class 6(b) under the Plan). ...................................46
      6.11.2 Plan Non-Sponsors Holding CEP Stock - Treatment. ...............46

6.12   Interests (Holders of CEP Stock Options Interests). ....................................47

      6.12.1 Description (Class 7 under the Plan). .......................................47

TTH                                             ii       AMENDED DISCLOSURE STATEMENT FOR JOINT
Doc. Claim Materials 2.3.1 (Clean) DS (CEP DDS) 5-14-15.docx            PLAN OF DEBTORS AND OFFICIAL COMMITTEE
                                               OF UNSECURED CREDITORS (DATED MAY 14, 2015)

|   |   |   |
|---|---|---|
| | 6.12.2 | Holders of CEP Stock Option Interests – Treatment. ...................................47 |

ARTICLE VII.   IMPLEMENTATION OF THE PLAN .................................................................48

| 7.1 | Administrative Convenience. ..............................................................................48 |
| 7.2 | Contributions Under the Plan. .............................................................................48 |
| 7.3 | Liquidation Trust. ...............................................................................................48 |
| 7.4 | Liquidation Trustee. ............................................................................................52 |
| 7.5 | Oversight Committee. .........................................................................................54 |
| 7.6 | Continuing Effect and Performance of Existing Orders. .....................................56 |
| 7.7 | Disposition of Remaining Assets. .......................................................................56 |

| | 7.7.1 | Cash. ......................................................................................................57 |
| | 7.7.2 | Accounts Receivables. ...........................................................................57 |
| | 7.7.3 | Retained Claims. ....................................................................................57 |
| | 7.7.4 | Other Assets. ..........................................................................................59 |

| 7.8 | Tax Returns and Payments. .................................................................................59 |
| 7.9 | Cancellation of Documents. ................................................................................60 |
| 7.10 | Termination of Boards and Officers. ...................................................................60 |
| 7.11 | Dissolution of the Debtors. .................................................................................60 |
| 7.12 | Wind Down of Subsidiaries. ...............................................................................61 |
| 7.13 | Further Orders. ....................................................................................................61 |
| 7.14 | Insurance Policies. ..............................................................................................61 |
| 7.15 | Post-Confirmation Employment of Personnel. ....................................................62 |
| 7.16 | Termination of Employee Benefit Plans. .............................................................62 |
| 7.17 | Post-Confirmation Compensation and Reimbursement of Professionals. .............63 |
| 7.18 | Creditors' Committee. .........................................................................................64 |
| 7.19 | Post-Confirmation Notice. ..................................................................................65 |

| | 7.19.1 | Notice Generally. ..................................................................................65 |
| | 7.19.2 | Notice Procedure. ..................................................................................65 |

| 7.20 | Post-Confirmation Reports, Fees and Final Decree. ............................................65 |

| | 7.20.1 | U.S. Trustee Fees. .................................................................................65 |
| | 7.20.2 | Post-Confirmation Reports. ...................................................................65 |
| | 7.20.3 | Tax Identification Numbers. ...................................................................66 |
| | 7.20.4 | Tax Treatment of Reserves for Disputed General Unsecured Claims. ...........66 |
| | 7.20.5 | Final Decree. ..........................................................................................66 |

ARTICLE VIII. ........................................................................................................................66

| 8.1 | Distribution Account. ..........................................................................................66 |
| 8.2 | Allocation of Plan Distributions Between Principal and Interest. .........................67 |
| 8.3 | Delivery of Distributions Generally. ...................................................................67 |
| 8.4 | Provisions Concerning Disputed Claims Reserve. ...............................................67 |
| 8.5 | Distribution Addresses and Disputed Identify of Holder. ....................................69 |
| 8.6 | Setoffs. ...............................................................................................................70 |
| 8.7 | No Distribution in Excess of Allowed Amount of Claim. ....................................70 |
| 8.8 | Withholding and Reporting Requirements. ..........................................................70 |
| 8.9 | Postpetition Interest on Claims. ..........................................................................70 |
| 8.10 | Method of Distributions. .....................................................................................71 |
| 8.11 | De Minimis Distributions. ...................................................................................71 |
| 8.12 | Donation of Excess Cash. ...................................................................................71 |
| 8.13 | Unclaimed Distributions. ....................................................................................71 |

TTH     iii
Case 14-44191   Doc# 665   Filed 05/14/15   Entered 05/14/15 12:51:55   Page 4
109

AMENDED DISCLOSURE STATEMENT FOR JOINT CHAPTER 11 PLAN OF DEBTORS AND OFFICIAL COMMITTEE OF UNSECURED CREDITORS (DATED MAY 14, 2015)

8.14    Exemption From Certain Transfer Taxes. ...................................................72

ARTICLE IX.   PROOFS OF CLAIM; OBJECTIONS ...................................................72

9.1    Time for Filing Proofs of Claim .................................................................72
9.2    Proofs of Interests. ....................................................................................73
9.3    Ownership and Transfers of Claims. ..........................................................73
9.4    Amendments to Claims. ............................................................................73
9.5    Claim Objections ......................................................................................73
9.6    Setoff Rights Preserved. ...........................................................................74
9.7    Termination of Claims Agent. ...................................................................74

ARTICLE X.   EXECUTORY CONTRACTS AND UNEXPIRED LEASES ....................74

10.1    Treatment of Executory Contracts and Unexpired Leases. ........................74
10.2    Effect of Assumption of Executory Contracts and Unexpired Leases. .......74
10.3    Adding and Removing Executory Contracts and Unexpired Leases. .........75
10.4    Defaults. ...................................................................................................75
10.5    Assumption of Executory Contracts and Unexpired Leases. ......................75
10.6    Rejection of Executory Contracts and Unexpired Leases. ..........................76
10.7    Rejection Claims. ......................................................................................76

ARTICLE XI.   PRESERVATION OF RETAINED CLAIMS .......................................77

ARTICLE XII.   RETENTION OF JURISDICTION ....................................................77

ARTICLE XIII.   EFFECT OF ORDER OF CONFIRMATION ....................................78

13.1    Binding Effect of Plan. .............................................................................78
13.2    Reservation of Powers. .............................................................................79
13.3    Exculpation. ..............................................................................................79

ARTICLE XIV.   OTHER PLAN PROVISIONS. .........................................................79

ARTICLE XV.   RISK FACTORS ...............................................................................80

15.1    Claims in Excess of Estimates ..................................................................80
15.2    Estimation of Claims and Distribution Risks.............................................80
15.3    Bankruptcy Risks .....................................................................................81
15.4    Collection Risks ........................................................................................81
15.5    Obligations Under ESAs ...........................................................................82

ARTICLE XVI.   CERTAIN FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN .......82

16.1    Introduction. .............................................................................................82
16.2    U.S. Federal Income Tax Treatment of The Liquidation Trust. .................85
16.3    Consequences to Debtors. .........................................................................86
16.4    Consequences to Creditors. .......................................................................87
16.5    Consequences to Holders of Equity Securities. .........................................87
16.6    Consequences to Option Holders. ..............................................................88
16.7    Withholding and Backup Withholding. ......................................................88

ARTICLE XVII. ........................................................................................................89

VOTING PROCEDURES AND REQUIREMENTS.....................................................89

Case 14-44191    Doc# 665    Filed 05/14/15    Entered 05/14/15 12:15:55    Page 5 of
109

17.1  Creditors Entitled to Vote. ....................................................................89
17.2  Definition of Impairment. .....................................................................89
17.3  Acceptance by an Impaired Voting Class. ...........................................90
17.4  Deemed Acceptances by Classes. ........................................................90
17.5  Deemed Rejections by Classes. ...........................................................90
17.6  Procedures. ...........................................................................................90

ARTICLE XVIII.   CONFIRMATION PROCEDURES; OBJECTIONS TO CONFIRMATION ....91

18.1  Confirmation Hearing. ..........................................................................91
18.2  Requirements for Confirmation of the Plan. ........................................92
18.3  Compliance With Confirmation Requirements. ...................................94
18.4  Cramdown. ............................................................................................94

ARTICLE XIX.   BEST INTERESTS TEST ................................................................95

19.1  Liquidation Under Chapter 7 .................................................................95
19.2  Liquidation Analysis .............................................................................98

ARTICLE XX.   FEASIBILITY ...............................................................................100

ARTICLE XXI.   POST-CONFIRMATION MANAGEMENT ....................................100

ARTICLE XXII.   PLAN INTERPRETATION ...........................................................101

AMENDED DISCLOSURE STATEMENT FOR JOINT
PLAN OF REORGANIZATION OF DEBTOR AND COMMITTEE
OF UNSECURED CREDITORS (DATED MAY 14, 2015)

| | |
|---|---|
| 1 | <div align="center">**EXHIBIT INDEX**</div> |
| 2 | Exhibit A       Summary of Allowed Professional Fees |
| 3 | Exhibit B       Monthly Operating Report for the Month Ending March 2015 |
| 4 | Exhibit C       Liquidation Analysis |

## **ARTICLE I.**

## **INTRODUCTION**[1]

CEP Reorganization, Inc., formerly known as ClearEdge Power, Inc., an Oregon corporation ("CEP"), CEP Reorganization, LLC, formerly known as ClearEdge Power, LLC, a Delaware limited liability company ("CEP LLC"), and CEP Service Reorganization, LLC, formerly known as ClearEdge Power International Service, LLC, a Delaware limited liability company ("CEPIS" and collectively with CEP and CEP LLC, the "Debtors" or the "Company"), each filed for bankruptcy protection under chapter 11 of the Bankruptcy Code on May 1, 2014, commencing these Bankruptcy Cases. On May 22, 2014, the Office of the United States Trustee appointed the Official Committee of Unsecured Creditors (the "Committee") in the Bankruptcy Cases, pursuant to 11 U.S.C. § 1102. The Debtors and the Committee (together, the "Plan Proponents") hereby present the AMENDED DISCLOSURE STATEMENT FOR JOINT PLAN CHAPTER 11 PLAN OF DEBTORS AND OFFICIAL COMMITTEE OF UNSECURED CREDITORS (DATED MAY 14, 2015) (the "Disclosure Statement") in connection with the solicitation of acceptances of the AMENDED JOINT PLAN CHAPTER 11 PLAN OF DEBTORS AND OFFICIAL COMMITTEE OF UNSECURED CREDITORS (DATED MAY 14, 2015) (the "Plan") and pursuant to the provisions of chapter 11 of the Bankruptcy Code.

This Disclosure Statement and the accompanying Plan constitute the Plan Proponents' proposal for the reorganization of CEP and the orderly liquidation of the Estates' Assets by a Liquidation Trust to be formed pursuant to the Plan and a Liquidation Trust Agreement, and for the Distribution of all remaining Assets and cash on hand derived from such liquidation, in accordance with the relevant provisions of the Bankruptcy Code.

**THIS DISCLOSURE STATEMENT CONTAINS INFORMATION CONCERNING YOUR CLAIMS OR INTERESTS. PLEASE READ THIS DOCUMENT WITH CARE. FOR THE CONVENIENCE OF CREDITORS AND EQUITY SECURITY HOLDERS, THIS DISCLOSURE STATEMENT SUMMARIZES THE TERMS OF THE PLAN, BUT THE PLAN ITSELF CONTROLS OVER THIS SUMMARY. IF ANY INCONSISTENCIES EXIST BETWEEN THE PLAN AND THIS DISCLOSURE STATEMENT, THE TERMS OF THE PLAN ARE CONTROLLING. NO REPRESENTATIONS CONCERNING THE COMPANY, ITS FINANCIAL CONDITION OR ANY ASPECT OF THE PLAN ARE**

---

[1] Terms not defined herein shall have the meaning ascribed to them in the AMENDED JOINT PLAN CHAPTER 11 PLAN OF DEBTORS AND OFFICIAL COMMITTEE OF UNSECURED CREDITORS (DATED MAY 14, 2015). The Plan Proponents may modify, update and/or amend this Disclosure Statement and reserve their rights in that regard.

TTH
H:\Client Matters\- F&R\ClearEdge\PI\CE Inc\DS\5-14-15\v8.docx

1

AMENDED DISCLOSURE STATEMENT FOR JOINT CHAPTER 11 PLAN OF DEBTORS AND OFFICIAL COMMITTEE OF UNSECURED CREDITORS (DATED MAY 14, 2015)

Case: 14-44191    Doc# 665    Filed: 05/14/15    Entered: 05/14/15 12:25:58    Page 8 of
109

AUTHORIZED BY THE PLAN PROPONENTS OTHER THAN AS SET FORTH IN THIS DISCLOSURE STATEMENT.

THE FINANCIAL INFORMATION CONTAINED HEREIN, UNLESS OTHERWISE INDICATED, IS UNAUDITED. IN ADDITION, BECAUSE OF THE DEBTORS' FINANCIAL DIFFICULTIES, THE INFORMATION CONTAINED HEREIN MAY BE INCOMPLETE OR INACCURATE. FOR THE FOREGOING REASONS, THE PLAN PROPONENTS AND THEIR PROFESSIONALS ARE UNABLE TO WARRANT THAT THE INFORMATION CONTAINED HEREIN IS WITHOUT ANY INACCURACY. HOWEVER, GREAT EFFORT HAS BEEN MADE TO ENSURE THAT ALL SUCH INFORMATION IS FAIRLY PRESENTED.

THE PROFESSIONALS REPRESENTING THE DEBTORS AND THE COMMITTEE, RESPECTIVELY, HAVE RELIED UPON INFORMATION PROVIDED BY THE DEBTORS (BASED ON THE BEST OF THEIR KNOWLEDGE AND THE BEST INFORMATION AVAILABLE TO THEM) IN CONNECTION WITH THE PREPARATION OF THIS DISCLOSURE STATEMENT AND HAVE NOT INDEPENDENTLY VERIFIED THE FACTUAL INFORMATION CONTAINED HEREIN. THE CONTENTS OF THIS DISCLOSURE STATEMENT SHOULD NOT BE CONSTRUED AS LEGAL, BUSINESS OR TAX ADVICE. YOU SHOULD CONSULT WITH YOUR OWN LEGAL COUNSEL AND ACCOUNTANT AS TO LEGAL, TAX AND RELATED MATTERS CONCERNING YOUR CLAIMS OR INTERESTS.

THE SECURITIES AND EXCHANGE COMMISSION HAS NOT APPROVED OR DISAPPROVED THIS DISCLOSURE STATEMENT, OR DETERMINED IF IT IS TRUTHFUL OR COMPLETE.

## ARTICLE II.

## DEFINITIONS

All definitions contained in Article I of the Plan are incorporated herein by reference. Other terms are defined herein for convenience only.

## ARTICLE III.

## SUMMARY OF PLAN TREATMENT

3.1     **The Chapter 11 Process.**

Chapter 11 of the Bankruptcy Code contains numerous provisions, the general effect of which is to provide debtors with "breathing space" within which to propose a restructuring of their obligations to third parties. The filing of a chapter 11 bankruptcy petition creates a bankruptcy "estate" comprised of all of the property interests of the debtor. Unless a trustee is appointed by the Bankruptcy Court (no trustee has been appointed in these Cases), a debtor remains in possession and control of all of its assets as a "debtor in possession." The debtor may continue to operate its business in the ordinary course without Bankruptcy Court approval. Bankruptcy Court approval is

TTH
H:\Client Matters\- F&R\ClearEdge\PI\CE Inc\DS\5-14-15\v8.docx

2

AMENDED DISCLOSURE STATEMENT FOR JOINT
CHAPTER 11 PLAN OF DEBTORS AND OFFICIAL COMMITTEE
OF UNSECURED CREDITORS (DATED MAY 14, 2015)

Case: 14-44191    Doc# 665    Filed: 05/14/15    Entered: 05/14/15 12:25:55    Page 9 of
109

only required for various enumerated transactions (such as certain financing transactions) and transactions out of the ordinary course of a debtor's business. The filing of the bankruptcy petition operates as an "automatic stay" which, generally, enjoins creditors from taking any action to collect or recover obligations owed by a debtor prior to the commencement of a chapter 11 case. The Bankruptcy Court can, however, grant relief from the automatic stay, under certain specified conditions or for cause.

A chapter 11 debtor may propose a plan providing for the reorganization of the debtor or, as the Plan contemplates, for the orderly liquidation and administration of the assets of the bankruptcy estates. A plan may either be consensual or non-consensual and provides for, among other things, the treatment of the claims of creditors and interests of equity holders.

### 3.2 <u>**Voting Instructions.**</u>

Article XVII below provides instructions for voting on the Plan.

### 3.3 <u>**Confirmation Hearing.**</u>

The Bankruptcy Court will be asked to schedule a hearing to consider Confirmation (approval) of the Plan. Creditors and parties in interest will receive a notice accompanying this Disclosure Statement identifying the date, time and place of the Confirmation Hearing, and outlining the requirements for filing and serving objections, if any, to Confirmation of the Plan.

The Confirmation Hearing may be adjourned from time to time without further notice except for the announcement of the adjournment date made at the Confirmation Hearing or any subsequently adjourned Confirmation Hearing.

### 3.4 <u>**No Substantive Consolidation.**</u>

Nothing in the Plan is intended to substantively consolidate, nor will have the effect of substantively consolidating, the Debtors or their Estates, and CEP shall maintain its separate corporate existence from and after the Effective Date which is the first business day following the date on which the Order of Confirmation becomes a Final Order.[2] Under the Plan, on the Effective Date, CEP will retain its corporate existence and emerge as Reorganized CEP, and the Liquidation

---

[2] The Plan Proponents estimate that the Effective Date will be the fifteenth day following the Confirmation Date.

TTH
H:\Client Matters\- F&R\ClearEdge\PI\CE Inc\DS\5-14-15\v8.docx

3

AMENDED DISCLOSURE STATEMENT FOR JOINT
CHAPTER 11 PLAN OF DEBTORS AND OFFICIAL COMMITTEE
OF UNSECURED CREDITORS (DATED MAY 14, 2015)

Case: 14-44191    Doc# 665    Filed: 05/14/15    Entered: 05/14/15 12:25:53    Page 10 of 109

Trust will be formed, collect the Debtors' Assets with the exception of the Excluded Liquidation Trust Assets, and liquidate such Assets for the benefit of, and Distributions to, the beneficiaries of the Liquidation Trust and other Creditors. Thus, while the Liquidating Trust will receive and liquidate the substantial majority of the Debtors' collective Assets, General Unsecured Creditors will remain, in principle, distinct to each Debtor. In application and execution, however, the treatment of General Unsecured Creditors, who are classified in three subclasses within Class 5 under the Plan, will be substantially the same due to the fact that almost all, if not all, of the Debtors' liabilities are held by CEP LLC due to a restructuring of the Company's operations commencing in the end of 2013 which was consummated as of January 1, 2014. That restructuring enabled the Company to reduce costs and overhead (for example, to maintain only one set of books) and to obtain certain tax advantages, and resulted in the assignment of the Company's assets and liabilities to CEP LLC. Since then, the Debtors have functioned collectively as a joint enterprise, and the Company has maintained consolidated financial statements. There are no current inter-company Claims among the Debtors nor are there guaranties of the obligations of one Debtor by either of the others. The Voluntary Petitions of each Debtor filed in their respective Bankruptcy Cases reflect the total of all assets and liabilities of the Company's enterprise, and each Debtor filed identical Schedules D, E and F in their respective Bankruptcy Cases. Moreover, CEPIS is a wholly-owned subsidiary of CEP LLC, and CEP LLC is a wholly-owned subsidiary of CEP Inc. In sum, while each Debtor is a distinct Entity, the Debtors together comprise a joint enterprise with substantially all of the Company's Claims and Assets held in CEP LLC.

Due to the foregoing, on May 2, 2014, the Court entered its ORDER AUTHORIZING AND DIRECTING JOINT ADMINISTRATION OF ESTATES in each of the Debtors' respective Bankruptcy Cases, directing all parties in interest and the Clerk of the Court to file and docket all pleadings and notices in the CEP's Bankruptcy Case. Consequently, the greater majority of Proofs of Claims have been filed either solely against CEP, as the Debtor in the lead Bankruptcy Case, or have been filed as identical Proofs of Claims in all three Cases. In addition, the Debtors also have identified 47 distinct Proofs of Claims filed in CEP LLC's Case and four (4) distinct Proofs of Claims filed in CEPIS' Case. The Debtors have reviewed all Claims and believe that all or almost all Claims filed in the

TTH
H:\Client Matters\- F&R\ClearEdge\PI\CE Inc\DS\5-14-15\v8.docx

AMENDED DISCLOSURE STATEMENT FOR JOINT CHAPTER 11 PLAN OF DEBTORS AND OFFICIAL COMMITTEE OF UNSECURED CREDITORS (DATED MAY 14, 2015)

Case: 14-44191    Doc# 665    Filed: 05/14/15    Entered: 05/14/15 12:25:53    Page 11 of 109

Bankruptcy Cases are more properly Claims against CEP LLC or the Company as an enterprise which should be asserted against only CEP LLC. Accordingly, prior to the Confirmation Hearing, the Plan Proponents anticipate that the Debtors will file objections to all General Unsecured Claims which have been filed as duplicates in more than one Case and almost all, if not all, General Unsecured Claims which have been filed in a Case other than in CEP LLC's Case, solely to reclassify such Claims such that they are asserted in CEP LLC's Case where appropriate.

The Plan Proponents believe that there may be sufficient cash to pay Allowed Secured Claims, Priority Claims and Administrative Claims in full. The Plan classifies General Unsecured Claims – which are not expected to be paid in full - in three (3) subclasses under Class 5 which is the only impaired class of Claims, to ensure that General Unsecured Claims which are distinct to CEP and CEPIS, if any, remain separate; however, the Assets of the Company, with the exception of the Excluded Liquidation Trust Assets, will vest and be held by the Liquidation Trust for liquidation by the Liquidation Trustee and available for Distribution to all Creditors. As a result, conceivably, any General Unsecured Creditors who hold an Allowed Claim against a distinct Debtor, to the extent there are any, could receive less than if Assets were retained by each Debtor separately. However, due to the restructuring of the Company at the end of 2013 vesting all Assets in CEP LLC and the operations of the Debtors as a joint enterprise, the Plan Proponents believe that there will be minimal, if any at all, potential adverse impact to any distinct Creditors. On the contrary, the Plan Proponents believe that the Plan provides the most sensible and efficient means to identify, treat and administer Claims against the Estates. Among other benefits, it eliminates the unnecessary need to prepare and propose a separate plan for each of the Debtors which would only increase the cost and reduce the efficiency of providing Distributions to Creditors. It also enables CEP to continue its corporate existence as Reorganized CEP and potentially contribute to the Liquidation Trust throughout the duration of the Plan, and creates a mechanism for holders of stock to contribute to the Liquidation Trust as Plan Sponsors, while the Liquidation Trustee liquidates all remaining Assets for the benefit of Creditors. In light of the foregoing, the Plan Proponents believe that the Plan, as structured, is both practical and appropriate for the administration of the Bankruptcy Cases and is in the best interests of the Creditor body as a whole.

TTH
H:\Client Matters\- F&R\ClearEdge\PI\CE Inc\DS\5-14-15\v8.docx

5

AMENDED DISCLOSURE STATEMENT FOR JOINT
CHAPTER 11 PLAN OF DEBTORS AND OFFICIAL COMMITTEE
OF UNSECURED CREDITORS (Dated May 14, 2015)

Case: 14-44191    Doc# 665    Filed: 05/14/15    Entered: 05/14/15 12:25:55    Page 12 of
109

3.5    **Means of Implementation of the Plan.**  All Available Cash derived from the Sale Proceeds and liquidation of the remaining Liquidation Trust Assets will be liquidated and used to pay Allowed Claims pursuant to the priorities of the Bankruptcy Code as provided in the Plan. The source of the Liquidation Trust assets will be largely comprised of the proceeds of the sale (the "Sale") of certain of the Debtors assets of the Debtors to Doosan Corporation (together with its designee(s), "Doosan") during the Cases and the contributions received in connection with the continued existence of CEP, each of which are described below.

### 3.5.1    Sale Proceeds.

Following a hearing on July 11 and 17, 2014 (the "Sale Hearing"), the Bankruptcy Court approved the Sale of certain of the assets of the Debtors to Doosan (the approved Sale to Doosan is hereinafter referred to as the "Purchase Transaction").  The Purchase Transaction closed on July 18, 2014.  The consideration included cash, the assumption of certain liabilities and the assumption of certain executory contracts and unexpired leases, and resulted in an estimated $13,700,000 to the Estates.  The Plan will be implemented by establishment of a Liquidation Trust with an appointed Liquidation Trustee, which will administer and liquidate the Estates' remaining Assets and manage the Distribution of the balance of the proceeds derived therefrom, in addition to the proceeds of the Purchase Transaction (the "Sale Proceeds") (see discussion at Section 7.7 below).

### 3.5.2    Continued Corporate Existence; Vesting of Assets of CEP.

On the Effective Date, CEP will emerge as Reorganized CEP and continue to exist as a separate corporation.  It will retain all of the powers of corporations under applicable non-bankruptcy law without prejudice to any right to (a) amend its charter, dissolve, merge, or convert into another form of business entity, (b) restructure its ownership and/or equity composition, and (c) alter or terminate its existence.  Except as otherwise provided in the Plan, on and after the Effective Date, all Excluded Liquidation Trust Assets will, to the maximum extent permitted by law, revest in Reorganized CEP free and clear of all claims, liens, charges, other encumbrances and interests. On and after the Effective Date, subject to Article XII of the Plan, Reorganized CEP will be permitted to conduct its business without supervision by the Bankruptcy Court free of any restrictions under the Bankruptcy Code or the Bankruptcy Rules.

TTH
H:\Client Matters\- F&R\ClearEdge\PI\CE Inc\DS\5-14-15\v8.docx

6

AMENDED DISCLOSURE STATEMENT FOR JOINT CHAPTER 11 PLAN OF DEBTORS AND OFFICIAL COMMITTEE OF UNSECURED CREDITORS (Dated May 14, 2015)

Case: 14-44191    Doc# 665    Filed: 05/14/15    Entered: 05/14/15 12:25:58    Page 13 of 109

By retaining and continuing the corporate structure of CEP, the Plan augments the amount included in the Liquidation Trust Assets and provides a mechanism for additional amounts to be contributed during the Bankruptcy Cases. Specifically, under the Plan, (a) CEP Equity Security Holders may elect to be Plan Sponsors who will pay the Plan Sponsor Contribution in the aggregate amount of, at minimum, $200,000 to the Liquidation Trust on or before the Effective Date; and (b) Reorganized CEP will calculate and, if required, periodically pay the Reorganized CEP Contributions to the Liquidation Trust, equal to 20% of all amounts, if any, realized from tax attributes retained by Reorganized CEP and carried forward or carried backward, to be calculated and paid (in the event that any amounts are realized for each applicable period) in annual payments in accordance with the schedule set forth below; provided, however, that in the event that a tax audit (or similar notice or inquiry related thereto) of Reorganized CEP by a governmental unit will commence or is pending at any time when calculation or payment of any Reorganized CEP Contribution is due, such payment will not become due until immediately after the tax audit is completed and the Reorganized CEP Contribution is calculated and remains due and owing.

Notwithstanding anything herein to the contrary, any and all Reorganized CEP Contributions will immediately vest in the Liquidation Trust when received, and no Person will have any right to recover, recoup or otherwise disgorge such Reorganized CEP Contributions from the Liquidation Trust. For the avoidance of doubt, no Person will have any recourse against the Liquidation Trust, the Liquidation Trustee, the Oversight Committee or a beneficiary of the Liquidation Trust with respect to the Reorganized CEP Contributions.

**Schedule of Reorganized CEP Contributions**

| Post-Effective Date Tax Year | Tax Return Filing Date | Contribution Payment Date (if due) |
|---|---|---|
| December 2015 | March 2016 | March 2017 |
| December 2016 | March 2017 | March 2018 |
| December 2017 | March 2018 | March 2019 |
| December 2018 | March 2019 | March 2020 |
| December 2019 | March 2020 | March 2020 |

To enable CEP to continue as a business, (a) Plan Sponsors will pay to CEP, prior to the Confirmation Date, the CEP Working Capital fund in the aggregate amount of, at minimum,

Case: 14-44191    Doc# 665    Filed: 05/14/15    Entered: 05/14/15 12:23:53    Page 14 of
109

$200,000, and (b) certain Plan Sponsors have agreed and will provide to CEP, prior to the Confirmation Date, the CEP Contributed Fixed Assets which are necessary to conduct Reorganized CEP's business operations. Reorganized CEP will retain tax attributes, including, *inter alia*, unused net operating losses and any other tax loss credits or carryforwards, if any, which are attributable to CEP, from which any Reorganized CEP Contributions will be derived. None of the Plan Proponents, the Committee's Professionals and the Debtors' Professionals has made any representation, warranty, or covenant with respect to the value, amount, or utility of any such tax attributes.

The CEP Contributed Fixed Assets and the tax attributes, together with the CEP Working Capital Fund and any books and records of CEP, comprise the Excluded Liquidation Trust Assets which will not vest in the Liquidation Trust. However, without provision for the continued existence of CEP as Reorganized CEP, there would be no Plan Sponsors, and (a) CEP would be liquidated with CEP LLC and CEPIS; (b) the CEP Contributed Fixed Assets would not exist as Assets (and therefore could not provide any value to the Liquidation Trust); (c) there would be no opportunity for payments from the Reorganized CEP Contributions; and (d) there would be no Plan Sponsor Contribution to the Liquidation Trust. Accordingly, the Plan Proponents believe that CEP's continuation as a business under the Plan provides a material benefit to the Liquidation Trust and all Creditors which would not otherwise exist.

With respect to CEP's books and records, Reorganized CEP will retain and succeed to all rights to such books and records. Reorganized CEP must provide the Liquidation Trustee, upon her/his reasonable request, with copies of (or must allow the Liquidation Trustee access to and/or to make a copies of) any of CEP's books and records. The Liquidation Trustee will reimburse Reorganized CEP for its reasonable, documented, out-of-pocket costs and expenses incurred with respect to providing access or copies of CEP's books and records.

### 3.6 **Specific Treatment.**

A summary of the treatment of the various classes of Claims and Interests is set forth below:

/ / /

/ / /

TTH
H:\Client Matters\- F&R\ClearEdge\PI\CE Inc\DS\5-14-15\v8.docx

8

AMENDED DISCLOSURE STATEMENT FOR JOINT
CHAPTER 11 PLAN OF DEBTORS AND OFFICIAL COMMITTEE
OF UNSECURED CREDITORS (dated May 14, 2015)

Case: 14-44191    Doc# 665    Filed: 05/14/15    Entered: 05/14/15 12:25:53    Page 15 of
109

| Claims/Interests | Treatment |
|---|---|
| Administrative Claims | Except to the extent that the holder of a particular Administrative Claim has agreed to a different treatment of such Claim, each holder of an Allowed Administrative Claim shall be paid in cash, in full upon the later of: (a) the Initial Distribution Date; (b) if such Claim is initially a Disputed Claim or an order of the Court is required prior to any payment, on the Subsequent Distribution Date following the ultimate allowance of such Administrative Claim by a Final Order of the Bankruptcy Court; or (c) if such Administrative Claim is incurred after the Petition Date in the ordinary course of the Debtors' business, within such time as payment is due pursuant to the terms giving rise to such Claim. |
| Tax Claims | Except to the extent that the holder of a particular Tax Claim has agreed to a different treatment of such Claim, each holder of an Allowed Priority Tax Claim shall be paid in cash, in full on the date that is the later of (a) the Initial Distribution Date or (b) on the first Subsequent Distribution Date after the date such Tax Claim becomes an Allowed Claim plus interest on such Allowed Claim at the rate of interest determined under applicable non-bankruptcy law pursuant to Bankruptcy Code Section 511, from the Effective Date through the date of payment in full; provided, however, that (i) no such payment shall be made longer than five (5) years from the Petition Date, and (ii) no holder of an Allowed Tax Claim shall be treated in a manner less favorable than any Allowed General Unsecured Claim in Class 5. |
| Class 1: Secured Claim of Sale Proceeds Lienholders | Except as otherwise agreed, the legal, equitable, and contractual rights of the holders of any Class 1 Claims, including the retention of any liens to the extent not avoidable, remain unaltered. Each holder of an Allowed Class 1 Claim, if any, will receive on the Effective Date, or as soon as practicable thereafter, payment in cash up to the Allowed Amount of such Secured Claim, from, but only to the extent of, the proceeds of the Sales Transaction. |
| Class 2: Other Secured Claims | Except as otherwise agreed, the legal, equitable, and contractual rights of holders of any Class 2 Claims, including the retention of any lien to the extent not avoidable, remain unaltered. Each holder of an Allowed Class 2 Claim, if any, shall receive on the Effective Date, at the Liquidation Trustee's option: (a) the net proceeds from the sale of its collateral at the time of such sale, or as soon thereafter as practicable, up to the unpaid Allowed Amount of such Claim and to the same extent, priority and validity of the lien securing such Allowed Claim; (b) the return of its |

Case: 14-44191    Doc# 665    Filed: 05/14/15    Entered: 05/14/15 12:25:55    Page 16 of
109

| Claims/Interests | Treatment |
|---|---|
| | collateral; or (c) such other less favorable treatment as may be agreed with the holder of such Claim; provided, however, that if the holder of an Allowed Class 2 Claim holds cash with a right of setoff, such holder shall be entitled to effect the setoff and thereby satisfy the Claim in lieu of receiving payment. |
| Class 3:  Priority Claims | Except as otherwise agreed, the legal, equitable, and contractual rights of holders of Class 3 Priority Claims remain unaltered.  Each holder of an allowed Class 3 Claim shall receive on the Effective Date or as soon thereafter as practicable, payment in full in cash up to the Allowed Amount of such Claim. |
| Class 4:  Administrative Convenience Claims | Each holder of an Allowed Class 4 Claim shall receive on the Effective Date, in full satisfaction of such Claim, payment in cash up to the Allowed Amount of such Claim; provided, however, that in no event shall a holder receive more than three thousand dollars ($3,000) on account of such Allowed Class 4 Claim. |
| Class 5(a):  General Unsecured Claims Against CEP | Except as otherwise agreed, in full and final satisfaction, compromise, settlement, and release of and in exchange for each Class 5(a) Claim, holders of Allowed Class 5(a) General Unsecured Claims shall receive Distributions in the form of their respective Pro Rata share of Liquidation Trust Interests in accordance with the provisions set forth in Section 8.3 of the Plan. |
| Class 5(b):  General Unsecured Claims Against CEP LLC | Except as otherwise agreed, in full and final satisfaction, compromise, settlement, and release of and in exchange for each Class 5(b) Claim, holders of Allowed Class 5(b) General Unsecured Claims shall receive Distributions in the form of their respective Pro Rata share of Liquidation Trust Interests in accordance with the provisions set forth in Section 8.3 of the Plan. |
| Class 5(c):  General Unsecured Claims Against CEPIS | Except as otherwise agreed, in full and final satisfaction, compromise, settlement, and release of and in exchange for each Class 5(c) Claim, holders of Allowed Class 5(c) General Unsecured Claims shall receive Distributions in the form of their respective Pro Rata share of Liquidation Trust Interests in accordance with the provisions set forth in Section 8.3 of the Plan. |
| Class 6(a):  Interests (Plan Sponsors Holding CEP Stock) | For purposes of Distribution under the Plan, if any, Allowed Interests of the holders of CEP's stock shall include, and be limited to, the holders of record on the Record Date, any transfers thereafter notwithstanding. Except as otherwise provided in the Plan, holders of Allowed Interests in CEP who elect to be Plan Sponsors will have left unaltered the legal, equitable |

TTH
H:\Client Matters\- F&R\ClearEdge\PI\CE Inc\DS\5-14-15\v8.docx

10

AMENDED DISCLOSURE STATEMENT FOR JOINT
CHAPTER 11 PLAN OF DEBTORS AND OFFICIAL COMMITTEE
OF UNSECURED CREDITORS (DATED MAY 14, 2015)

Case: 14-44191    Doc# 665    Filed: 05/14/15    Entered: 05/14/15 12:25:53    Page 17 of 109

| Claims/Interests | Treatment |
|---|---|
| | and contractual rights to which each such holder is entitled on account of such Interest. Subject to the provisions of Section 4.11 of the Plan, no holder of a Class 6(a) CEP stock Interest will receive or retain any property under the Plan or the Liquidation Trust Agreement on account of such holder's Interest. Section 4.11 of the Plan provides that, in the unlikely event that a surplus of Available Cash remains after Classes 1 through 5 are paid in full or adequately reserved for, including payment of the Plan Interest Rate on Allowed Claims in Classes 3, 5(a), 5(b) and 5(c) as may be applicable, then each holder of Allowed Interests in Class 6(a) and Class 6(b) will be entitled to receive one or more Distributions of Available Cash in an amount equal to its allocated share of such remaining Available Cash as such allocated share shall be determined in accordance with the Debtors' applicable governing documents, and Distributions to holders of Allowed Interests will take into account the priorities in such documents, with any disputes as to priority and treatment to be resolved by the Bankruptcy Court upon motion of the Liquidation Trustee. |
| Class 6(b): Interests (Plan Non-Sponsors Holding CEP Stock) | For purposes of Distribution under the Plan, if any, Allowed Interests of the holders of CEP's stock shall include, and be limited to, the holders of record on the Record Date, any transfers thereafter notwithstanding. All stock Interests of Plan Non-Sponsors will be cancelled as of the Effective Date. Subject to the provisions of Section 4.11 of the Plan, no holder of a Class 6(b) CEP stock Interest will receive or retain any property under the Plan on account of such holder's Interest. Section 4.11 of the Plan provides that, in the unlikely event that a surplus of Available Cash remains after Classes 1 through 5 are paid in full or adequately reserved for, including payment of the Plan Interest Rate on Allowed Claims in Classes 3, 5(a), 5(b) and 5(c) as may be applicable, then each holder of Allowed Interests in Class 6(a) and Class 6(b) will be entitled to receive one or more Distributions of Available Cash in an amount equal to its allocated share of such remaining Available Cash as such allocated share shall be determined in accordance with the Debtors' applicable governing documents, and Distributions to holders of Allowed Interests will take into account the priorities in such documents, with any disputes as to priority and treatment to be resolved by the Bankruptcy Court upon motion of the Liquidation Trustee. |
| Class 7: Interests (Holders of CEP Stock Options Interests) | Allowed Interests of the holders of CEP's stock shall include, and be limited to, the holders of record on the Record Date, any transfers thereafter notwithstanding. All CEP Stock Options Interests shall be cancelled as |

TTH
H:\Client Matters\- F&R\ClearEdge\PI\CE Inc\DS\5-14-15\v8.docx

11

AMENDED DISCLOSURE STATEMENT FOR JOINT
CHAPTER 11 PLAN OF DEBTORS AND OFFICIAL COMMITTEE
OF UNSECURED CREDITORS (DATED MAY 14, 2015)

Case: 14-44191    Doc# 665    Filed: 05/14/15    Entered: 05/14/15 12:23:53    Page 18 of
109

| Claims/Interests | Treatment |
|---|---|

of the Effective Date, and holders of CEP Stock Options Interests shall not receive or retain any property under the Plan on account of such Interests.

The foregoing is a summary only. Creditors, Holders of Interests and other parties in interest should review the entirety of this Disclosure Statement and the Plan for a more thorough discussion of the Bankruptcy Cases and the proposed treatment of Claims and Interests.

<h2 style="text-align:center"><u>ARTICLE IV.</u></h2>

<h2 style="text-align:center"><u>THE BANKRUPTCY FILING</u></h2>

On May 1, 2014 (the "<u>Petition Date</u>"), the Debtors filed their respective Voluntary Petitions under chapter 11 of the Bankruptcy Code. Presently, the Debtors are operating as debtors in possession pursuant to the provisions of Bankruptcy Code §§ 1107 and 1108. The Committee was appointed in the Bankruptcy Cases on May 22, 2014. The current Committee members are as follows:

ABB, Inc.
Attention: Galit Mizrahi
8585 Trans-Canada Highway
Saint-Laurent, QC Canada H45126

Estes Express Lines
Attention: Nicole Washington
3901 West Broad Street
Richmond, VA 23230

Kelly Services, Inc.
Attention: Jody McLeod
999 West Big Beaver
Troy MI, 48084

The Committee's counsel is as follows:

Brown Rudnick LLP
1 Financial Center
Boston, MA 02111
Attn: Sunni Beville
Email: sbeville@brownrudnick.com

/ / /

/ / /

/ / /

TTH
H:\Client Matters\- F&R\ClearEdge\PI\CE Inc\DS\5-14-15\v8.docx

12

AMENDED DISCLOSURE STATEMENT FOR JOINT
CHAPTER 11 PLAN OF DEBTORS AND OFFICIAL COMMITTEE
OF UNSECURED CREDITORS (DATED May 14, 2015)

Case: 14-44191    Doc# 665    Filed: 05/14/15    Entered: 05/14/15 12:25:53    Page 19 of
109

## ARTICLE V.

## HISTORY AND PRESENT POSTURE OF THE CASE

### 5.1    History and Description of the Business.

The Company is headquartered in Sunnyvale, California. Prior to the closing of the Purchase Transaction, the Company designed, manufactured, sold and serviced combined heat and power distributed generation Fuel Cell systems for commercial, industrial, utility and residential applications. The Company's Fuel Cell systems integrate proprietary components and utilize an innovative, moderate-temperature phosphoric acid fuel cell technology ("PAFC") to cleanly convert natural gas to electricity and heat at the point of use, through an ultra-clean electrochemical process. Its systems feature three key elements: (a) reduced utility expenses with an attractive economic payback, (b) improved corporate sustainability through reduced greenhouse gas emissions, and (c) highly reliable backup power capability to keep critical operations running.

In early 2013, CEP acquired UTC Power, Inc. ("UTC Power"), formerly a subsidiary of United Technologies Corporation, largely to leverage UTC Power's advanced, large-scale PAFC technology which UTC Power had developed over a 50 year period (such acquisition, the "UTC Transaction"). In addition to leveraging over five decades of expertise in the fuel cell industry, the Company's strategic decision to acquire UTC Power resulted in the Company's ownership of the industry's largest portfolio of intellectual property.

Since its inception, the Company had grown to one of the leading fuel cell companies in the industry, having established long-standing relationships with a broad and diverse range of customers across a variety of industries and geographies, in addition to partners and distributors globally.

### 5.2    Events Precipitating the Bankruptcy Filing.

While the Company historically experienced strong growth and had been the leader in the field of stationary fuel cell systems, instability within the industry, together with constraints on working capital, resulted in the Company's financial distress commencing towards the end of 2013. In the months leading up to the Petition Date, the Company attempted to obtain additional financing to continue operations as a going concern but was unsuccessful. As the Company's available cash waned, it was unable to satisfy its payables. In order to streamline operations, among other things,

TTH
H:\Client Matters\- F&R\ClearEdge\PI\CE Inc\DS\5-14-15\v8.docx

AMENDED DISCLOSURE STATEMENT FOR JOINT
CHAPTER 11 PLAN OF DEBTORS AND OFFICIAL COMMITTEE
OF UNSECURED CREDITORS (DATED MAY 14, 2015)

Case: 14-44191    Doc# 665    Filed: 05/14/15    Entered: 05/14/15 12:23:58    Page 20 of 109

the Company laid off the majority of its workforce prior to the Petition Date.

After considering numerous options over several weeks, the Company's board of directors decided that it was in the best interests of the Company's creditors and equity holders to consummate some form of sale, merger, acquisition and/or related transaction. Unable to meet its growing debt obligations, the Company made a strategic decision to file for bankruptcy to provide the Company time to restructure its finances and operations, market its assets, negotiate sale terms, and conduct an auction of its assets to the highest bidder, under the auspices and protection of the Bankruptcy Court.

### 5.3 Significant Events During The Bankruptcy Cases.

#### 5.3.1 Purchase Transaction With Doosan.

At the onset of the Bankruptcy Cases, the Debtors, with the aid and guidance of their financial advisor, TGI Financial, Inc. dba Gerbsman Partners ("Gerbsman Partners"), vigorously marketed their assets in order to consummate the Sale of their assets. The Debtors and Doosan negotiated and entered into that certain ASSET PURCHASE AGREEMENT dated June 26, 2014 (the "Purchase Agreement") pursuant to which Doosan agreed to act as the "stalking horse bidder."

A summary of the Purchase Transaction was previously provided to Creditors, Equity Security Holders and other parties in interest in connection with the Debtors' proposed Sale to Doosan [see D.E. 139] which included the following:

- **Purchased Assets** – Doosan will purchase all of the Debtors' right, title and interest of any nature whatsoever in the assets identified in the Purchase Agreement, including, without limitation, the Assumed Contracts, licenses, permits and governmental authorizations required to operate the business, all avoidance claims or causes of action under Chapter 5 of the Bankruptcy Code or any similar actions under any other applicable law as against Designated Parties[3], free and clear of liens, claims, encumbrances and other interests, with the exception of certain Excluded Assets. Excluded Assets include cash, certain contracts and leases as designated by Doosan or the Successful Purchaser, the assets of any employee benefit plan, and other identified assets.

---

[3] As defined in the Section 2.1(m) of the Purchase Agreement, such "Designated Parties" are limited to "…any of the Sellers' (i) vendors, suppliers, customers or trade creditors with whom the Purchaser continues to conduct business in regard to the Purchased Assets after the Closing, (ii) the Sellers' counterparties under any licenses of Intellectual Property that are Assumed Contracts or counterparties under any other Assumed Contracts or Assumed Leases and (iii) any affiliates of any of the Persons listed in clauses (i) through (ii);…"

AMENDED DISCLOSURE STATEMENT FOR JOINT CHAPTER 11 PLAN OF DEBTORS AND OFFICIAL COMMITTEE OF UNSECURED CREDITORS (Dated May 14, 2015)

Case: 14-44191    Doc# 665    Filed: 05/14/15    Entered: 05/14/15 12:25:53    Page 21 of 109

- **Consideration** – The purchase price for the Purchased Assets shall be equal to the sum of (a) $20,000,000 in cash for all Purchased Assets identified in the Purchase Agreement other than assets that are subject to an Encumbrance securing certain specified Secured Facilities ("Encumbered Assets"), (b) an aggregate amount of up to $15,000,000 for all Encumbered Assets to the extent provided in Schedule 2.4 to the APA, subject to the consent of the lenders under the applicable Secured Facility to sale of such Encumbered Assets free and clear of all such Encumbrances[4], and (c) assumption of certain Liabilities as expressly set forth in the Purchase Agreement (including, without limitation, payment of Cure Costs in respect of Assumed Contracts up to an aggregate amount of $12,899,000, subject to certain limitations set forth in the Purchase Agreement).

On June 27, 2014, the Debtors filed their MOTION TO AUTHORIZE DEBTORS TO ASSUME AND ASSIGN EXECUTORY CONTRACTS AND UNEXPIRED LEASES IN CONNECTION WITH THE SALE OF SUBSTANTIALLY ALL OF ITS ASSETS (11 U.S.C. § § 363 AND 365) [D.E. 138] (the "Assumption Motion"), and on June 30, 2014, the Debtors filed their MOTION BY DEBTORS TO SELL CERTAIN ASSETS OF THE DEBTORS ASSETS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS [D.E. 148] (the "Sale Motion")[5] by which the Debtors sought Court approval of the Sale transaction to Doosan or to the highest and best bidder following an auction; however, because no qualified bids were received to participate, no auction was conducted.

At the Sale Hearing, the Debtors sought Court approval of the Sale to Doosan. Thereafter on July 18, 2014, the Court entered its orders approving the Assumption Motion and the Sale Motion [D.E. 262 and 260]. The Purchase Transaction was closed to Doosan on July 18, 2014. Subsequently, to facilitate and govern the transition of the Debtors' business corresponding to the purchased assets, to Doosan, the Debtors and Doosan negotiated terms of a transition services agreement which are embodied in an amendment to the Purchase Agreement. On August 7, 2014, the Court entered its order granting the Debtors' motion for approval of the amendment to the Purchase Agreement [D.E. 316]. Among other things, the amendment (a) reduced the base purchase price to be paid to the Debtors by $200,000 to reflect a downward adjustment for certain assets which ultimately were omitted from the body of purchased assets, and (b) amended the Agreement such that it shall bind and inure to the benefit of any liquidating trustee and/or plan administrator

---

[4] Such Encumbered Assets were not included in the Purchase Transaction, as discussed below at Sec. 5.3.2.
[5] A copy of the executed Purchase Agreement is attached to the Sale Motion as its Exhibit "A."

TTH
H:\Client Matters\- F&R\ClearEdge\PI\CE Inc\DS\5-14-15\v8.docx

15

AMENDED DISCLOSURE STATEMENT FOR JOINT
CHAPTER 11 PLAN OF DEBTORS AND OFFICIAL COMMITTEE
OF UNSECURED CREDITORS (Dated: May 14, 2015)

Case: 14-44191    Doc# 665    Filed: 05/14/15    Entered: 05/14/15 12:23:58    Page 22 of 109

appointed in the Bankruptcy Cases.

In accordance with the Sale Order, Doosan paid the aggregate amount of $32,397,264.26, to the Debtors representing the total amount of Sale Proceeds received by the Debtors pursuant to the Purchase Agreement.  From such Sale Proceeds, and as authorized by the Bankruptcy Court, the Debtors have paid (a) $15,879,350.77 in cure amounts owed to the counterparties whose executory contracts were assumed and assigned to Doosan, (b) $1,175,000 representing fees and expenses incurred by Gerbsman Partners for its services related to the Sale, (c) $460,287.58 representing the amount of a warehouseman's lien claim asserted by Network Global Logistics, (d) $164,490.03 representing the amount of a reclamation claim asserted by Universal Sheet Metal, (e) $90,000 representing the amount of a carrier lien claim asserted by DT Gruelle Company Group, LLC and (f) $920,213.43 related to certain parties asserting reclamation claims, claims arising under Bankruptcy Code Section 503(b)(9) and/or claims based on carrier's liens, as described in greater detail below. $2,883,222.45 remains held in escrow by Debtors' counsel pending the resolution of outstanding cure amounts.  After resolution of all such amounts, the balance of such escrowed funds will be turned over to the Estates or the Liquidation Trust, as applicable, as Available Cash.

The Debtors estimate that the net proceeds from the Purchase Transaction approximate $13,708,000.

### 5.3.2 **Secured Lenders.**[6]

Prior to the Petition Date, the Debtors entered into separate financing arrangements with four entities (collectively, the "Lenders") to finance certain Fuel Cell projects related to energy services agreements (each, an "ESA") between the Debtors and various third-party customers.  As indicated above, the Purchase Agreement provided an option (a "Sale Election") for the Lenders to consent to the inclusion of certain "Encumbered Assets" (i.e., the applicable ESAs and any related financed equipment, materials and components) in the Purchase Transaction to Doosan, which would have resulted in up to an additional $15,000,000 in Sale Proceeds paid to the Debtors.  However, none of the Lenders exercised its Sale Election, and, as a result, no Encumbered Assets subject to any of the

---

[6] Additional Secured Creditors and lienholders are described at Section 5.4.1 below.

TTH
H:\Client Matters\- F&R\ClearEdge\PI\CE Inc\DS\5-14-15\v8.docx

16

AMENDED DISCLOSURE STATEMENT FOR JOINT
CHAPTER 11 PLAN OF DEBTORS AND OFFICIAL COMMITTEE
OF UNSECURED CREDITORS (DATED MAY 14, 2015)

Case: 14-44191   Doc# 665   Filed: 05/14/15   Entered: 05/14/15 12:23:55   Page 23 of
109

Lenders' security interests were included in the Purchased Transaction. Instead, the objections of each Lender to the Sale were addressed by the entry of the Debtors and Doosan's affiliate, Doosan Fuel Cell America, Inc. ("Doosan Fuel"), into sub-contractor agreements for the benefit of each third-party customer using the Encumbered Assets. The current disposition with respect to each Lender is summarized as follows.

**Talmer Bank & Trust ("Talmer")**

Under certain non-recourse loan documents, Talmer provided working capital to the Debtors pursuant to certain ESAs with various customers. In connection with the Sale, the Debtors and Doosan Fuel entered into a certain Sub-Contractor Agreement whereby the Debtors designated Doosan Fuel as a subcontractor to provide, on behalf of the Debtors, maintenance services to the Fuel Cells under the ESAs to customers for a 90-day period, to enable Doosan and Talmer to continue negotiations, pending the transfer of the Fuel Cell units and the assumption and assignment of the ESAs to Talmer.

Since the Sale, the Debtors have returned the Encumbered Assets subject to Talmer's lien, and therefore such lien has been extinguished. The Plan Proponents and Talmer remain in negotiations to reach a resolution regarding the ESAs, tax reimbursements and all claims and disputes between the parties.

**REF Investments, Ltd. ("REF")**

REF and one of the Debtors' non-Debtor affiliates, ClearEdge Power Finance LLC ("CEP Finance"), entered into a financing arrangement in February 2014, pursuant to which REF provided a $3,000,000 loan as working capital. CEP Finance's obligations under the loan are guaranteed by CEP and are secured by a lien on substantially all of CEP Finance's assets, as well the equity of CEP Finance held by CEP LLC. In connection with the Sale, the Debtors and Doosan Fuel entered into a certain Sub-Contractor Agreement whereby the Debtors designated Doosan Fuel as a subcontractor to provide, on behalf of the Debtors, maintenance services to the Fuel Cells under the ESAs to customers for a 90-day period, to enable Doosan and REF to continue negotiations, pending the transfer of the Fuel Cell units and the assumption and assignment of the ESAs to REF.

Since the Sale, the Debtors and REF have engaged in extensive discussions to sell CEP

TTH
H:\Client Matters\- F&R\ClearEdge\Pl\CE Inc\DS\5-14-15\v8.docx

AMENDED DISCLOSURE STATEMENT FOR JOINT
CHAPTER 11 PLAN OF DEBTORS AND OFFICIAL COMMITTEE
OF UNSECURED CREDITORS (dated May 14, 2015)

Case: 14-44191    Doc# 665    Filed: 05/14/15    Entered: 05/14/15 12:25:55    Page 24 of 109

Finance to REF which would, among other things, result in the satisfaction or release of certain obligations owed to REF. The Debtors and REF has exchanged various term sheets, and discussions remain ongoing.

**Crestmark Bank ("Crestmark")**

Pursuant to that certain Sale/Leaseback Agreement and Partial Assignment Agreement executed in November 2013, the Company sold to Crestmark and then leased back certain Fuel Cell equipment delivered to customers under ESAs with CBS Broadcasting, Inc. and Radford Studio Center, Inc., respectively. As security under the sale/leaseback agreement, the Company assigned payments up to a monthly amount received from the customers under each ESA to Crestmark. Similar to Talmer and REF, in connection with the Sale, the Debtors and Doosan Fuel entered into a certain Sub-Contractor Agreement whereby the Debtors designated Doosan Fuel as a subcontractor to provide, on behalf of the Debtors, maintenance services to the Fuel Cells under the ESAs to customers for a 90-day period, to enable Doosan and Crestmark to continue negotiations.

The Debtors have since negotiated and reached a comprehensive agreement with Crestmark set forth in a stipulation (the "Crestmark Stipulation") which, among other things, (1) reconciles and establishes numerous rights, obligations, payments, taxes and other amounts owed by the Debtors, Crestmark and other parties under the ESAs and related financing agreement, (2) results in a waiver of Crestmark's claims relating to the ESAs and the lease agreement, including its Secured Claim asserted in the Cases in the amount of $4.4 million, (3) results in reimbursements to the Debtors out of funds paid by customers for certain taxes paid or payable by the Debtors with respect to the ESAs, (4) rejects the lease agreement with Crestmark, and (5) assumes and assigns the ESAs to Crestmark's affiliate. On February 5, 2015, the Court entered its order [D.E. 562] authorizing the Debtors to enter into the Crestmark Stipulation.

**VFS LLC and CM TFS LLC (together, "VFS")**

Similar to Crestmark, the filings by VFS are based on that certain Sale/Leaseback Agreement and Partial Assignment Agreement entered into as of August 29, 2013, pursuant to which the Company sold to VFS and then leased back certain fuel cell equipment delivered to a customer under its ESA with Western Connecticut State University. As security under the sale/leaseback

TTH
H:\Client Matters\- F&R\ClearEdge\PI\CE Inc\DS\5-14-15\v8.docx
AMENDED DISCLOSURE STATEMENT FOR JOINT CHAPTER 11 PLAN OF DEBTORS AND OFFICIAL COMMITTEE OF UNSECURED CREDITORS (DATED MAY 14, 2015)

Case: 14-44191    Doc# 665    Filed: 05/14/15    Entered: 05/14/15 12:25:53    Page 25 of 109

agreement, the Company assigned payments up to a monthly amount received from the customer under the applicable ESA to VFS. As with the other Lenders, in connection with the Sale, the Debtors and Doosan Fuel entered into a certain Sub-Contractor Agreement whereby the Debtors designated Doosan Fuel as a subcontractor to provide, on behalf of the Debtors, maintenance services to the Fuel Cells under the ESAs to customers for a 90-day period, to enable Doosan and VFS to continue negotiations.

The Debtors have engaged VFS in negotiations to sell the Fuel Cell units and equipment associated with the ESAs which will result in the satisfaction or release of certain of the Debtors' obligations to VFS.

### 5.3.3 **Reconciliation and Resolution of Claims.**

In addition to the liens and Claims of the Lenders and the issues related thereto, the Debtors have made substantial progress in analyzing, reconciling and addressing numerous Proofs of Claims filed against the Estates. Since the closing of the Purchase Transaction and the transition to Doosan, the Debtors and their counsel have completed an initial review of a group of larger Claims which they have identified as disputed. The Debtors have contacted claimants asserting such Claims in order to resolve the various disputed amounts. As a result, the Plan Proponents estimate that out of initial body of Claims asserted against the Estates, including filed and scheduled Claims in the amount of approximately $135,700,000, their efforts have resulted in a reduction of approximately $29,500,000, leaving an estimated total Claim balance of $106,200,000 as of March 31, 2015, of which approximately $16,600,000 is asserted as Secured Claims, $5,900,000 is asserted as Priority Claims and $83,700,000 is asserted as General Unsecured Claims. The Plan Proponents remain in the process of attempting to resolve remaining disputed Claims with these claimants, and to the extent informal resolution cannot be reached, the Debtors and/or the Committee may file, and in some instances have filed, objections to such disputed Claims. Pursuant to the Plan, after the Effective Date, the Liquidation Trust will review all Proofs of Claim, file objections as appropriate, and ultimately resolve all Disputed Claims with the exception of any Claims (a) that have been Allowed prior to the Effective Date pursuant to a written agreement with the Debtors, the Committee and/or the Bankruptcy Court, as appropriate, and (b) that, in the reasonable business judgment of the

TTH
H:\Client Matters\- F&R\ClearEdge\PI\CE Inc\DS\5-14-15\v8.docx

AMENDED DISCLOSURE STATEMENT FOR JOINT
CHAPTER 11 PLAN OF DEBTORS AND OFFICIAL COMMITTEE
OF UNSECURED CREDITORS (DATED MAY 14, 2015)

Case: 14-44191    Doc# 665    Filed: 05/14/15    Entered: 05/14/15 12:25:55    Page 26 of
109

Liquidation Trustee, are *de minimis* in amount and insufficient to warrant incurring the expense to perform such review.

The Debtors also have analyzed certain warehousemen's liens, reclamation Claims, and/or administrative Claims arising under section 503(b)(9) of the Bankruptcy Code asserted by various parties during the Bankruptcy Cases. In some, but not all, instances, the interests asserted by these parties attached to the Sale Proceeds as set forth in the Sale Order. Pursuant to certain stipulations with Creditors and the Committee and/or pursuant to Orders entered by the Bankruptcy Court, the Debtors have resolved and paid out approximately $937,123 to Creditors. The Debtors estimate that $350,000 in additional warehousemen's liens, reclamation Claims, and/or Administrative Claims arising under Bankruptcy Code Section 503(b)(9) which have been or may be asserted remain unresolved, and to the extent they are not resolved prior to the Plan Effective Date and are Allowed Claims, they will be accorded the treatment set forth in the Plan for Administrative Claims or Secured Claims, as applicable.

The Debtors also have resolved the fully Secured Claim filed by Wells Fargo National Association ("Wells Fargo") based on its security interest in a money market account in CEP's name, pursuant to various standby letter of credit agreements and a related security agreement (the "Wells Fargo Agreements"). Subsequent to the Sale, the Debtors, Wells Fargo and Doosan entered into a stipulation which was approved by Court order [D.E. 524], pursuant to which the parties resolved and paid amounts owed under the Wells Fargo Agreements and the Purchase Agreement. Under the stipulation, among other things, (a) Wells Fargo was granted relief from the automatic stay and debited certain fees and costs from the money market account, (b) the residual amounts in the money market account were turned over to Doosan, and (c) Wells Fargo amended its Secured Claim to $0.00.

### 5.3.4   **Income Tax Issues.**

Among other tax liabilities, the Debtors have been in the process of addressing myriad issues with respect to the preparation of income tax returns for the year ending December 31, 2013 (the "2013 Income Tax Returns"), which were due on September 15, 2014, and for the year ending December 31, 2014, which are due on September 15, 2015. During the Bankruptcy Cases, the

Case: 14-44191    Doc# 665    Filed: 05/14/15    Entered: 05/14/15 12:25:55    Page 27 of 109

Debtors attempted to retain their pre-petition accountant to prepare the 2013 Income Tax Returns; however, the United States Trustee would not agree to permit certain terms of the accountant's proposed engagement, and, notwithstanding the Debtors' extensive attempts at working out a resolution satisfactory to all parties, the accountant ultimately declined to proceed with the engagement with the Debtors in August 2014. Unfortunately, this necessitated the Debtors to locate and retain a new accountant less than a month prior to the September 2014 filing deadline. Consequently, the Debtors were unable to timely file their 2013 Income Tax Returns.

The Debtors retained a new accountant - BDO USA, LLP ("<u>BDO</u>") - during the Bankruptcy Cases, which is in the process of preparing the 2013 Income Tax Returns. This process is exceedingly complex due to numerous factors including, for example: (a) the Company's acquisition of UTC Power in 2013 included a significant bargain purchase which considerably complicates the calculation of federal and state taxable income for 2013 and 2014; (b) the need to incorporate certain income adjustments from prior years; (c) the need for BDO to familiarize itself with the Company's operations, the UTC Acquisition, and other particularities which were necessitated by the lack of any prior working relationship between BDO and the Debtors; and (d) the need to apply for and obtain relief from the Internal Revenue Service to file a consolidated return, which application the Debtors submitted to the IRS in March 2015.

It is estimated that it will require the Internal Revenue Service six to eight months to respond to the Debtors' request to file a consolidated return. In the interim, the Debtors will complete and file the 2013 Tax Returns, followed by their 2014 returns; however the ultimate amount of tax liability resulting from the 2013 and 2014 income taxes which will comprise Tax Claims under the Plan (collectively, the "<u>Income Tax Liability</u>") will remain undetermined until the Internal Revenue Service responds to the Debtors' request to file a consolidated return. Consequently, such amounts may be unascertained for several months after the Effective Date.

### 5.3.5 **Retention of Professionals.**

Since the Petition Date, the Debtors have employed the following professionals to assist in their reorganization efforts: (i) Dorsey & Whitney LLP ("<u>Dorsey</u>"), as general bankruptcy counsel; (ii) Davis Polk & Wardwell LLP, as special corporate counsel; (iii) McNutt Law Group LLP

H:\Client Matters\- F&R\ClearEdge\PI\CE Inc\DS\5-14-15\v8.docx

21

AMENDED DISCLOSURE STATEMENT FOR JOINT CHAPTER 11 PLAN OF DEBTORS AND OFFICIAL COMMITTEE OF UNSECURED CREDITORS (DATED MAY 14, 2015)

Case: 14-44191    Doc# 665    Filed: 05/14/15    Entered: 05/14/15 12:25:55    Page 28 of 109

("MLG"), as special conflicts counsel; (iv) Leonard Law Group LLP as special counsel to manage all matters related to a certain receivership proceeding in the Circuit Court for the State of Oregon, County of Clackamas; (v) Kieckhafer, Schiffer & Company LLP, as 401(k) auditors; (vi) BDO as accountants; (vii) KPMG, LLP as tax professionals, and (viii) Gerbsman Partners as financial advisor. In addition, pursuant to the Debtors' motion, the Court appointed Insolvency Services Group, Inc. as the claims and noticing agent for the Clerk of Court for the United States Bankruptcy Court, Northern District of California, in the Bankruptcy Cases. The Creditors' Committee has employed (i) Brown Rudnick LLP ("Brown Rudnick"), as bankruptcy counsel and (ii) Teneo Securities LLC ("Teneo") as financial advisor during the Bankruptcy Cases.

### 5.3.6  **Allowance of Fees of Court-Appointed Professionals.**

The Court has conducted five hearings during the Bankruptcy Cases to consider requests for allowance of compensation and reimbursement of expenses of certain of the Debtors' Professionals and the Committee's Professionals. Subsequent to each respective hearing, the Court has entered various orders approving and allowing certain fees and expenses summarized on **Exhibit "A"** hereto.

In addition to the foregoing, through March 2015, the Debtors' Professionals have accrued unpaid fees, which constitute Administrative Claims, aggregating to an estimated $600,000, and the Committee's Professionals have accrued unpaid fees aggregating to an estimated $586,000.

### 5.3.7  **Appointment of Responsible Person.**

Pursuant to an Order entered by the Bankruptcy Court on May 10, 2014, Gloria Fan was appointed the Responsible Person in the Bankruptcy Cases. As of the date of this Disclosure Statement, Ms. Fan holds the position of Chief Financial Officer of CEP.

### 5.3.8  **Rejection of Real Property Leases.**

During the Bankruptcy Cases, the Debtors determined that certain of the Company's leased premises were no longer necessary for the Debtors' continued operations and were of no value to the Estates. Consequently, the Debtors filed two motions to reject their real property leases. The Court approved both motions pursuant to its orders entered on June 10, 2014 [D.E. 105] and on November 10, 2014 [D.E. 494], thereby authorizing the Debtors to reject certain real property lease agreements.

TTH
H:\Client Matters\- F&R\ClearEdge\PI\CE Inc\DS\5-14-15\v8.docx

22

AMENDED DISCLOSURE STATEMENT FOR JOINT
CHAPTER 11 PLAN OF DEBTORS AND OFFICIAL COMMITTEE
OF UNSECURED CREDITORS (DATED MAY 14, 2015)

The Debtors currently maintain only one real property lease at a reduced cost, for its remaining premises in Sunnyvale, California. The determination whether to assume or reject the remaining real property lease will be made by the Liquidation Trustee, with appropriate notice to directly affected parties, prior to the conclusion of the Confirmation Hearing.

### 5.3.9 Rejection of Executory Contracts.

Prior to the Petition Date, the Debtors were parties to various supply, manufacturing and service agreements, purchase orders, equipment leases, and ESAs with customers. Since the closing of the Purchase Transaction, the Debtors have comprehensively evaluated all remaining executory contracts and unexpired leases, and identified those which are not necessary for the continued administration of the Debtors' Estates, the maintenance of which could impose unnecessary costs and burdens on the Estates. The Debtors filed two motions to reject all such executory contracts and unexpired leases, both of which the Court approved pursuant to its orders entered on November 13, 2014 [D.E. 497] and on February 13, 2015 [D.E. 576].

In addition, the Debtors have entered into stipulations which have been approved by the Court, to reject certain executory contracts, including (a ) the Crestmark Stipulation described above; (b) a stipulation to reject a certain ESA dated April 27, 2009, with New Albertson's, Inc., under which the Debtors were required to provide, *inter alia*, certain services to maintain a Fuel Cell system (approved pursuant to Court Order entered on February 3, 2015 [D.E. 452]) and (c) a stipulation to reject a certain ESA, effective as of May 7, 2010, with the City of New Haven Board of Education, under which the Debtors were required to provide, *inter alia*, certain services to maintain a Fuel Cell system (approved pursuant to Court Order entered on February 3, 2015 [D.E. 559]).

The Plan further provides for the Debtors to reject all pre-petition executory contracts and unexpired leases that are not: (a) assumed or rejected prior to Confirmation; (b) the subject of a pending motion to assume filed prior to Confirmation; or (c) assumed pursuant to the Plan. Such executory contracts and unexpired leases to be rejected include, without limitation, those listed on **Exhibit "D"** attached to the Plan which is incorporated herein by reference.

/ / /

TTH
H:\Client Matters\- F&R\ClearEdge\PI\CE Inc\DS\5-14-15\v8.docx

23

AMENDED DISCLOSURE STATEMENT FOR JOINT
CHAPTER 11 PLAN OF DEBTORS AND OFFICIAL COMMITTEE
OF UNSECURED CREDITORS (DATED MAY 14, 2015)

Case: 14-44191    Doc# 665    Filed: 05/14/15    Entered: 05/14/15 12:25:53    Page 30 of
109

### 5.3.10 **Assumption of Executory Contracts**

The Debtors also have evaluated remaining executory contracts which may be assumed and assigned to third parties to benefit the Estates. One such contract was a certain purchase and installation contract effective as of May 15, 2013 (together with amendments thereto, the "<u>CT Transit Contract</u>") with Connecticut Transit ("<u>CT Transit</u>"). Because after the Sale the Debtors had no ability to service the contract and to comply with its obligations, the Debtors determined that assignment of the contract would alleviate the Debtors of such obligations and would minimize any claims against the Debtors for breach of the contract, including any Rejection Claims. The Debtors negotiated with Doosan and CT Transit to effect the assumption and assignment of the CT Transit Contract to Doosan, and the Court approved the Debtors' motion in this regard on March 24, 2015 [D.E. 601].

In addition to the foregoing, as discussed above, the Debtors also assumed and assigned the ESAs with CBS Broadcasting, Inc. and Radford Studio Center, Inc. to Crestmark in connection with the Crestmark Stipulation.

Pursuant to the Plan, additional executory contracts will be assumed and assigned to the Liquidation Trust. Such contracts are set forth on Exhibit "C" to the Plan which is incorporated herein by reference.

### 5.3.11 **Other Bankruptcy Administration Matters.**

On May 2, 2014, this Court entered its ORDER AUTHORIZING AND DIRECTING JOINT ADMINISTRATION OF ESTATES in the Debtors' Cases.

The Debtors have filed all Monthly Operating Reports during the course of the Bankruptcy Cases and are current in their payments of the United States Trustee's fees. On April 21, 2015, the Debtors filed their most recent Monthly Operating Report for the month ending March 2015, a copy of which is attached hereto as **Exhibit "B"** and incorporated herein by reference.

During the Cases, the Debtors have responded to information requests by the Committee and the Office of the United States Trustee and have attended meetings as requested.

/ / /

/ / /

TTH
H:\Client Matters\- F&R\ClearEdge\PI\CE Inc\DS\5-14-15\v8.docx

AMENDED DISCLOSURE STATEMENT FOR JOINT
CHAPTER 11 PLAN OF DEBTORS AND OFFICIAL COMMITTEE
OF UNSECURED CREDITORS (DATED MAY 14, 2015)

Case: 14-44191    Doc# 665    Filed: 05/14/15    Entered: 05/14/15 12:23:58    Page 31 of 109

5.3.12 **Pending Litigation.**[7]

The only litigation matter that is pending in the Bankruptcy Cases is the adversary proceeding before the Bankruptcy Court entitled *Wojciechowski v. ClearEdge Power Inc. and ClearEdge Power, LLC*; Adv. Proc. No. 14-04152-CN (the "WARN Action"). In this matter, Plaintiff Peter Wojciechowski, an former employee, filed a Complaint on May 2, 2014, seeking damages for himself and similarly situated former employees based on the Debtors' alleged violations under the Worker Adjustment and Retraining Notification Act, 29 U.S.C. §§ 2101 – 2109 (the "WARN Act"). The Debtors have filed an answer denying all of the material allegations of the Complaint and asserted all applicable affirmative defenses to liability. Pursuant to Plaintiff's motion, the Court has certified the case as a class action. The parties have exchanged preliminary discovery and have cooperated to provide for an efficient and effective class action process. The parties have agreed upon a mediator and scheduled a mediation to commence on May 11, 2015. Plaintiff also has filed a Proof of Claim based on the WARN Action, asserting $3,100,000 as a Priority Claim and $3,600,000 as a General Unsecured Claim. The Plan Proponents dispute this Claim, but if the Debtors do not prevail in their defense in the WARN Action, Plaintiff's Claim could be Allowed and would substantially affect the amount of the Claims in Class 3 and Class 5.

5.4 **Assets and Liabilities.**

Since the closing of the Purchase Transaction, the Debtors' remaining assets consist primarily of cash and cash equivalents (including Sale Proceeds), certain contracts including ESA contracts and the rights thereunder and account receivables. The Debtors estimate that the total value of their remaining assets as of March 31, 2015, approximates $15,608,000, including unrestricted cash equivalents of $11,864,000 and restricted cash equivalents comprised of amounts held in trust for payments to be made in connection with the Sale of $2,883,000.

---

[7] In addition to the WARN Action, one or more of the Debtors are defendants in an action proceeding before the Northern California District Court entitled *Eco Friendly Energy Company v. ClearEdge Power, et al.*, Case No. 13-0932 (the "Eco Friendly Action"), wherein Plaintiff ("Eco Friendly") filed a Complaint based on allegations of breach of contract, fraud, negligence and violation of California Business and Professionals Code Section 17200 in connection with a marketing agreement, all of which allegations the Debtors deny. The Eco Friendly Action has been stayed by the Bankruptcy Cases. Eco Friendly has filed a Proof of Claim asserting a General Unsecured Claim in the amount of $1,500,000 based on the same allegations set forth in the Eco Friendly Action, which the Debtors dispute.

Case: 14-44191    Doc# 665    Filed: 05/14/15    Entered: 05/14/15 12:25:55    Page 32 of 109

In addition to the above, remaining assets which may be liquidated include possible avoidance claims and potential causes of action against third parties which constitute Retained Claims.[8]

Based solely on the Proofs of Claims filed in the Bankruptcy Cases, the Debtors estimate filed Secured Claims approximate $16,600,000, filed Priority Claims (other than Tax Claims) approximate $5,140,000, filed Tax Claims approximate $994,000, and filed General Unsecured Claims approximate $76,700,000. However, the foregoing amounts do not account for certain Claims which have been resolved by the Plan Proponents since the closing of the Sale or are disputed and are anticipated to be substantially less or invalidated in their entirety.

Unpaid fees of certain of the Debtors' Professionals and the Committee's Professionals, which constitute Administrative Claims, through March 31, 2015, total an estimated $1,190,000. These amounts remain subject to Bankruptcy Court approval upon duly filed applications for compensation and after hearings on notice.

During the Bankruptcy Cases, the Debtors have reviewed and reconciled a number of Claims with a focus on some of the larger Claims asserted to date. Based on the foregoing, among other factors, the Debtors estimate that their total liabilities through March 31, 2015, approximate $109,500,000, comprised of $106,200,000 in Secured Claims, Priority Claims and General Unsecured Claims, and $3,300,000 in professional fees and other Administrative Claims as described in Section 6.1. This estimate does not include Rejection Claims or Claims which are subject to the ORDER GRANTING EX PARTE MOTION FOR ORDER EXTENDING TIME TO FILE CERTAIN CLAIMS entered on March 20, 2015 [D.E. 595] that may be filed following the filing of this Disclosure Statement and the Plan. If Claims filed by Creditors are allowed in amounts in excess of the above amounts, the total liabilities may vary significantly which would impact the amount of any Pro Rata Distribution to any class under the Plan.

### 5.4.1 **Liens; Debtors' Secured Debts.**

Certain Creditors filed Proofs of Claims asserting Secured Claims against the Debtors. In

---

[8] The Debtors' remaining Assets are described in greater detail below in Section 7.7.

TTH
H:\Client Matters\- F&R\ClearEdge PI\CE Inc\DS\5-14-15\v8.docx
AMENDED DISCLOSURE STATEMENT FOR JOINT
CHAPTER 11 PLAN OF DEBTORS AND OFFICIAL COMMITTEE
OF UNSECURED CREDITORS (DATED MAY 14, 2015)

Case: 14-44191    Doc# 665    Filed: 05/14/15    Entered: 05/14/15 12:23:55    Page 33 of
109

addition, searches of the public records of various governmental offices and the Secretary of State offices for California, Delaware and Oregon[9] conducted on or about the Petition Date or in connection with the Sale revealed several creditors asserting liens, including UCC filings and mechanics liens. To the extent it is determined that any of these parties possessed a valid lien on equipment and/or property sold to Doosan, such lien would have attached to the proceeds of the Sale pursuant to the Sale Order, and any Allowed Secured Claim of the lienholder will receive the treatment accorded in Class 1 of the Plan. To the extent it is determined that any of these parties possesses a valid lien which either (a) attached to any property remaining with the Debtors or (b) was not identified in the Sale Order, any Allowed Secured Claim of the lienholder will receive the treatment accorded in Class 2 of the Plan. The various liens and secured obligations asserted against the Debtors are discussed below.

### 5.4.1.1. **Security Interests In Customer Accounts.**

As discussed above, Talmer and REF filed UCC-1 statements based on the financing arrangements related to certain ESAs. The Encumbered Assets subject to their liens were not included in the Sale, and with respect to Talmer, have been turned over. Consequently, the Debtors do not believe that Talmer possesses any Allowed Secured Claims. The Debtors remain in discussions with REF.

### 5.4.1.2. **Sale/Leaseback Agreements.**

As discussed above, Crestmark and VFS filed UCC-1 statements based on their sale/leaseback financing arrangements related to certain ESAs. The Encumbered Assets subject to their liens were not included in the Sale, and with respect to Crestmark, have been turned over. Consequently, the Debtors do not believe that Crestmark possesses any Allowed Secured Claims. The Debtors remain in discussions with VFS.

---

[9] Searches were conducted for CEP with the Oregon Secretary of State through April 27, 2014. Searches were conducted for CEP, LLC with the California Secretary of State through March 26, 2014, and with the Delaware Secretary of State through March 14, 2014. Searches were conducted for UTC Power (as predecessor to CEPIS) with the California Secretary of State through March 31, 2014; with the Delaware Secretary of State through March 21, 2014; and with the Oregon Secretary of State through April 1, 2014. Additional searches were conducted relating to certain governmental agencies and the Town of South Windsor through May 22, 2014 (Delaware), May 27, 2014 (Connecticut Secretary of State) and June 1, 2014 (Oregon).

TTH
H:\Client Matters\- F&R\ClearEdge\PI\CE Inc\DS\5-14-15\v8.docx

27

AMENDED DISCLOSURE STATEMENT FOR JOINT
CHAPTER 11 PLAN OF DEBTORS AND OFFICIAL COMMITTEE
OF UNSECURED CREDITORS (Dated May 14, 2015)

Case: 14-44191    Doc# 665    Filed: 05/14/15    Entered: 05/14/15 12:25:55    Page 34 of
109

### 5.4.1.3. **Real Property Leases**.

The J. E. Shepard Company and Shepard-Pola, Incorporated filed UCC-1 statements based on the Debtors' real property leases for their premises in South Windsor, Connecticut, pursuant to which certain of the Debtors granted a security interest in the manufacturing equipment and fixtures at such facilities. The underlying leases were assumed and assigned to Doosan in connection with the Purchase Transaction, with the liens intact. J.E. Shepard Company has filed a Secured Claim in the amount of $1,184,210.28, and Shepard-Pola, Incorporated has filed a Secured Claim in the amount of $3,613,399.00. Both landlords have agreed with the Debtors to withdraw these Claims.

### 5.4.1.4. **Liens on Specific Equipment**

Various parties filed UCC-1 statements on specific equipment, and in some instances, any proceeds derived therefrom, based on equipment lease agreements (U.S. Bancorp, Dell Financial Services LLC, and Gelco Corporation d/b/a GE Fleet Services), government grants used to finance Fuel Cell equipment for customer agreements (Connecticut Green Bank fka Clean Energy Finance and Investment Authority and Connecticut Innovations, Inc. ("CT Green Bank")) and certain purchase orders (Samsung Everland).

The Debtors and the Committee have reached a preliminary agreement with U.S. Bancorp as to the resolution of its Claim. Pursuant to this preliminary agreement, the parties will enter into a stipulation granting a full, mutual release of all claims and allowing U.S. Bancorp a General Unsecured Claim of $89,435.99. The parties will be pursuing Court approval of this stipulation in the coming weeks. After discussions with the Committee, CT Green Bank has agreed that its lien is invalid and has filed an amended Proof of Claim eliminating any assertion of secured status and asserting only a General Unsecured Claim. The Debtors have engaged Gelco Corporation in discussions, and it has agreed that its lien is no longer valid.

With respect to the other foregoing liens, the Debtors believe many of them are invalid and, in such instance, any Secured Claim asserted by the purported lienholder is disputed. The Debtors and/or the Committee are in the process of evaluating the alleged liens and will engage, if they have not done so already, certain lienholders to discuss any issues regarding its alleged lien. If necessary and appropriate, the Debtors or the Liquidation Trust may file a complaint to determine the validity,

TTH
H:\Client Matters\- F&R\ClearEdge\PI\CE Inc\DS\5-14-15\v8.docx

AMENDED DISCLOSURE STATEMENT FOR JOINT
CHAPTER 11 PLAN OF DEBTORS AND OFFICIAL COMMITTEE
OF UNSECURED CREDITORS (DATED MAY 14, 2015)

Case: 14-44191    Doc# 665    Filed: 05/14/15    Entered: 05/14/15 12:25:55    Page 35 of
109

priority or extent of each lien and/or to avoid each such lien. Such a complaint would represent a Retained Claim as discussed in Section 7.7.3 below.

### 5.4.1.5. **Mechanic's and/or Construction Liens.**

Several parties asserted mechanic's liens or related construction liens, preliminary notices, or notices of intent related thereto which are described below.

New England Mechanical Services, Inc. and Loureiro Engineering Associates, Inc. (with respect to the Debtors' previously-leased property in South Windsor, Connecticut), and Zimmerman's Commercial Flooring Inc. ("Zimmerman") and DURUS Construction, LLC ("DURUS") (with respect to the Debtors' previously-leased property in Hillsboro, Oregon) have asserted mechanic's liens against the Debtors' leasehold interests based on labor, materials and equipment pertaining to construction, improvements and/or related work on the Debtors' previously-leased premises.

With respect to the South Windsor property, the underlying lease agreement was assumed and assigned to Doosan in connection with the Sale, and any outstanding Claims of New England Mechanical Services, Inc. related thereto were cured, thereby extinguishing any liens. The Debtors dispute the validity of any lien asserted by Loureiro Engineering Associates, Inc. because, among other things, its purported lien certificate is deficient.

With respect to the Hillsboro property, the Debtors have rejected the underlying lease and surrendered the property. The lien asserted by Zimmerman indicates that it was the subcontractor of DURUS and names DURUS as the debtor. DURUS' NOTICE OF CLAIM OF CONSTRUCTION LIEN filed in the Cases [D.E. 66] includes amounts owed to subcontractors. Thus, the Plan Proponents believe that the amount subject to Zimmerman's lien is included in DURUS' lien. DURUS has filed a Secured Claim in the amount of $69,637.97 based on its alleged lien. Furthermore, the owner of the Hillsboro property, Pacific Realty Associates, L.P., has included amounts based on DURUS' lien as a General Unsecured Claim in its own Proof of Claim. In any event, the Plan Proponents are continuing to evaluate the liens and DURUS' Secured Claim but believe that it will be disputed.

California Power Partners, Inc. ("Cal Power") also filed a mechanic's lien with respect to a student housing complex in San Diego, California. The Company had previously installed a Fuel

TTH
H:\Client Matters\- F&R\ClearEdge\PI\CE Inc\DS\5-14-15\v8.docx
AMENDED DISCLOSURE STATEMENT FOR JOINT
CHAPTER 11 PLAN OF DEBTORS AND OFFICIAL COMMITTEE
OF UNSECURED CREDITORS (Dated May 14, 2015)

Cell system at such property, and the property owner (the "Public Finance Authority") and the Debtors were parties to a services agreement which was rejected during the Bankruptcy Cases. Both the Public Finance Authority and Cal Power filed General Unsecured Claims in the Cases but did not file any Secured Claims, but in any event, the Plan Proponents are continuing to evaluate this lien.

The majority of remaining liens or notices of intent related thereto, to the extent asserted against the Debtors, are asserted based on labor, materials and equipment provided pursuant to purchase orders and/or service contracts (or subcontracts) in connection with Fuel Cells installed by the Debtors with respect to a certain April 2013 purchase agreement and related services agreement (the "Verizon Agreements") with Verizon Sourcing LLC ("Verizon") which were assumed and assigned to Doosan in connection with the Sale. The parties asserting mechanic's liens related to the Verizon Agreements include: B-G Mechanical Service, Inc., CSI Electrical Contractors, Inc., Galasso Trucking & Rigging, Inc., Pinto & Teger Electric Corp., Otto H. Rosentreter Company and West-Fair Electric Contractors, Inc. Pursuant to stipulation as set forth on the record at the Sale Hearing, a portion of the Sale Proceeds were reserved in escrow to pay any Claims and cure amounts underlying the liens related to the Verizon agreements, pending reconciliation and final resolution of the final amounts. The Debtors and Verizon have resolved and paid the majority of the underlying Claims and are continuing to resolve remaining Claims. Because all related liens have been or will be extinguished, the Debtors believe that no Allowed Secured Claims exist or arise from the mechanic's and/or construction liens asserted in connection with the Verizon Agreements.

In addition to the foregoing, Perham Construction submitted preliminary notices on private works projects to the Debtors, which do not constitute liens. Further, Perham Construction filed only a General Unsecured Claim in the Cases; thus, it maintains neither any valid liens nor any Allowed Secured Claim against the Estates.

With respect to the construction liens described above, all of the parties asserting such liens are included in the Sale Order and therefore would be accorded treatment in Class 1 to the extent of their Allowed Secured Claims, if any. However, the Plan Proponents believe that many of the liens are invalid and, in such instance, any Secured Claim asserted by the purported lienholder is disputed. The Debtors are in the process of evaluating the alleged liens and will engage, if they have not done

AMENDED DISCLOSURE STATEMENT FOR JOINT CHAPTER 11 PLAN OF DEBTORS AND OFFICIAL COMMITTEE OF UNSECURED CREDITORS (DATED MAY 14, 2015)

so already, each lienholder to discuss any issues regarding its alleged lien. If necessary and appropriate, the Debtors or the Liquidation Trust may file a complaint to determine the validity, priority or extent of each lien and/or to avoid each such lien. Such a complaint would represent a Retained Claim as discussed in Section 7.7.3 below.

### 5.4.1.6. **Possessory Liens.**

D.T. Gruelle Company Group, LLC d/b/a D.T. Gruelle Company ("<u>DT Gruelle</u>"), Network Global Logistics, LLC ("<u>NGL</u>"), Iron Mountain Information Management, Inc. ("<u>Iron Mountain</u>") and Javelin Logistics Corporation ("<u>Javelin</u>") have previously asserted warehousemen's, carrier's or similar possessory liens under service agreements with the Company to perform storage, shipping and related services, pursuant to which the Company allegedly granted security interests in and a lien upon the goods subject to each agreement, to secure storage charges and all amounts due under the agreements. As discussed above, the Debtors reached resolutions with and made payments to DT Gruelle and NGL in connection with the Sale, thereby extinguishing their liens. The services agreements with the remaining parties were not assumed and assigned to Doosan in connection with the Sale.

The Debtors are continuing to investigate the extent and validity of any liens asserted by Javelin and Iron Mountain. The Debtors believe that inventory in Javelin's possession, if any, is unwanted by the Debtors and Doosan. Iron Mountain's lien was not addressed in the Sale Order; however, after the closing of the Sale, Iron Mountain filed a Proof of Claim in the aggregate amount of $17,693.67, of which $5,593.00 is purported to be secured by a warehouseman's lien in boxes in Iron Mountain's storage facilities.

If necessary and appropriate, the Debtors or the Liquidation Trust may file complaints to determine the validity, priority or extent of any purported liens asserted by Javelin and Iron Mountain and/or to avoid such liens. Each such complaint would represent a Retained Claim as discussed in Section 7.7.3 below.

### 5.4.1.7. **Reclamation Claims.**

Advantech Industries, Inc., LLC, Rosemount Inc., Toray Composites (America), Inc., Trane US, Inc., Universal Sheet Metal, Inc. and W.W. Grainger, Inc. have made reclamation demands

TTH
H:\Client Matters\- F&R\ClearEdge\PI\CE Inc\DS\5-14-15\v8.docx
AMENDED DISCLOSURE STATEMENT FOR JOINT CHAPTER 11 PLAN OF DEBTORS AND OFFICIAL COMMITTEE OF UNSECURED CREDITORS DATED MAY 14, 2015)

Case: 14-44191    Doc# 665    Filed: 05/14/15    Entered: 05/14/15 12:25:55    Page 38 of 109

and/or asserted reclamation claims pursuant to Bankruptcy Code Section 546(c) arising from the delivery by such parties of various goods to the Debtors within 45 days prior to the Petition Date. The underlying supply agreement of Universal Sheet Metal, Inc. was assumed and assigned to Doosan in connection with the Sale and its Claim was paid from the Sale Proceeds. The Debtors entered into stipulations with Advantech Industries, Inc. and Toray Composites, pursuant to which their reclamation Claims were satisfied. The Debtors also entered into a stipulation with Trane US, Inc. pursuant to which the Debtors returned the equipment which was the subject of its Claim. As the foregoing reclamation Claims have been resolved, any Claims filed against the Debtors in respect thereof will be the subject of an objection.

With respect to Rosemount Inc. and W.W. Grainger, Inc., as set forth in the Sale Order, to the extent it is determined that either of them properly asserted a reclamation demand and retained reclamation rights on equipment and/or property sold to Doosan, such rights would have attached to the Sale Proceeds, and any such rights, to the extent they constitute Allowed Secured Claims, will receive the treatment accorded in Class 1 of the Plan. To the extent any reclamation rights of Rosemount Inc. and W.W. Grainger, Inc. are determined to be valid and attached to any property remaining with the Debtors, they will receive the return of the property which is the subject of their reclamation demands.

### 5.4.1.8. **Scheduled Debts**.

The Debtors' Schedules D indicate that Gileno Distribution Services, Hartford Distributors Inc., Johnson Matthey Fuel Cells, Xerox Corp. J.M. Rodgers Co. Inc. and SDV (USA), Inc. possess secured claims against the Debtors. Johnson Matthey Fuel Cells was paid in connection with the Sale, and J.M. Rodgers Co. Inc. has notified the Debtors that it is not a lienholder and filed a Proof of Claim which only asserts a General Unsecured Claim. The Debtors' Schedules D indicate the secured portions of Xerox Corp.'s Claim and Hartford Distributors' Claim as $0.00, and indicate Gileno Distribution Services' Claim and SDV's Claim as "unknown." The Debtors are continuing to evaluate the Company's books and records with respect to these scheduled amounts. To the extent they or the Liquidation Trustee, as applicable, determine that the scheduled parties do not possess any liens, Claims, encumbrances or other interests in any of the Debtors' assets, these

TTH
H:\Client Matters\- F&R\ClearEdge\PI\CE Inc\DS\5-14-15\v8.docx

32

AMENDED DISCLOSURE STATEMENT FOR JOINT
CHAPTER 11 PLAN OF DEBTORS AND OFFICIAL COMMITTEE
OF UNSECURED CREDITORS (Dated May 14, 2015)

Case: 14-44191    Doc# 665    Filed: 05/14/15    Entered: 05/14/15 12:25:53    Page 39 of
109

scheduled debts are disputed.

5.4.1.9.   **Filed Claims.**

CT Green Bank, Crestmark, Wells Fargo, VFS, DURUS, Iron Mountain Information Management, LLC, Shepard-Pola Inc. and REF Investments, Ltd., all of which are discussed above, have filed Proofs of Claims asserting Secured Claims in the Bankruptcy Cases.

In addition, the Washington County Tax Collector ("Washington County") has filed a Proof of Claim asserting a Secured Claim in the amount of $102,910.50 allegedly secured by a tax lien on personal property at the Debtors' former Hillsboro, Oregon premises.  If appropriate, the Debtors or the Liquidation Trust may file a complaint to determine the validity, priority or extent of Washington County's purported lien and/or to avoid such lien.  Such a complaint would represent a Retained Claim as discussed in Section 7.7.3 below.  In the event of an objection to Washington County's Claim (for which all rights are reserved), the amount of Washington County's Allowed Secured Claim will be determined by a Final Order.  Any Allowed Secured Claim of Washington County will receive the treatment accorded in Class 2 of the Plan.

5.4.2   **The Debtors' Unsecured Debts.**

The Debtors' review of Claims and discussions with Creditors remains ongoing.   The total Allowed Claims in Class 5 will not be finally determined until all Claims Bar Dates have passed and all objections to Disputed Claims have been resolved or otherwise adjudicated by the Bankruptcy Court.   At the present time, the Debtors estimate Allowed General Unsecured Claims which comprise Class 5 will approximate $57 million.  This is only an estimate based on the review and reconciliation of some, but not all, of the filed General Unsecured Claims based on current available information, and does not include all Claims arising from the rejection of executory contracts and unexpired leases where the bar date for filing a Rejection Claim has yet to expire or has not yet been established.

**ARTICLE VI.**

**CLAIMS AND EQUITY INTERESTS AND TREATMENT UNDER THE PLAN**

The Claims against and Interests in the Debtors, and their treatment under the Plan are summarized below.

TTH
H:\Client Matters\- F&R\ClearEdge\Pl\CE Inc\DS\5-14-15\v8.docx

33

AMENDED DISCLOSURE STATEMENT FOR JOINT
CHAPTER 11 PLAN OF DEBTORS AND OFFICIAL COMMITTEE
OF UNSECURED CREDITORS (DATED MAY 14, 2015)

Case: 14-44191    Doc# 665    Filed: 05/14/15    Entered: 05/14/15 12:25:55    Page 40 of
109

6.1 **Administrative Claims.**

    6.1.1 **Description.**

        Administrative Claims, generally, are claims that arise during the pendency of a chapter 11 case and are entitled to priority in payment, pursuant to Section 507(a)(2) of the Bankruptcy Code. Here, these include Claims for: (a) costs or expenses of administration of a kind specified in Section 503(b) of the Bankruptcy Code, including any actual and necessary costs and expenses of preserving the Bankruptcy Estates incurred on or after the Petition Date and through and including the Effective Date; (b) Claims under Section 503(b)(9) of the Bankruptcy Code for the value of goods received by the Debtors within 20 days before the Petition Date in which the goods have been sold to the Debtors in the ordinary course of the Debtors' business; (c) any cure amounts that must be paid in connection with the assumption of executory contracts or unexpired leases of the Debtors under Section 365 of the Bankruptcy Code; (d) fees due to the United States Trustee pursuant to 28 U.S.C. § 1930(a)(6); and (e) allowed compensation and costs for professional services under Sections 328, 330 and 331 of the Bankruptcy Code or otherwise.

    6.1.2 **Administrative Claims – Estimate.**

        The Plan Proponents anticipate that the majority of Administrative Claims that will remain unpaid as of the Effective Date will be the Fee Claims of the Debtors' Professionals and the Committee's Professionals. As discussed above, the Court has previously approved and allowed fees and expenses on an interim basis to certain of the Debtors' Professionals and the Committee's Professionals. The Debtors have paid the Court-approved amounts. Set forth below are *estimated* fees and expenses for the Debtors' Professionals and the Committee's Professionals which have not yet been approved or paid, through July 30, 2015, which is the estimated Confirmation Date, unless indicated otherwise[10]:

---

[10] Pursuant to the terms of its engagement, fees and expenses incurred by BDO do not become due until certain projects are completed. The date indicated below with respect to BDO is the date by which the projects and services are estimated to be completed. Under the Plan, Fee Claims for professional fees by BDO are defined as Unearned Fee Claims because they will not yet be due as of the Effective Date.
    Kieckhafer, Schiffer & Company LLP and Gerbsman Partners are not included below as they have completed their services for the Company and have been paid their Fee Claim pursuant to the Court orders entered in the Cases.

TTH
H:\Client Matters\- F&R\ClearEdge\PI\CE Inc\DS\5-14-15\v8.docx

34

AMENDED DISCLOSURE STATEMENT FOR JOINT
CHAPTER 11 PLAN OF DEBTORS AND OFFICIAL COMMITTEE
OF UNSECURED CREDITORS (Dated May 14, 2015)

Case: 14-44191    Doc# 665    Filed: 05/14/15    Entered: 05/14/15 12:25:55    Page 41 of
109

| Professional | Estimated fees & expenses for period through July 30, 2015 |
|---|---|
| **Dorsey & Whitney LLP** (Debtors' bankruptcy counsel) | $590,000.00 |
| **Davis Polk & Wardwell LLP** (Debtors' special corporate counsel) | $80,000 |
| **McNutt Law Group LLP** (Debtors' special conflicts counsel) | $7,500 |
| **Leonard Law Group, LLC** (Debtors' special litigation counsel) | $8,800 |
| **BDO USA, LLP** (Debtors' accountants) | $125,000 (through Sept. 15, 2015) |
| **KPMG, LLP** (Debtors' tax professionals) | $122,000 |
| **Brown Rudnick LLP** (Counsel for the Creditors' Committee) | $661,000 |
| **Teneo Securities LLC** (Creditors' Committee's financial advisors) | $295,000 |
| **Insolvency Services Group, Inc.** (Court-approved claims and noticing agent) | $22,100 |
| **TOTAL:** | $1,911,400.00 |

The foregoing are estimates only of amounts accrued through the estimated dates indicated. All professional fees through the Effective Date are subject to Court approval after a hearing on notice to Creditors.

In addition to professional fees, the Debtors hold certain renewable energy credits ("RECs") to be paid to customers under certain ESAs which could constitute Administrative Claims of approximately $500,000, and the Plan Proponents believe that certain Creditors may assert Administrative Claims under Section 503(b) and Section 507(a)(2) of the Bankruptcy Code, some of which are discussed above, which could approximate around $850,000. The Plan Proponents further anticipate that Administrative Claims will include a small amount of current expenses incurred in the ordinary course of the Debtors' operations which they will not have paid by the Effective Date. These amounts will be paid in the ordinary course of business by the Liquidation Trust.

### 6.1.3 **Administrative Claims (Excepting Fee Claims) – Treatment.**

Except to the extent that the holder of a particular Administrative Claim has agreed to a different treatment of such Claim, each holder of an Allowed Administrative Claim shall be paid in

TTH
H:\Client Matters\- F&R\ClearEdge\PI\CE Inc\DS\5-14-15\v8.docx

35

AMENDED DISCLOSURE STATEMENT FOR JOINT CHAPTER 11 PLAN OF DEBTORS AND OFFICIAL COMMITTEE OF UNSECURED CREDITORS (DATED MAY 14, 2015)

Case: 14-44191    Doc# 665    Filed: 05/14/15    Entered: 05/14/15 12:25:55    Page 42 of 109

cash, in full upon the later of: (a) the Initial Distribution Date; (b) if such Claim is initially a Disputed Claim or an order of the Court is required prior to any payment, on the Subsequent Distribution Date following the ultimate allowance of such Administrative Claim by a Final Order of the Bankruptcy Court; or (c) if such Administrative Claim is incurred after the Petition Date in the ordinary course of the Debtors' business, within such time as payment is due pursuant to the terms giving rise to such Claim.

### 6.1.4 Administrative Claims (Excepting Fee Claims) – Deadline for Requests for Payment.

Any request for allowance of an Administrative Claim pursuant to Section 503(b) of the Bankruptcy Code, other than Fee Claims by the Debtors' Professionals and the Committee's Professionals, must be filed on or before the Administrative Claims Bar Date, which is thirty (30) days following the date of the Effective Date, or the holder will be forever barred from asserting such Claim or receiving any payment on account of such Claim.

### 6.1.5 Administrative Claims (Fee Claims) – Treatment

Subject to procedure for requesting allowance of Fee Claims set forth in Section 5.3 of the Plan, and unless the holder of an Allowed Fee Claim agrees to receive other less favorable treatment, each holder of an Allowed Fee Claim will be paid in cash, in full no later than five (5) Business Days after the date that such Claim is Allowed by order of the Bankruptcy Court.

### 6.1.6 Administrative Claims (Fee Claims) – Deadline for Requests for Payment

All final applications requesting for payment of Fee Claims must be filed with the Bankruptcy Court on or before the Fee Claims Bar Date, which is 5:00 p.m. (Pacific Time) on the date that is (i) solely with respect to Unearned Fee Claims (which are Fee Claims that have not yet become due as of the Effective Date, for services which have not been completed as of the Effective Date), the first Business Day after the date that is thirty (30) days after the date on which the fees which comprise the Unearned Fee Claim become due, or (ii) with respect to all other Fee Claims, the first Business Day after the date that is thirty (30) days after Effective Date, unless extended by order of the Bankruptcy Court.

/ / /

TTH
H:\Client Matters\- F&R\ClearEdge\PI\CE Inc\DS\5-14-15\v8.docx

36

AMENDED DISCLOSURE STATEMENT FOR JOINT CHAPTER 11 PLAN OF DEBTORS AND OFFICIAL COMMITTEE OF UNSECURED CREDITORS (DATED MAY 14, 2015)

Case: 14-44191    Doc# 665    Filed: 05/14/15    Entered: 05/14/15 12:25:55    Page 43 of 109

6.2    **Tax Claims.**

    6.2.1    **Description.**

Certain Claims by governmental units, primarily Tax Claims, are entitled to priority over pre-petition Claims of general unsecured Creditors pursuant to Section 507(a)(8) of the Bankruptcy Code. Tax Claims have been filed by various municipal or governmental Creditors for, among other bases, personal property and/or sales and use taxes, which, as of March 31, 2015, aggregate to approximately $994,000.

Tax Claims also include the undetermined amount of the Debtors' 2013 and 2014 Income Tax Liability described above at Section 5.3.4. As set forth therein, the Debtors believe that the amount of these income taxes could be substantial but might not be determined for a months after the Effective Date.

Excluding the 2013 and 2014 Income Tax Liability, the Debtors estimate that Allowed Tax Claims may range from approximately $1,450,000, to $1,730,000. However, pending review of asserted Tax Claims by the Plan Proponents prior to the Effective Date and/or the Liquidation Trust after the Effective Date, the amount of the Allowed Tax Claims may vary from the above estimate. These amounts do not include taxes which have not yet become due which will be paid in the ordinary course when due.

    6.2.2    **Tax Claims – Treatment.**

Except to the extent that the holder of a particular Tax Claim has agreed to a different treatment of such Claim, each holder of an Allowed Priority Tax Claim will be paid in cash, in full on the date that is the later of (a) the Initial Distribution Date or (b) on the first Subsequent Distribution Date after the date such Tax Claim becomes an Allowed Claim plus interest on such Allowed Claim at the rate of interest determined under applicable non-bankruptcy law pursuant to Bankruptcy Code Section 511, from the Effective Date through the date of payment in full; provided, however, that (i) no such payment will be made longer than five (5) years from the Petition Date, and (ii) no holder of an Allowed Tax Claim will be treated in a manner less favorable than any Allowed General Unsecured Claim in Class 5.

/ / /

TTH
H:\Client Matters\- F&R\ClearEdge\PI\CE Inc\DS\5-14-15\v8.docx
AMENDED DISCLOSURE STATEMENT FOR JOINT
CHAPTER 11 PLAN OF DEBTORS AND OFFICIAL COMMITTEE
OF UNSECURED CREDITORS (DATED MAY 14, 2015)

Case: 14-44191    Doc# 665    Filed: 05/14/15    Entered: 05/14/15 12:23:55    Page 44 of
109

6.3 **Class 1: Secured Claim of Sale Proceeds Lienholders.**

6.3.1 **Description (Class 1 Under the Plan).**

Class 1 consists of the Allowed Claims of Sale Proceeds Lienholders to the extent that such Claims, if any, constitute Allowed Secured Claims. The Sale Proceeds Lienholders are those Persons who asserted liens, claims and interests against any of the Debtors' assets purchased by Doosan in the Purchase Transactions, which liens, claims and interests attached to the net proceeds received from the Purchase Transaction pursuant to the Sale Order. Such liens are listed in Exhibit "A" to the Sale Order and are described above in Section 5.4.1.

6.3.2 **Secured Claims of Sale Proceeds Lienholders – Treatment.**

Except to the extent a holder of a Class 1 Claim agrees to less favorable treatment, the legal, equitable, and contractual rights of the holders of Class 1 Claims, including the retention of any liens to the extent not avoidable, remain unaltered. Each holder of an Allowed Class 1 Claim, to the extent there are any such Claims, will receive on the Effective Date, or as soon as practicable thereafter, payment in cash up to the Allowed Amount of such Secured Claim, from, but only to the extent of, the proceeds of the Sales Transaction.

CLASS 1 IS UNIMPAIRED AND THE HOLDERS OF ALLOWED CLAIMS IN CLASS 1 ARE DEEMED, PURSUANT TO SECTION 1126(F) OF THE BANKRUPTCY CODE, TO ACCEPT THE PLAN.

6.4 **Other Secured Claims.**

6.4.1 **Description (Class 2 Under the Plan).**

Class 2 consists of all Secured Claims which are not Secured Claims of Sale Proceeds Lienholders to the extent any such Secured Claims constitute an Allowed Claim. The Secured Claims asserted by Iron Mountain, Javelin and Washington County, potentially among others, to the extent they are Allowed Claims, are Class 2 Claims.

6.4.2 **Other Secured Claims – Treatment.**

Except to the extent a holder of a Class 2 Other Secured Claim agrees to less favorable treatment, the legal, equitable, and contractual rights of holders of Class 2 Other Secured Claims, including the retention of any lien to the extent not avoidable, remain unaltered. Each holder of an

TTH
H:\Client Matters\- F&R\ClearEdge\PI\CE Inc\DS\5-14-15\v8.docx
AMENDED DISCLOSURE STATEMENT FOR JOINT
CHAPTER 11 PLAN OF DEBTORS AND OFFICIAL COMMITTEE
OF UNSECURED CREDITORS (DATED MAY 14, 2015)

Case: 14-44191    Doc# 665    Filed: 05/14/15    Entered: 05/14/15 12:25:55    Page 45 of
109

Allowed Class 2 Other Secured Claim, to the extent there are any such Secured Claims, will receive on the Effective Date, , or as soon as practicable thereafter, at the Liquidation Trustee's option: (a) the net proceeds from the sale of its collateral at the time of such sale or as soon thereafter as practicable, up to the unpaid Allowed Amount of such Claim and to the same extent, priority and validity of the lien securing such Allowed Claim; (b) the return of its collateral; or (c) such other less favorable treatment as may be agreed to by the Liquidation Trustee and the holder of such Claim; provided, however, that if the holder of an Allowed Other Secured Claim holds cash with a right of setoff, such holder will be entitled to effect the setoff and thereby satisfy the Claim in lieu of receiving payment.

CLASS 2 IS UNIMPAIRED AND THE HOLDERS OF ALLOWED CLAIMS IN CLASS 2 ARE CONCLUSIVELY PRESUMED, PURSUANT TO SECTION 1126(F) OF THE BANKRUPTCY CODE, TO HAVE ACCEPTED THE PLAN.

6.5 **Priority Claims.**

6.5.1 **Description (Class 3 Under the Plan).**

Under Section 507(a) of the Bankruptcy Code, certain Claims filed in the Cases, if Allowed, may be afforded priority status. Specifically, Claims of employees (a) for wages, salaries, or commissions, or (b) for amounts based on contributions made to employee benefits plans incurred in the months prior to the commencement of the Bankruptcy Cases are entitled to priority under Section 507(a)(4) and (5) of the Bankruptcy Code. In addition, certain Claims of individuals based on consumer deposits made prior to the commencement of the Bankruptcy Cases for the purchase, lease or rental of property for personal, family or household use are entitled to priority under Section 507(a)(7) of the Bankruptcy Code. Class 3 is comprised of such Claims. Class 3 does not include Claims asserted under Section 507(a)(2) of the Bankruptcy Code such as those based on Section 503(b)(9), which, as discussed above, are accorded treatment as Administrative Claims under the Plan. Thus, holders of such Administrative Claims must file requests for allowance of their Claims on or before the Administrative Claims Bar Date.

Proofs of Claims filed in the Cases include Priority Claim amounts aggregating to approximately $5,140,000. This amount includes, *inter alia*, $3,100,000 asserted by the plaintiff in

the WARN Action and approximately $325,000 asserted by Aerotek, Inc. a staffing company, whose Claim is disputed and is the subject of an pending objection by the Debtors. Thus, the amount of Allowed Priority Claims will be subject to the outcomes of such actions and others. Further, certain employees, including some asserting WARN Act Claims, have asserted Priority Claims under that certain union Agreement entered into on December 3, 2012, by and between UTC Power and District Lodge 26, International Association of Machinists and Aerospace Workers, which remain subject to reconciliation and possible dispute. In addition, several Creditors have filed Claims based on Bankruptcy Code Section 503(b)(9) which are treated as Administrative Claims under the Plan.

Based on the foregoing, together with a review of the Company's books and records and Proofs of Claims filed in the Cases, the Debtors estimate that the Allowed Amount of Priority Claims may ultimately fall in the range from $2,200,000 to $3,700,000.00.

### 6.5.2 **Employee Priority Claims – Treatment.**

Except to the extent that a holder of a Class 3 Priority Claim agrees to a less favorable treatment, the legal, equitable, and contractual rights of holders of Class 3 Priority Claims remain unaltered. Each holder of an allowed Class 3 Claim shall receive on the Effective Date or as soon thereafter as practicable, payment in full in cash up to the Allowed Amount of such Claim.

CLASS 3 IS UNIMPAIRED AND THE HOLDERS OF ALLOWED CLAIMS IN CLASS 3 ARE CONCLUSIVELY PRESUMED, PURSUANT TO SECTION 1126(F) OF THE BANKRUPTCY CODE, TO HAVE ACCEPTED THE PLAN.

### 6.6 **Administrative Convenience Claims.**

#### 6.6.1 **Description (Class 4 under the Plan).**

Class 4 consists of all Administrative Convenience Claims which are General Unsecured Claims that are: (a) in an amount of three thousand dollars ($3,000) or less; or (b) in an amount greater than three thousand dollars ($3,000) but which is reduced to three thousand dollars ($3,000) (i) by an irrevocable written election by the holder of such Claim made by completing, executing and delivering by the Voting Deadline an election to reduce its Claim, or (ii) pursuant to a settlement agreement between the Liquidation Trust and the holder of such Claim entered into after the Voting Deadline.

TTH
H:\Client Matters\- F&R\ClearEdge\PI\CE Inc\DS\5-14-15\v8.docx

40

AMENDED DISCLOSURE STATEMENT FOR JOINT
CHAPTER 11 PLAN OF DEBTORS AND OFFICIAL COMMITTEE
OF UNSECURED CREDITORS (DATED MAY 14, 2015)

Case: 14-44191    Doc# 665    Filed: 05/14/15    Entered: 05/14/15 12:23:58    Page 47 of
109

A preliminary review of the Debtors' books and records and the filed Claims in these Cases indicate that the total number of Claims in the amount of $3,000 or less is 281, and the aggregate amount of such Claims is $307,601. Consequently, the Plan Proponents estimate that the Distribution to holders of Allowed Administrative Convenience Claims will aggregate to at least such amount but could be greater depending on the number of Claimants possessing Allowed General Unsecured Claims in excess of $3,000 who elect treatment in Class 4.

### 6.6.2    Administrative Convenience Claims – Treatment.

Each holder of an Allowed Class 4 Claim will receive on the Effective Date, in full satisfaction of such Claim, payment in cash up to the Allowed Amount of such Claim; provided, however, that in no event shall a holder receive more than three thousand dollars ($3,000) on account of such Allowed Administrative Convenience Claim.

CLASS 4 IS UNIMPAIRED AND THE HOLDERS OF ALLOWED CLAIMS IN CLASS 3 ARE CONCLUSIVELY PRESUMED, PURSUANT TO SECTION 1126(F) OF THE BANKRUPTCY CODE, TO HAVE ACCEPTED THE PLAN.

### 6.7    General Unsecured Claims Against CEP.

### 6.7.1    Description (Class 5(a) under the Plan).

Class 5(a) consists of all General Unsecured Claims against CEP that are not included or provided for in any other class. With the exception of Claims whose holders have elected treatment under Class 4 of the Plan, this class includes all Rejection Claims and all unsecured Claims of vendors and trade creditors for goods delivered or services provided to CEP prior to the Petition Date, but excluding Administrative Claims, Priority Claims and Administrative Convenience Claims. As set forth above, due to the restructuring of the Company's operations at the end of 2013, the Debtors believe that substantially all General Unsecured Claims are liabilities of CEP LLC and therefore that only nominal Claims, if any, belong in Class 5(a).

### 6.7.2    General Unsecured Claims Against CEP – Treatment.

Except to the extent that a Holder of an Allowed Class 5(a) General Unsecured Claim against CEP agrees to a less favorable treatment, in full and final satisfaction, compromise, settlement, and release of and in exchange for each Class 5(a) Claim, holders of Allowed Class 5(a) General

TTH
H:\Client Matters\- F&R\ClearEdge\PI\CE Inc\DS\5-14-15\v8.docx

AMENDED DISCLOSURE STATEMENT FOR JOINT
CHAPTER 11 PLAN OF DEBTORS AND OFFICIAL COMMITTEE
OF UNSECURED CREDITORS (Dated May 14, 2015)

Case: 14-44191    Doc# 665    Filed: 05/14/15    Entered: 05/14/15 12:25:53    Page 48 of
109

Unsecured Claims, if any, will receive Distributions on the Initial Distribution Date for General Unsecured Claims in form of their respective Pro Rata share of Liquidation Trust Interests in accordance with the provisions set forth in Section 8.2 of the Plan. The first Distribution on account of Allowed General Unsecured Claims against CEP, if any, will occur on the Initial Distribution Date which is earliest date which the Liquidation Trustee determines that it is economically feasible to make initial Distributions to Holders of Allowed Claims pursuant to the Plan. Any Distribution that is not made on the Initial Distribution Date because the Claim that would have been entitled to receive that Distribution is not an Allowed Claim on such date, will be held by the Liquidation Trustee and distributed on the earliest Subsequent Distribution Date after such Claim becomes an Allowed Claim. Thereafter, the Disbursing Agent will make a Distribution on, at minimum, a semi-annual basis unless otherwise agreed upon between the Liquidation Trustee and the Oversight Committee or ordered by the Bankruptcy Court upon motion after notice provided in accordance with the Notice Procedure; provided, however, that Distributions will only be made to the extent they are economically feasible and justifiable.

CLASS 5(A) IS IMPAIRED, AND THE HOLDERS OF ALLOWED CLAIMS IN CLASS 5(A) ARE ENTITLED TO VOTE TO ACCEPT OR REJECT THE PLAN.

### 6.8 **General Unsecured Claims Against CEP LLC.**

#### 6.8.1 **Description (Class 5(b) under the Plan).**

Class 5(b) consists of all General Unsecured Claims against CEP LLC that are not included or provided for in any other class. With the exception of Claims whose holders have elected treatment under Class 4 of the Plan, this class includes all Rejection Claims and all unsecured Claims of vendors and trade creditors for goods delivered or services provided to CEP LLC prior to the Petition Date, but excluding Administrative Claims, Priority Claims and Administrative Convenience Claims.

The total amount of remaining General Unsecured Claims listed in the Debtors' Schedule F is approximately $4.6 million. The total amount asserted against the Debtors in Proofs of Claims filed in the Bankruptcy Cases as of April 15, 2015, is approximately $76,700,000 although this amount includes many Claims which are disputed by the Debtors as discussed above. The Debtors

TTH
H:\Client Matters\- F&R\ClearEdge\PI\CE Inc\DS\5-14-15\v8.docx
AMENDED DISCLOSURE STATEMENT FOR JOINT CHAPTER 11 PLAN OF DEBTORS AND OFFICIAL COMMITTEE OF UNSECURED CREDITORS (Dated May 14, 2015)

Case: 14-44191    Doc# 665    Filed: 05/14/15    Entered: 05/14/15 12:25:58    Page 49 of 109

believe the total Class 5(b) Allowed General Unsecured Claims will, after all disputed amounts and/or objections have been resolved during the term of the Plan, approximate $57 million.[11]

### 6.8.2 General Unsecured Claims Against CEP LLC – Treatment.

Except to the extent that a Holder of an Allowed Class 5(b) General Unsecured Claim against CEP LLC agrees to a less favorable treatment, in full and final satisfaction, compromise, settlement, and release of and in exchange for each Class 5(b) Claim, holders of Allowed Class 5(b) General Unsecured Claims will receive Distributions on the Initial Distribution Date for General Unsecured Claims in form of their respective Pro Rata share of Liquidation Trust Interests in accordance with the provisions set forth in Section 8.2 of the Plan. The first Distribution on account of Allowed General Unsecured Claims against CEP LLC, if any, will occur on the Initial Distribution Date which is earliest date which the Liquidation Trustee determines that it is economically feasible to make initial Distributions to Holders of Allowed Claims pursuant to the Plan. Any Distribution that is not made on the Initial Distribution Date because the Claim that would have been entitled to receive that Distribution is not an Allowed Claim on such date, will be held by the Liquidation Trustee and distributed on the earliest Subsequent Distribution Date after such Claim becomes an Allowed Claim. Thereafter, the Disbursing Agent will make a Distribution on, at minimum, a semi-annual basis unless otherwise agreed upon between the Liquidation Trustee and the Oversight Committee or ordered by the Bankruptcy Court upon motion after notice provided in accordance with the Notice Procedure; provided, however, that Distributions will only be made to the extent they are economically feasible and justifiable.

CLASS 5(B) IS IMPAIRED, AND THE HOLDERS OF ALLOWED CLAIMS IN CLASS 5(B) ARE ENTITLED TO VOTE TO ACCEPT OR REJECT THE PLAN.

### 6.9 General Unsecured Claims Against CEPIS.

#### 6.9.1 Description (Class 5(c) under the Plan).

Class 5(c) consists of all General Unsecured Claims against CEPIS that are not included or provided for in any other class. With the exception of Claims whose holders have elected treatment

---

[11] This estimate excludes the amounts for Administrative Convenience Claims of $3,000 and less, which are accorded treatment in Class 4.

TTH
H:\Client Matters\- F&R\ClearEdge\PI\CE Inc\DS\5-14-15\v8.docx

43

AMENDED DISCLOSURE STATEMENT FOR JOINT
CHAPTER 11 PLAN OF DEBTORS AND OFFICIAL COMMITTEE
OF UNSECURED CREDITORS (DATED MAY 14, 2015)

Case: 14-44191    Doc# 665    Filed: 05/14/15    Entered: 05/14/15 12:25:55    Page 50 of
109

under Class 4 of the Plan, this class includes all Rejection Claims and all unsecured Claims of vendors and trade creditors for goods delivered or services provided to CEPIS prior to the Petition Date, but excluding Administrative Claims, Priority Claims and Administrative Convenience Claims. As set forth above, due to the restructuring of the Company's operations at the end of 2013, the Debtors believe that substantially all General Unsecured Claims are liabilities of CEP LLC and therefore that only nominal Claims, if any, belong in Class 5(c).

### 6.9.2 **General Unsecured Claims Against CEPIS – Treatment.**

Except to the extent that a Holder of an Allowed Class 5(c) General Unsecured Claim against CEPIS, if any, agrees to a less favorable treatment, in full and final satisfaction, compromise, settlement, and release of and in exchange for each Class 5(c) Claim, holders of Allowed Class 5(a) General Unsecured Claims will receive Distributions on the Initial Distribution Date for General Unsecured Claims in form of their respective Pro Rata share of Liquidation Trust Interests in accordance with the provisions set forth in Section 8.2 of the Plan. The first Distribution on account of Allowed General Unsecured Claims against CEPIS, if any, will occur on the Initial Distribution Date which is earliest date which the Liquidation Trustee determines that it is economically feasible to make initial Distributions to Holders of Allowed Claims pursuant to the Plan. Any Distribution that is not made on the Initial Distribution Date because the Claim that would have been entitled to receive that Distribution is not an Allowed Claim on such date, will be held by the Liquidation Trustee and distributed on the earliest Subsequent Distribution Date after such Claim becomes an Allowed Claim. Thereafter, the Disbursing Agent will make a Distribution on, at minimum, a semi-annual basis unless otherwise agreed upon between the Liquidation Trustee and the Oversight Committee or ordered by the Bankruptcy Court upon motion after notice provided in accordance with the Notice Procedure; provided, however, that Distributions will only be made to the extent they are economically feasible and justifiable.

CLASS 5(C) IS IMPAIRED, AND THE HOLDERS OF ALLOWED CLAIMS IN CLASS 5(C) ARE ENTITLED TO VOTE TO ACCEPT OR REJECT THE PLAN.

/ / /

/ / /

TTH
H:\Client Matters\- F&R\ClearEdge\PI\CE Inc\DS\5-14-15\v8.docx

44

AMENDED DISCLOSURE STATEMENT FOR JOINT
CHAPTER 11 PLAN OF DEBTORS AND OFFICIAL COMMITTEE
OF UNSECURED CREDITORS (DATED MAY 14, 2015)

Case: 14-44191    Doc# 665    Filed: 05/14/15    Entered: 05/14/15 12:25:55    Page 51 of
109

6.10    **Interests (Plan Sponsors Holding CEP Stock).**

   6.10.1  **Description (Class 6(a) under the Plan).**

Class 6(a) consists of all Allowed Interests of Equity Security Holders who complete, execute and deliver by the Plan Sponsor Election Deadline an irrevocable written election to be a Plan Sponsor; provided, however, that for purposes of Distribution under the Plan, if any, the Allowed Interests of the holders of CEP's stock will include, and be limited to, the holders of record on the Record Date, any transfers thereafter notwithstanding.  The Plan Proponents do not expect that there will be any Available Cash to make any Distributions to holders of Allowed Interests. However, the Plan provides for treatment to Interest holders in Class 6(a) in the unlikely event any Available Cash remains for Distribution on Allowed Interests.

By electing to be a Plan Sponsor, each holder of Allowed Interests in Class 6(a) agrees to: (a) before the Confirmation Date, contribute in cash, at minimum, the percentage of the amount of the CEP Working Capital Fund which is proportional to the Interest ownership percentage in CEP held by any such Equity Security holder of CEP's Interests as of the earlier of (i) the Record Date or (ii) the Effective Date; (b) before the Confirmation Date, contribute in cash, at minimum, the percentage of the amount of the Plan Sponsor Contribution which is proportional to the Interest ownership percentage in CEP held by any such Equity Security holder of CEP's Interests as of the earlier of (i) the Record Date or (ii) the Effective Date; and (c) accept the terms of payment of the Reorganized CEP Contributions by Reorganized CEP to the Liquidation Trust.  In addition to the foregoing, before the Confirmation Date, some or all of the Plan Sponsors shall contribute the CEP Contributed Fixed Assets to CEP.

For avoidance of doubt, the obligation to continue as a Plan Sponsor under the Plan is conditioned on the Confirmation of the Plan.  In the event that the Plan is not confirmed, the Debtors will promptly return all amounts of the CEP Working Capital Fund, the Plan Sponsor Contribution and all CEP Contributed Fixed Assets to each respective contributing Plan Sponsor.

   6.10.2  **Plan Sponsors Holding CEP Stock Interests - Treatment.**

Except as otherwise provided in the Plan, holders of Allowed Interests in CEP who elect to be Plan Sponsors will have left unaltered the legal, equitable and contractual rights to which each

TTH
H:\Client Matters\- F&R\ClearEdge\PI\CE Inc\DS\5-14-15\v8.docx

AMENDED DISCLOSURE STATEMENT FOR JOINT
CHAPTER 11 PLAN OF DEBTORS AND OFFICIAL COMMITTEE
OF UNSECURED CREDITORS (DATED MAY 14, 2015)

Case: 14-44191    Doc# 665    Filed: 05/14/15    Entered: 05/14/15 12:25:58    Page 52 of
109

such holder is entitled on account of such Interest. The Plan assumes sufficient cash to permit payment in full of Classes 1, 2, 3, and 4, and partial payment of Class 5 Claims. It is anticipated that there will not be any Available Cash for Distributions to holders of Allowed Interests in Class 6(a). Accordingly, under the Plan, no holder of a Class 6(a) CEP Stock Interest will receive or retain any property under the Plan or the Liquidation Trust Agreement on account of such holder's Interest. If, however, Available Cash exceeds expectations and a surplus of Available Cash remains after Classes 1 through 5 are paid in full or adequately reserved for, including payment of interest at the Plan Interest Rate on Allowed Claims in Classes 3 and 5 as may be applicable, then holders of Class 6(a) Allowed Interests, together with holders of Class 6(b) Allowed Interests, will be entitled to receive one or more Distributions of Available Cash in an amount equal to its allocated share of such remaining Available Cash as such allocated share will be determined in accordance with the Debtors' applicable governing documents, and Distributions to holders of Allowed Interests will take into account the priorities in such documents, with any disputes as to priority and treatment to be resolved by the Bankruptcy Court upon motion of the Liquidation Trustee.

CLASS 6(A) IS IMPAIRED BY THE PLAN, AND THE HOLDERS OF CEP STOCK INTERESTS ARE DEEMED TO REJECT THE PLAN AND ARE NOT ENTITLED TO VOTE ON THE PLAN.

6.11 **Interests (Plan Non-Sponsors Holding CEP Stock).**

6.11.1 **Description (Class 6(b) under the Plan).**

Class 6(b) consists of all Allowed Interests of Equity Security Holders who do not elect to be Plan Sponsors. For purposes of Distribution under the Plan, if any, the Allowed Interests of the holders of CEP's stock will include, and be limited to, the holders of record on the Record Date, any transfers thereafter notwithstanding. The Plan Proponents do not expect that there will be any Available Cash to make any Distributions to holders of Allowed Interests. However, the Plan provides for treatment to Interest holders in Class 6(b) in the unlikely event any Available Cash remains for Distribution on Allowed Interests.

6.11.2 **Plan Non-Sponsors Holding CEP Stock - Treatment.**

All stock Interests of Plan Non-Sponsors will be cancelled as of the Effective Date. The Plan

Case: 14-44191    Doc# 665    Filed: 05/14/15    Entered: 05/14/15 12:23:58    Page 53 of
109

assumes sufficient cash to permit payment in full of Classes 1, 2, 3, and 4, and partial payment of Class 5 Claims. It is anticipated that there will not be any Available Cash for Distributions to holders of Allowed Interests in Class 6(b). Accordingly, under the Plan, no holder of a Class 6(b) CEP Stock Interest will receive or retain any property under the Plan or the Liquidation Trust Agreement on account of such holder's Interest. If, however, Available Cash exceeds expectations and a surplus of Available Cash remains after Classes 1 through 5 are paid in full or adequately reserved for, including payment of interest at the Plan Interest Rate on Allowed Claims in Classes 3 and 5 as may be applicable, then holders of Class 6(b) Allowed Interests, together with holders of Class 6(a) Allowed Interests, will be entitled to receive one or more Distributions of Available Cash in an amount equal to its allocated share of such remaining Available Cash as such allocated share will be determined in accordance with the Debtors' applicable governing documents, and Distributions to holders of Allowed Interests will take into account the priorities in such documents, with any disputes as to priority and treatment to be resolved by the Bankruptcy Court upon motion of the Liquidation Trustee.

CLASS 6(B) IS IMPAIRED BY THE PLAN, AND THE HOLDERS OF CEP STOCK INTERESTS ARE DEEMED TO REJECT THE PLAN AND ARE NOT ENTITLED TO VOTE ON THE PLAN.

6.12 **Interests (Holders of CEP Stock Options Interests).**

6.12.1 **Description (Class 7 under the Plan).**

Class 7 includes all Allowed Interests of holders of CEP stock options; provided, however, that the Allowed Interests of the holders of CEP stock options will include, and be limited to, the holders of record on the Record Date, any transfers thereafter notwithstanding.

6.12.2 **Holders of CEP Stock Option Interests – Treatment.**

All CEP Stock Options Interests will be cancelled as of the Effective Date. The holders of CEP Stock Options Interests shall not receive or retain any property under the Plan on account of such Interests.

CLASS 7 IS IMPAIRED BY THE PLAN, AND THE HOLDERS OF CEP STOCK OPTION INTERESTS ARE DEEMED TO REJECT THE PLAN AND ARE NOT ENTITLED TO

TTH
H:\Client Matters\- F&R\ClearEdge\PI\CE Inc\DS\5-14-15\v8.docx
AMENDED DISCLOSURE STATEMENT FOR JOINT CHAPTER 11 PLAN OF DEBTORS AND OFFICIAL COMMITTEE OF UNSECURED CREDITORS (DATED MAY 14, 2015)

Case: 14-44191    Doc# 665    Filed: 05/14/15    Entered: 05/14/15 12:25:55    Page 54 of 109

VOTE ON THE PLAN.

<center>**ARTICLE VII.**</center>

<center>**IMPLEMENTATION OF THE PLAN**</center>

### 7.1 **Administrative Convenience.**

The Plan establishes a class of Administrative Convenience Claims. Due to the number and aggregate amount of potential Allowed Class 4 Claims, in addition to the expected liquidation of assets and collection of receivables over an uncertain period of time, the Debtors believe that the creation of a class of Administrative Convenience Claims, and treatment therefor under the Plan, will preserve significant Estate resources which otherwise would be expended towards administering such Claims. Treatment of Allowed Administrative Convenience Claims is described in Section 6.6.2 above.

### 7.2 **Contributions Under the Plan.**

To enable the continued operation of CEP, before the Confirmation Date, the Plan Sponsors will each contribute their proportional share of the CEP Working Capital Fund to CEP, and some or all of the Plan Sponsors will contribute the CEP Contributed Fixed Assets to CEP.

To enhance the Liquidation Trust Assets available for liquidation and Distributions to Creditors, on or before the Effective Date, the Plan Sponsors will each contribute their proportional share of the Plan Sponsor Contribution as Liquidation Trust Assets. During the Bankruptcy Cases and for the duration of the Reorganized CEP Contributions, Reorganized CEP will calculate and, if required after such calculation, make the Reorganized CEP Contribution payments to the Liquidation Trust.

### 7.3 **Liquidation Trust**.

(a) **Appointment of the Liquidation Trustee**. The Committee, in consultation with and with agreement from the Debtors, has selected Peter S. Kravitz of Province Firm as the Liquidation Trustee for the Liquidation Trust.

(b) **Creation of Liquidation Trust**. On the Effective Date, the Liquidation Trust will be established pursuant to the Liquidation Trust Agreement for the primary purpose of administering and liquidating the Liquidation Trust Assets and resolving disputed Claims. A true

TTH
H:\Client Matters\- F&R\ClearEdge\PI\CE Inc\DS\5-14-15\v8.docx

AMENDED DISCLOSURE STATEMENT FOR JOINT
CHAPTER 11 PLAN OF DEBTORS AND OFFICIAL COMMITTEE
OF UNSECURED CREDITORS (DATED MAY 14, 2015)

Case: 14-44191    Doc# 665    Filed: 05/14/15    Entered: 05/14/15 12:25:53    Page 55 of 109

and correct copy of the Liquidation Trust Agreement is attached as Exhibit "A" to the Plan and incorporated herein by reference. The Liquidation Trustee will sign the Liquidation Trust Agreement and accept all Assets of the Estates, with the exception of the Excluded Liquidation Trust Assets and be authorized to obtain, liquidate, and collect all of the Assets of the Estates not in its possession, with the exception of the Excluded Liquidation Trust Assets, and pursue all of the Retained Claims. The Liquidation Trust will be deemed created and effective without any further action by the Bankruptcy Court or any party. The Liquidation Trust shall have no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Liquidation Trust.

(c) **Beneficiaries of Liquidation Trust**. The beneficiaries of the Liquidation Trust will be the holders of Liquidation Trust Interests entitled to receive Pro Rata Distributions of Liquidation Trust Assets under the Plan. Such beneficiaries will be bound by the Liquidation Trust Agreement. The interests of the beneficiaries in the Liquidation Trust will be uncertified and will be nontransferable except upon death of the interest holder or by operation of law.

(d) **Vesting and Transfer of Assets to the Liquidation Trust**. Pursuant to Bankruptcy Code Section 1141(b), the Liquidation Trust Assets will vest in the Liquidation Trust on the Effective Date; provided, however, that the Liquidation Trustee, with the consent of the Oversight Committee, may refuse to accept and therefore reject any Assets as Liquidation Trust Assets that the Liquidation Trustee believes, in good faith, have no value to the Liquidation Trust or are not necessary to the administration of the Estates under the terms of the Plan. Other than the Excluded Liquidation Trust Assets, which shall revest in Reorganized CEP pursuant to the Plan, any such Assets which are not included as Liquidation Trust Assets shall be abandoned without further Court order. Before or on the Effective Date, the Plan Sponsors will distribute the Plan Sponsor Contribution to the Debtors or to the Liquidation Trust, as applicable, to be included in the Liquidation Trust Assets for Distribution in accordance with the terms of the Plan. As of the Effective Date, all Assets vested in the Liquidation Trust and all Assets dealt with in the Plan will be free and clear of all liens, claims and interests except as otherwise specifically provided in the Plan or in the Confirmation Order.

TTH
H:\Client Matters\- F&R\ClearEdge\PI\CE Inc\DS\5-14-15\v8.docx

49

AMENDED DISCLOSURE STATEMENT FOR JOINT CHAPTER 11 PLAN OF DEBTORS AND OFFICIAL COMMITTEE OF UNSECURED CREDITORS (Dated May 14, 2015)

Case: 14-44191    Doc# 665    Filed: 05/14/15    Entered: 05/14/15 12:25:55    Page 56 of
109

(e) **Certain Powers and Duties of Liquidation Trust and Liquidation Trustee**.

(i) **General Powers of Liquidation Trustee**. The Liquidation Trustee will be the exclusive trustee of the assets of the Liquidation Trust for purposes of 31 U.S.C. Section 3713(b) and 26 U.S.C. Section 6012(b)(3). Except as otherwise provided in the Plan with respect to the Excluded Liquidation Trust Assets and CEP, as applicable, the Liquidation Trust will be the successor to the Debtors and their Estates. Prior to the Effective Date, the Liquidation Trustee is authorized to take all reasonably necessary steps to prepare to administer the Liquidation Trust from and after the Effective Date, including, for the avoidance of doubt, and without limitation, retaining and compensating professionals pursuant to the provisions of the Plan and accessing or copying CEP's books and records. The Liquidation Trustee may compensate its retained professionals pursuant to Section 7.16 of the Plan for all services performed by them in advance of the Effective Date and in preparation for the Liquidation Trustee to administer the Liquidation Trust from and after the Effective Date; provided, however, that any such services must be limited to services provided solely to assist with the transition of the Estates and the Liquidation Trust Assets to the Liquidation Trust as contemplated by the Plan.

(ii) **Books and Records**. On the Effective Date, the Liquidation Trust will: (i) take possession of all books, records, and files of CEP LLC, CEPIS and their respective Estates; and (ii) provide for the retention and storage of such books, records, and files until such time as the Liquidation Trust determines, in accordance with the Liquidation Trust Agreement, that their retention is no longer necessary or required. The Liquidation Trustee, upon her/his reasonable request to Reorganized CEP, will be entitled to access and/or to make or request copies of, any of CEP's books and records, subject to reimbursement of the reasonable, documented, out-of-pocket costs and expenses incurred by Reorganized CEP, if any.

(iii) **Investments of Cash**. The Liquidation Trust may invest cash (including any earnings thereon or proceeds therefrom) as permitted by Bankruptcy Code Section 345; provided, however, that such investments are permitted to be made by a liquidating trust within the meaning of Treasury Regulation Section 301.7701-4(d), as reflected therein, or under applicable IRS guidelines, rulings, or other controlling authorities.

TTH
H:\Client Matters\- F&R\ClearEdge\PI\CE Inc\DS\5-14-15\v8.docx

50

AMENDED DISCLOSURE STATEMENT FOR JOINT
CHAPTER 11 PLAN OF DEBTORS AND OFFICIAL COMMITTEE
OF UNSECURED CREDITORS (DATED MAY 14, 2015)

Case: 14-44191    Doc# 665    Filed: 05/14/15    Entered: 05/14/15 12:23:53    Page 57 of
109

(iv) **Costs and Expenses of Administration of Liquidation Trust**. Except as otherwise provided in the Plan or ordered by the Bankruptcy Court, the costs and expenses of the Liquidation Trust incurred on or after the Effective Date, but excluding compensation for the Liquidation Trustee and the Liquidation Trust's professionals, will be paid in accordance with the Liquidation Trust Agreement and the Plan without further order of the Bankruptcy Court. Under no circumstances will the costs and expenses of administering the Liquidation Trust be charged against any assets other than Liquidation Trust Assets.

(v) **Reporting**. In no event later than thirty (30) days after the end of the first calendar quarter following the Effective Date and on a quarterly basis thereafter until all Available Cash, including all amounts in any Disputed Claims Reserve has been released or paid out in accordance with the Plan, the Liquidation Trustee shall file with the Bankruptcy Court and serve on the Notice Parties, a report setting forth the amounts, recipients and dates of all Distributions made by the Liquidation Trustee under the Plan through each applicable reporting period.

(f) **Federal Income Tax Treatment of the Liquidation Trust for the Liquidation Trust Assets; Tax Reporting and Tax Payment Obligations**. For all federal income tax purposes, the Debtors, the Liquidation Trust beneficiaries, the Liquidation Trustee and the Liquidation Trust will treat the Liquidation Trust as a "liquidating trust" within the meaning of Treasury Regulation Section 301.7701-4(d) and IRS Revenue Procedure 94-45, 1994-2 C.B. 124. Consistent with the requirements of Revenue Procedure 94-45, all relevant parties will treat the transfer of the Liquidation Trust Assets to the Liquidation Trust as a transfer of the Liquidation Trust Assets (excluding any Assets that will be distributable by the Disbursing Agent to holders of Allowed Claims that are not beneficiaries of the Liquidation Trust as well as any Assets that are to be reserved on account of Disputed Claims) by the Debtors to the beneficiaries in satisfaction of their Allowed Claims, followed by a transfer of such Liquidation Trust Assets by the Liquidation Trust beneficiaries in exchange for their beneficial interests in the Liquidation Trust. The Liquidation Trust beneficiaries will be treated as the grantors and owners of their respective Pro Rata Shares of the Liquidation Trust Assets for federal income tax purposes. As soon as reasonably practicable after the transfer of the Liquidation Trust Assets to the Liquidation Trust, the Liquidation

TTH
H:\Client Matters\- F&R\ClearEdge\PI\CE Inc\DS\5-14-15\v8.docx
AMENDED DISCLOSURE STATEMENT FOR JOINT CHAPTER 11 PLAN OF DEBTORS AND OFFICIAL COMMITTEE OF UNSECURED CREDITORS (Dated May 14, 2015)

Case: 14-44191    Doc# 665    Filed: 05/14/15    Entered: 05/14/15 12:25:53    Page 58 of 109

Trustee will make a good faith valuation of the Liquidation Trust Assets. The Liquidation Trustee and the Liquidation Trust beneficiaries must value the Liquidation Trust Assets consistently with the values determined by the Liquidation Trustee for all U.S. federal income tax purposes. Allocations of taxable income of the Liquidation Trust will be allocated to the Liquidation Trust beneficiaries in accordance with each such beneficiary's Pro Rata share of the Liquidation Trust. The Liquidation Trustee will file with the IRS tax returns for the Liquidation Trust consistent with its classification as a grantor trusts pursuant to Treasury Regulation Section 1.671-4(a) and will also send to each beneficiary a separate statement setting forth such beneficiary's share of items of Liquidation Trust income, gain, loss, deduction, or credit.

(g) **Removal or Replacement of Liquidation Trustee**. The Oversight Committee will be authorized to bring a motion before the Bankruptcy Court to remove the Liquidation Trustee and to appoint a new Liquidation Trustee, subject to the Notice Procedure; provided, however, that such removal will also be subject to the majority voting procedure set forth in the Liquidation Trust Agreement. Any other party in interest seeking removal of the Liquidation Trustee will be authorized to bring a motion before the Bankruptcy Court to remove the Liquidation Trustee and replace him/her with a new Liquidation Trustee, subject to the Notice Procedure.

(h) **Term of Liquidation Trust**. The Liquidation Trust will terminate in accordance with the terms of the Liquidation Trust Agreement; provided, however, that in no event will the Liquidation Trust be dissolved later than five (5) years from the Effective Date unless the Bankruptcy Court, upon motion, determines within the six-month period prior to the fifth anniversary (or the end of any extension period approved by the Bankruptcy Court) that a fixed period extension (not to exceed three (3) years, together with any prior extensions, without a favorable letter ruling from the Internal Revenue Service that any further extension would not adversely affect the status of the Liquidation Trust as a liquidating trust for federal income tax purposes) is necessary to facilitate or complete the recovery and liquidation of the Assets of the Liquidation Trust.

7.4 **Liquidation Trustee**.

The Liquidation Trustee will serve as the Responsible Person for the Liquidation Trust. The

TTH
H:\Client Matters\- F&R\ClearEdge\PI\CE Inc\DS\5-14-15\v8.docx

52

AMENDED DISCLOSURE STATEMENT FOR JOINT
CHAPTER 11 PLAN OF DEBTORS AND OFFICIAL COMMITTEE
OF UNSECURED CREDITORS DATED MAY 14, 2015)

Case: 14-44191    Doc# 665    Filed: 05/14/15    Entered: 05/14/15 12:25:58    Page 59 of
109

Liquidation Trustee will be the exclusive trustee of the assets of the Liquidation Trust for purposes of 31 U.S.C. Section 3713(b) and 26 U.S.C. Section 6012(b)(3). The powers, rights, and responsibilities of the Liquidation Trustee will be specified in the Liquidation Trust Agreement and, under the supervision of the Liquidation Trust Oversight Committee, will include the authority and responsibility to: (a) receive, manage, invest, supervise, and protect trust assets; (b) pay taxes or other obligations incurred by the Liquidation Trust; (c) retain and compensate, subject to the procedure set forth in Section 7.16 of the Plan, the services of employees, professionals and consultants to advise and assist in the administration, prosecution and Distribution of trust assets; (d) calculate and implement Distributions of trust assets; (e) prosecute, compromise, and settle, in accordance with the specific terms of the Liquidation Trust Agreement and the Plan, Retained Claims vested in the Liquidation Trust; (f) resolve issues involving Claims and Interests; and (g) undertake all administrative functions of the Chapter 11 Cases, including the ultimate closing of the Chapter 11 Cases. The Liquidation Trust will be the successor to all of the privileges of the Estates and the Debtors including, but not limited to, the attorney/client privilege.

The Liquidation Trustee may resign at any time, or may be removed (i) upon motion by the Oversight Committee to the Bankruptcy Court with notice to the Notice Parties, subject to the majority voting procedure set forth in the Liquidation Trust Agreement, or (ii) upon motion by any other party in interest to the Bankruptcy Court with notice to the Notice Parties. In the event the Liquidation Trustee voluntarily resigns, a new Responsible Person will be selected by the Oversight Committee and appointed pursuant to a Final Order by the Bankruptcy Court, following notice provided in accordance with the Notice Procedure. If replaced as the Responsible Person, the Liquidation Trustee must turn over all of the books and records of the Liquidation Trust to the new Responsible Person.

The Liquidation Trustee may, in his or her discretion and subject to approval by the Oversight Committee, employ such other Persons as may be necessary to assist him or her in these Cases.

The Liquidation Trustee will be compensated through the payment of a monthly fee in the following amounts: (i) for the first six (6) months of the engagement, fifteen thousand dollars

Case: 14-44191    Doc# 665    Filed: 05/14/15    Entered: 05/14/15 12:25:58    Page 60 of
109

($15,000) per month; (ii) for months seven (7) through twelve (12) of the engagement, twelve thousand five hundred dollars ($12,500) per month; (iii) for months thirteen (13) through eighteen (18) of the engagement, ten thousand dollars ($10,000) per month; and (iv) thereafter, in an amount to be determined by the Oversight Committee, such amount to be subject to review by the Oversight Committee every six (6) months for the duration of the engagement.  The Liquidation Trustee will be entitled to reimbursement of reasonable out-of-pocket expenses subject to Oversight Committee approval in accordance with the terms of the Liquidation Trust Agreement.  Additional terms of employment of the Liquidation Trustee will be set forth in the Order of Confirmation or a subsequent order of the Bankruptcy Court.  The compensation and reimbursement of expenses payable to any successor Responsible Person will be approved by the Oversight Committee; provided, however, that in the event that the compensation terms proposed to be paid to the successor Liquidation Trustee exceeds the compensation terms paid to the initial Liquidation Trustee, approval of such proposed compensation terms must be approved by the Bankruptcy Court pursuant to the Notice Procedure.  Unless ordered by the Bankruptcy Court, the Responsible Person shall serve without a guaranty or fiduciary bond.

  7.5 **Oversight Committee.**

   On the Effective Date, the Oversight Committee will be formed pursuant to the Liquidation Trust Agreement.  The Liquidation Trust will be governed by the three (3)-member Oversight Committee, two (2) members of which will be selected by the Committee (each a "Committee Representative," and together, the "Committee Representatives"), and one (1) member of which will be selected by the Debtors (such member, the "Debtors' Representative"); provided, however, that any member of the Oversight Committee will each hold a non-disputed, General Unsecured Claim in the amount of at least fifty thousand dollars ($50,000.00).  The Oversight Committee will have the rights, responsibilities and duties provided for in the Liquidation Trust Agreement.  The Liquidation Trustee will report all material matters (as described in the Liquidation Trust Agreement) to and seek approval for all material decisions (as described in the Liquidation Trustee Agreement) from the Oversight Committee.  As set forth in the Liquidation Trust Agreement, material matters and material decisions will include, without limitation, all matters and decisions regarding the

TTH
H:\Client Matters\- F&R\ClearEdge\PI\CE Inc\DS\5-14-15\v8.docx

AMENDED DISCLOSURE STATEMENT FOR JOINT
CHAPTER 11 PLAN OF DEBTORS AND OFFICIAL COMMITTEE
OF UNSECURED CREDITORS (Dated May 14, 2015)

Case: 14-44191  Doc# 665  Filed: 05/14/15  Entered: 05/14/15 12:25:53  Page 61 of
109

commencement and prosecution of, and the decision not to commence and prosecute, any Retained Claims in excess of one hundred fifty thousand dollars ($150,000.00), the retention of any Professionals and the agreement to the terms of compensation of any Professionals.

In the event that any material matter or decision will directly affect a particular Oversight Committee member such that it could lead to a conflict of interest with such Oversight Committee member, such Oversight Committee member will abstain from participating in the approval process with respect to that material matter or decision. If the non-abstaining members of the Oversight Committee do not agree on whether or not to approve the applicable material matter or decision, the Liquidation Trustee will provide the vote to break the deadlock on such matter or decision.

If any member of the Oversight Committee desires to resign from the Oversight Committee after the Effective Date (a "Resigning Member"), then she or he must first notify the remaining members of the Oversight Committee, and a replacement (a "Replacement Member") must be appointed as soon as practicable pursuant to the following procedure: (i) by the Designated Committee Member, in her/his discretion, if such Resigning Member is a Committee Representative; and (ii) by the Debtors' Designee, in her/his discretion, if such Resigning Member was the Debtors' Representative; provided, however, that the Replacement Member must, subject to the following sentences, be a Creditor possessing an Allowed Claim in the amount of at least $50,000 (the "Criteria"). In the event that either the Designated Committee Member or the Debtors' Designee does not locate a suitable Replacement Member meeting the Criteria, then she/he will request names of Replacement Member candidates (the "Identified Candidates") from the other designee (i.e., the Designated Committee Member will make the request to the Debtors' Designee and the Debtors' Designee shall make the request to the Designated Committee Member), which names will be made available to the requesting designee within three (3) Business Days, unless, in the sole discretion of the requesting designee, the Replacement Member must be selected in a shorter time frame. The respective designee will consider and make reasonable efforts to confer with no more than five (5) Identified Candidates from the list provided, if any, about the Replacement Member position. If, after considering and using reasonable efforts to confer with no more than five (5) such Identified Candidates, if any, the Designated Committee Member or the Debtors' Designee, as applicable,

TTH
H:\Client Matters\- F&R\ClearEdge\PI\CE Inc\DS\5-14-15\v8.docx

55

AMENDED DISCLOSURE STATEMENT FOR JOINT
CHAPTER 11 PLAN OF DEBTORS AND OFFICIAL COMMITTEE
OF UNSECURED CREDITORS (Dated May 14, 2015)

Case: 14-44191    Doc# 665    Filed: 05/14/15    Entered: 05/14/15 12:23:53    Page 62 of
109

chooses not to select a Replacement Member who is a qualified Creditor, the Designated Committee Member or the Debtors' Designee, as applicable, may, in his/her discretion, select an independent third-party to serve as the replacement for the Resigning Member; provided, however, that such Person must possess experience and knowledge with respect to bankruptcy administration matters. In no event may the replacement for the Resigning Member be a professional who has previously represented or currently represents the Debtors, the Committee and/or the Liquidation Trust.

The members of the Oversight Committee will be entitled to reasonable compensation at the rate of no greater than $1,000.00 per month.

### 7.6 **Continuing Effect and Performance of Existing Orders**.

The Bankruptcy Court has entered various orders, including the Sale Order, during the pendency of the Bankruptcy Cases which will remain in effect notwithstanding confirmation of the Plan, and the Liquidation Trust will continue to carry out the matters provided for under such orders, as applicable. The Debtors and the Committee reserve the right to move the Bankruptcy Court to rule on and resolve any issues related to these orders.

Nothing in the Plan or this Disclosure Statement is intended to conflict with or derogate from the provisions of the Sale Order or the Purchase Agreement. In the event that any provision of the Plan or the Disclosure Statement conflicts with the Sale Order or the Purchase Agreement, the Sale Order or the Purchase Agreement, as applicable, will control.

### 7.7 **Disposition of Remaining Assets**.

The Debtors are presently in the process of reconciling the consideration paid and received from the Purchase Transaction and liquidating remaining Assets, including, without limitation, the remaining Fuel Cells. All Available Cash derived from such proceeds as of the Effective Date will be transferred to the Liquidation Trust and will be distributed as provided by the Plan. The Liquidation Trust will continue to liquidate remaining Liquidation Trust Assets as appropriate, unless the Liquidation Trustee determines that any Asset is of inconsequential value or that the cost of liquidating such Asset would exceed the expected amount of proceeds. Approval of the Bankruptcy Court will not be required for the sale or other disposition of any such remaining Assets;

TTH
H:\Client Matters\- F&R\ClearEdge\PI\CE Inc\DS\5-14-15\v8.docx

56

AMENDED DISCLOSURE STATEMENT FOR JOINT
CHAPTER 11 PLAN OF DEBTORS AND OFFICIAL COMMITTEE
OF UNSECURED CREDITORS (Dated May 14, 2015)

Case: 14-44191    Doc# 665    Filed: 05/14/15    Entered: 05/14/15 12:25:53    Page 63 of
109

provided, however, that the Liquidation Trustee must obtain the Oversight Committee's approval before abandoning or selling any Asset with a fair market value in excess of fifty thousand dollars ($50,000); and provided, further, however, that the Liquidation Trustee must comply with the Notice Procedure before selling or abandoning any asset with a fair market value in excess of two hundred fifty thousand dollars ($250,000). A description of the Estates' remaining Assets is set forth below.

### 7.7.1 Cash.

As of March 31, 2015, the Debtors had cash on hand of approximately $14,747,000, including unrestricted cash equivalents of $11,864,000 and restricted cash equivalents comprised of amounts held in trust for payments to be made in connection with the Sale, of $2,883,000.

### 7.7.2 Accounts Receivables.

The Debtors estimate that outstanding receivables as of March 31, 2015, approximate $860,000. The large majority of this amount is based on a receivable due and owing from the South Coast Air Quality Management District ("SCAQMD") which is a party with CEP LLC (as successor to UTC) to an ESA dated September 28, 2012, pursuant to which UTC was approved for a grant from the California Self-Generation Incentive Program (the "SGIP") in the amount of $450,000 which was sent to SCAQMD during the Bankruptcy Cases but was never paid to the Debtors.

The remaining receivables consist of outstanding amounts owed from customers, including reimbursements for property taxes of approximately $291,000 and for RECs owed under certain ESAs of approximately $120,000.

### 7.7.3 Retained Claims.

Retained Claims are defined in the Plan, and include, without limitation, (a) all claims against current or former insiders, officers, directors and employees of the Debtors; (b) all claims against Creditors of the Debtors or counterparties to executory contracts or unexpired leases; (c) all claims against all Persons whose alleged liens attached to the proceeds of the Purchase Transaction or other sale of assets; (d) Avoidance Actions defined in the Plan to mean causes of action of the Debtors under Chapter 5 of the Bankruptcy Code; (e) all claims and affirmative defenses against the plaintiffs in the WARN Action; (f) all claims for offsets or reimbursements against the Debtors' vendors, suppliers and/or customers; (g) all claims relating to the allocation of responsibilities for

TTH
H:\Client Matters\- F&R\ClearEdge\Pl\CE Inc\DS\5-14-15\v8.docx

57

AMENDED DISCLOSURE STATEMENT FOR JOINT
CHAPTER 11 PLAN OF DEBTORS AND OFFICIAL COMMITTEE
OF UNSECURED CREDITORS (Dated May 14, 2015)

Case: 14-44191    Doc# 665    Filed: 05/14/15    Entered: 05/14/15 12:25:55    Page 64 of
109

property, sales and use taxes; (h) all claims relating to the ownership of any personal property and rights, including, without limitation, any rights to Tax Attributes and RECs; (i) all claims for indemnification or other damages related to the clean-up and remediation of the Debtors' former real property and facilities in South Windsor, Connecticut; (j) all claims for indemnification or other damages related to or arising from any ESA; and (k) all claims for payment or damages against SCAQMD in relation to the SGIP grant.

The Plan Proponents have not fully evaluated the potential value of the Retained Claims, and because the decisions whether or not to prosecute any Retained Claims, which vest in the Liquidation Trust under the Plan, have not been made, there is no current estimate as to the potential value, if any, that may be derived from Retained Claims. The outcome of the prosecution of any Retained Claims may substantially affect the timing and amount of Available Cash for Distributions to Creditors under the Plan.

The Committee is currently investigating potential causes of action against the Debtors' former directors and officers, prepetition lenders and their affiliates or related parties for, among other things, (a) breaches of fiduciary duties and aiding and abetting such breaches; (b) Avoidance Actions with respect to transactions under which the Debtors incurred substantial obligations; and (c) disallowance, subordination, and/or recharacterization of certain Claims against the Debtors. Subject to the Confirmation of the Plan and prior to the Effective Date, the Committee retains the right to take all actions necessary to pursue any claims that it believes should be asserted and prosecuted on behalf of the Debtors' Estates, including seeking appropriate standing.

Pursuant to the Plan, from and after the Effective Date, the Liquidation Trust will hold all investigation rights for acts, events, or omissions pertaining to Retained Claims and will have the exclusive right to prosecute, settle, or abandon all of the Retained Claims as the sole representative of the Estates, subject to the approval of both the Liquidation Trustee and the Oversight Committee on the decision whether or not to prosecute a Retained Claim. In the event that the Liquidation Trustee and the Oversight Committee dispute the decision to prosecute or not to prosecute a Retained Claim, such dispute will be resolved by a majority vote of the Oversight Committee together with the Liquidation Trustee, as provided in the Liquidation Trust Agreement. If the

TTH
H:\Client Matters\- F&R\ClearEdge PI\CE Inc\DS\5-14-15\v8.docx
58
AMENDED DISCLOSURE STATEMENT FOR JOINT
CHAPTER 11 PLAN OF DEBTORS AND OFFICIAL COMMITTEE
OF UNSECURED CREDITORS (Dated as of May 14, 2015)

Case: 14-44191    Doc# 665    Filed: 05/14/15    Entered: 05/14/15 12:23:55    Page 65 of
109

Liquidation Trust and the members of the Oversight Committee are unable to reach a majority, such dispute will be resolved by the Bankruptcy Court at a hearing upon noticed motion with not less than fourteen (14) days' notice provided to the Notice Parties and a hearing.

The ability of the Liquidation Trust to bring or prosecute a Retained Claim will be deemed to have expired or otherwise be waived on the date that is two (2) years following the Effective Date.

Settlement by the Liquidation Trust of any Retained Claim will require approval of the Liquidation Trustee and the Oversight Committee. In addition, if the amount claimed by the Liquidation Trust against a defendant is greater than or equal to five hundred thousand dollars ($500,000), the settlement of any Retained Claim will require approval of the Bankruptcy Court.

### 7.7.4 **Other Assets.**

Other remaining Assets of the Estates may include the following: (a) all rights to proceeds under any director and officer liability insurance policies of the Debtors; (b) certain remaining contracts, including ESA contracts, and any rights thereunder; (c) any and all rights under the Purchase Agreement; (d) additional Assets excluded from the Purchase Transaction as may be set forth more fully in Section 2.2 of the Purchase Agreement; and (f) miscellaneous office equipment and supplies. The value of some or all the foregoing is largely undetermined and unliquidated, and may be contingent and/or of nominal value. Such Assets will be liquidated or, to the extent of inconsequential value, abandoned by the Liquidation Trust.

### 7.8 **Tax Returns and Payments.**

Reorganized CEP will, as soon as reasonably practicable, file or cause to be filed any and all future, delinquent or final tax returns on account of the Debtors, as may be applicable; provided, however, that the Liquidation Trustee must pay all fees and expenses incurred in the preparation of any such tax returns or must otherwise reimburse Reorganized CEP for its reasonable documented fees and expenses, if any, incurred in preparing the tax returns; provided further, however, that the Liquidation Trustee will have the right to review and comment on any such tax returns filed by Reorganized CEP and no such tax returns may be filed without the prior approval of the Liquidation Trustee, which approval must not be unreasonably withheld or delayed. In addition to Tax Claims which are accorded treatment under the Plan, the Liquidation Trustee will pay all other taxes owed

TTH
H:\Client Matters\- F&R\ClearEdge\PI\CE Inc\DS\5-14-15\v8.docx

AMENDED DISCLOSURE STATEMENT FOR JOINT
CHAPTER 11 PLAN OF DEBTORS AND OFFICIAL COMMITTEE
OF UNSECURED CREDITORS (DATED MAY 14, 2015)

Case: 14-44191    Doc# 665    Filed: 05/14/15    Entered: 05/14/15 12:23:55    Page 66 of
109

by the Debtors attributed to any tax period, or portion thereof, which ends on or before the Effective Date. Reorganized CEP will be responsible for preparing, filing and paying its own tax returns after the Effective Date.

### 7.9 **Cancellation of Documents**.

On the Effective Date, except to the extent otherwise provided in the Plan, including, without limitation, with respect to the Allowed Interests in CEP of the Plan Sponsors, all notes, instruments, debentures, certificates and other documents evidencing Claims and Interests in a Debtor or the Debtors and the Interests, will, with respect to the Debtors, be canceled and deemed rejected and terminated, in consideration for the rights provided under the Plan.

### 7.10 **Termination of Boards and Officers**.

On the Effective Date, the Boards of Directors and the individual directors of CEP LLC and CEPIS, respectively, and all of the Debtors' officers and employees will be terminated from their respective positions with the Debtors. Following the Confirmation Date and prior to the occurrence of the Effective Date, the then-current officers and directors of each of the Debtors will continue in their respective capacities and the Debtors will execute such documents and take such other action as is necessary to effectuate the actions provided for in this Plan.

### 7.11 **Dissolution of the Debtors**.

As of the Effective Date, the Liquidation Trustee will be authorized and empowered to dissolve CEP LLC and CEPIS without any further action required on the part of the Debtors or the Debtors' officers, directors, shareholders, and members. Neither the occurrence of the Effective Date, nor the effectiveness of the Plan, nor any provisions of applicable non-bankruptcy law requiring the dissolution of any business entity upon the cancellation or extinguishment of all equity interests will cause a dissolution of CEP, which will be continued as a corporation immediately following the Effective Date. On the Effective Date, holders of Interests in Reorganized CEP may take any and all necessary or appropriate actions to appoint directors, officers, and managers of Reorganized CEP consistent with the charter, articles of incorporation, and/or by-laws of Reorganized CEP, subject to any limitations of applicable non-bankruptcy law. Notwithstanding anything herein to the contrary, the dissolution of any of the Debtors will have no effect on the

TTH
H:\Client Matters\- F&R\ClearEdge\PI\CE Inc\DS\5-14-15\v8.docx
AMENDED DISCLOSURE STATEMENT FOR JOINT
CHAPTER 11 PLAN OF DEBTORS AND OFFICIAL COMMITTEE
OF UNSECURED CREDITORS (DATED MAY 14, 2015)

Case: 14-44191    Doc# 665    Filed: 05/14/15    Entered: 05/14/15 12:25:53    Page 67 of
109

Debtors' selection of the Debtors' Designee and the authority of such Debtors' Designee to perform the obligations designated to it by the Debtors under the Plan.

### 7.12 **Wind Down of Subsidiaries**.

To the extent permissible under applicable law, the Liquidation Trustee will have full authority to take any action as may be reasonably necessary to carry out or implement the wind down of the Debtors' direct and indirect subsidiaries and closure of any affiliated branch offices, wherever located; provided, however, that the Liquidation Trustee must consult with and obtain the consent of Reorganized CEP prior to winding down and closing any subsidiaries or branch offices, and Reorganized CEP must assist the Liquidation Trustee in executing such wind down and closure to the extent necessary.

### 7.13 **Further Orders**.

Upon motion by the Liquidation Trust on not less than fourteen (14) days' notice to the Notice Parties, or such shorter notice as the Bankruptcy Court may order for cause, the Bankruptcy Court may enter such other and further orders as may be necessary or appropriate to facilitate consummation of the Plan.

### 7.14 **Insurance Policies**.

As of the Effective Date, the Liquidation Trustee will identify each insurance policy, including any of the Debtors' director and officer liability policies (each, a "D&O Policy") and fiduciary liability policies (each a "Fiduciary Policy"), that will be assumed by the Liquidation Trust on behalf of the Debtors effective as of the Effective Date, pursuant to Sections 365 and 1123 of the Bankruptcy Code, to the extent such insurance policy is executory, and coverage for defense and indemnity under any D&O Policy will remain available to all individuals within the definition of "Insured" in the D&O Policy. Prior to the expiration or lapse of any D&O Policy and Fiduciary Policy, the Liquidation Trustee will purchase "tail coverage" for the duration of the Bankruptcy Cases offered in connection with any such expiring or lapsing D&O Policy and Fiduciary Policy, which will name the same insured parties covered under each such D&O Policy and Fiduciary Policy at the same coverage and limits of each such expiring D&O Policy and Fiduciary Policy. On the earlier of the expiration of the current D&O Policy or the date on which the current D&O Policy

TTH
H:\Client Matters\- F&R\ClearEdge\PI\CE Inc\DS\5-14-15\v8.docx

AMENDED DISCLOSURE STATEMENT FOR JOINT
CHAPTER 11 PLAN OF DEBTORS AND OFFICIAL COMMITTEE
OF UNSECURED CREDITORS (DATED MAY 14, 2015)

Case: 14-44191    Doc# 665    Filed: 05/14/15    Entered: 05/14/15 12:25:53    Page 68 of
109

is placed into run-off, the Liquidation Trustee will purchase a new directors and officers liability insurance policy on behalf of and to provide coverage for the Liquidation Trustee, the Oversight Committee and its members, the Debtors' Designee and the Designated Committee Member at equivalent limits and terms as the prior D&O Policies.

Such insurance policies that will be assumed and assigned to the Liquidation Trust are included in Exhibit "B" to the Plan which is incorporated herein by reference. Any insurance policy or executory contract with an applicable insurer, if any, not identified for assumption and assignment will be deemed rejected as of the Effective Date.

7.15 **Post-Confirmation Employment of Personnel**.

The Liquidation Trust and the Disbursing Agent may employ or contract with Persons to perform, or advise and assist in the performance of their respective obligations under the Plan. The Liquidation Trust will be authorized to re-hire the Debtors' former staff of employees, or any members of such staff, to consummate this Plan as needed.

In the event the Liquidation Trustee elects to employ employees or contract with independent contractors after the Confirmation Date (such individuals, the "Post-Confirmation Employees"), the Liquidation Trust will negotiate an appropriate hourly rate of compensation with such Post-Confirmation Employees; provided, however, that in all events, the employment or contracting of any Post-Confirmation Employees, and the compensation to be provided thereto, will be subject to the approval of the Oversight Committee.

The Liquidation Trust may employ the Debtors' Professionals and/or Committee's Professionals for the purposes for which they were employed before the Confirmation Date and for such additional purposes as the Liquidation Trustee may request, subject to approval by the Oversight Committee. The Liquidation Trust also may employ other professionals as necessary to perform their responsibilities under the Plan, subject to approval by the Oversight Committee.

7.16 **Termination of Employee Benefit Plans.**

Unless provided otherwise in the Purchase Agreement or by order of the Bankruptcy Court, the Liquidation Trustee will not have any responsibilities relative to the termination of the Debtors' employee benefit plans. Such employee benefit plans will be terminated on or before the Effective

TTH
H:\Client Matters\- F&R\ClearEdge\PI\CE Inc\DS\5-14-15\v8.docx

62

AMENDED DISCLOSURE STATEMENT FOR JOINT CHAPTER 11 PLAN OF DEBTORS AND OFFICIAL COMMITTEE OF UNSECURED CREDITORS (DATED MAY 14, 2015)

Case: 14-44191    Doc# 665    Filed: 05/14/15    Entered: 05/14/15 12:23:58    Page 69 of 109

Date, with the following exception: for any period for which the Liquidation Trust re-hires the Debtors' employees as Post-Confirmation Employees, the Liquidation Trust will be authorized to continue all employee benefit plans that existed as of the Petition Date, as may be modified as appropriate based on the reduced number of employees. In the event that the Liquidation Trust re-hires any of the Debtors' employees, such employees will be deemed by the Liquidation Trustee as either employees or independent contractors of the Liquidation Trust, and not of the Debtors.

7.17 **Post-Confirmation Compensation and Reimbursement of Professionals**.

All professionals employed by the Liquidation Trust after the Confirmation Date will be entitled to payment of their reasonable post-Confirmation Date fees and reimbursement of expenses on a monthly basis, subject to the following:

(a) Each party requesting payment of such compensation must (i) provide the Liquidation Trustee with detailed invoices, and (ii) serve a Fee Request Notice on the Notice Parties, which notice must include, at a minimum, the following information: (i) the names and titles of the professionals who worked on each matter, (ii) the hourly rates for each such professional, (iii) identification of each category of service performed by each professional and the aggregate time incurred with respect to each such category, and (iv) a statement of all reasonable and necessary expenses for which reimbursement is sought;

i. Any Notice Party or other party may object to any portion of the requested fees and expenses. Any objection to the payment of fees or reimbursement of expenses must be in writing (and sufficiently detailed to allow the party whose compensation is the subject of the objection an opportunity to respond, and ultimately to allow the Bankruptcy Court to rule on such objection), filed with the Bankruptcy Court and served on the Notice Parties and the party whose compensation is the subject of the objection within fourteen (14) days after service of the Fee Request Notice, or the Fee Request Notice will be deemed approved by the Liquidation Trust;

ii. If no objection to a Fee Request Notice is received within the fourteen (14) day period, the Liquidation Trustee will promptly pay the requested amount in full. If an objection to a portion of the fees or expenses requested is timely served, the Liquidation Trustee will promptly pay the undisputed portion of such fees and expenses and reserve monies in the amount of

TTH
H:\Client Matters\- F&R\ClearEdge\PI\CE Inc\DS\5-14-15\v8.docx

63

AMENDED DISCLOSURE STATEMENT FOR JOINT
CHAPTER 11 PLAN OF DEBTORS AND OFFICIAL COMMITTEE
OF UNSECURED CREDITORS DATED (MAY 14, 2015)

Case: 14-44191    Doc# 665    Filed: 05/14/15    Entered: 05/14/15 12:25:53    Page 70 of
109

the disputed fees and expenses pending resolution of said objection.

iii. Any objection to a fee request must be immediately scheduled for a hearing before the Bankruptcy Court, which hearing will take place no later than twenty-eight (28) days from service of the Fee Request Notice or as soon thereafter as the Bankruptcy Court's calendar permits. Any response to the objection must be filed with the Bankruptcy Court and served on the Notice Parties no later than (7) days prior to the hearing. All objections to a Fee Request Notice will be resolved by either: (x) written agreement between the party requesting payment of such fees and expenses and the Liquidation Trustee, or (y) resolution of the disputed amount by the Bankruptcy Court.

(b) Professionals will not otherwise be required to file applications for Bankruptcy Court approval of post-Confirmation fees and expenses.

(c) Notwithstanding the foregoing, and for the avoidance of doubt, all professionals employed by the Liquidation Trust will be eligible for the compensation and reimbursement by the Liquidation Trust of fees and costs earned or incurred for services performed prior to the Effective Date; provided, however, that any such services will be limited to services provided solely to assist with the transition of the Estates and the Liquidation Trust Assets to the Liquidation Trust as contemplated by the Plan.

7.18 **Creditors' Committee**.

On the Effective Date, the Committee will be dissolved and the members thereof shall be discharged from all further authority, duties, responsibilities and obligations related to or arising from and in connection with the Bankruptcy Cases, and the retention or employment of the Committee's Professionals and other agents will terminate other than for purposes of filing and prosecuting applications for final allowance of compensation for professional services rendered and reimbursement of expenses incurred in connection therewith. Notwithstanding anything herein to the contrary, the dissolution of the Committee will have no effect on the Committee's selection of the Designated Committee Member, and the authority of such Designated Committee Member to perform the obligations designated to it by the Committee and under the Plan.

/ / /

Case: 14-44191    Doc# 665    Filed: 05/14/15    Entered: 05/14/15 12:25:53    Page 71 of
109

7.19 **Post-Confirmation Notice**.

7.19.1 **Notice Generally**.

Except as otherwise provided by the Plan, to the extent any action taken in the Bankruptcy Cases after the Effective Date requires notice under the Bankruptcy Code or the Bankruptcy Rules, the Order Limiting Notice entered in the Bankruptcy Cases will continue in effect, and where applicable in accordance with the Plan, notice will be required to the Notice Parties pursuant to the Notice Procedure; provided, however, that notice will not be required to any Person whose Claim has been paid in full.

7.19.2 **Notice Procedure**.

Whenever the Plan requires a Person to comply with the Notice Procedure, such Person seeking the particular relief will be required to serve a written notice on the Notice Parties of the proposed action. Such Person will be authorized to take any action proposed to be taken in such notice twenty-one (21) days after service of such notice unless, before the expiration of such twenty-one (21)-day period, a recipient Notice Party has filed an objection to such proposed action with the Bankruptcy Court and scheduled a hearing on such objection within thirty (30) days after the filing of such objection and upon not less than twenty-one (21) days' notice to all Notice Parties. If any such objection is filed, the Person seeking the particular relief must not take the proposed action unless the Bankruptcy Court approves such action or the objecting party withdraws the objection.

7.20 **Post-Confirmation Reports, Fees and Final Decree**.

7.20.1 **U.S. Trustee Fees**.

Not later than thirty (30) days after the end of each calendar quarter that ends after the Effective Date (including any fraction thereof), the Liquidation Trustee will pay to the United States Trustee the quarterly fee for such quarter until these Cases are converted, dismissed or closed pursuant to a Final Decree, as required by 28 U.S.C. § 1930(a)(6).

7.20.2 **Post-Confirmation Reports**.

Not later than thirty (30) days after the end of each calendar quarter which ends after the Effective Date, the Liquidation Trustee will file and serve upon the United States Trustee a quarterly post-Confirmation status report in substantially the form provided by the United States Trustee.

Case: 14-44191    Doc# 665    Filed: 05/14/15    Entered: 05/14/15 12:23:55    Page 72 of
109

Further reports will be filed thirty (30) days after the end of every calendar quarter thereafter until entry of a Final Decree, unless otherwise ordered by the Bankruptcy Court.

### 7.20.3 **Tax Identification Numbers**.

The Liquidation Trustee may require any Liquidation Trust beneficiary (each a "Beneficiary") to furnish its taxpayer identification number as assigned by the Internal Revenue Service and may condition any Distribution to any Beneficiary upon receipt of such identification number. If a Beneficiary does not timely provide the Liquidation Trustee with its taxpayer identification number in the manner and by the deadline established by the Liquidation Trustee, then the Distribution to such Beneficiary will be administered as an unclaimed Distribution in accordance with the Plan.

### 7.20.4 **Tax Treatment of Reserves for Disputed General Unsecured Claims**.

The Liquidation Trustee may, in her/his sole discretion, determine the best way to report for tax purposes with respect to any reserve for disputed Claims, including (i) filing a tax election to treat any and all reserves for disputed Claims as a "Disputed Ownership Fund" within the meaning of Treasury Income Tax Regulation Section 1.468B-9 ("DOF") for federal income tax purposes rather than to tax such reserve as a part of the Liquidation Trust or (ii) electing to report as a separate trust or sub-trust or other entity. If an election is made to report any reserve for disputed claims as a DOF, the Liquidation Trust will comply with all federal and state tax reporting and tax compliance requirements of the DOF, including but not limited to the filing of a separate federal tax return for the DOF and the payments of federal and/or state income tax due.

### 7.20.5 **Final Decree**.

After the Bankruptcy Estates are fully administered, the Liquidation Trustee will file, and serve on the Notice Parties, an application for entry of the Final Decree.

## **ARTICLE VIII.**
## **DISTRIBUTIONS**

### 8.1 **Distribution Account.**

Under the Plan, the Disbursing Agent will be the Liquidation Trustee and/or any person retained by the Liquidation Trust to effectuate Distributions. The Disbursing Agent will hold any

TTH
H:\Client Matters\- F&R\ClearEdge\PI\CE Inc\DS\5-14-15\v8.docx
AMENDED DISCLOSURE STATEMENT FOR JOINT
CHAPTER 11 PLAN OF DEBTORS AND OFFICIAL COMMITTEE
OF UNSECURED CREDITORS (DATED MAY 14, 2015)

Case: 14-44191    Doc# 665    Filed: 05/14/15    Entered: 05/14/15 12:25:55    Page 73 of
109

funds transmitted to the Liquidation Trust in a segregated trust account administered by the Liquidation Trustee consistent with the provisions of Section 345 of the Bankruptcy Code, for the benefit of holders of Allowed Claims.

### 8.2    **Allocation of Plan Distributions Between Principal and Interest.**

To the extent that any Allowed Claim entitled to a Distribution under this Plan is composed of indebtedness and accrued but unpaid interest thereon, such Distribution will, for all income tax purposes, be allocated to the principal amount of the Claim first and then, to the extent the consideration exceeds the principal amount of the Claim, to the portion of such Claim representing accrued but unpaid interest.

### 8.3    **Delivery of Distributions Generally**.

Distributions to holders of Allowed Claims will be made by the Disbursing Agent, subject to the availability of funds and the economic feasibility of such Distributions.   On and after the Effective Date, the Disbursing Agent will make the Distributions required to be made on account of Allowed Claims or, if applicable, Allowed Interests under the Plan.  Any Distributions to holders of Allowed Claims in Class 5 and Allowed Interests in Class 6, if applicable, will not be made until payment of, or reservation for, all Allowed Claims in Classes 1 through 4, in full.  Any Distribution that is not made on the Initial Distribution Date or on any other date specified in the Plan because the Claim that would have been entitled to receive that Distribution is not an Allowed Claim on such date, will be held by the Disbursing Agent and distributed on the earliest Subsequent Distribution Date after such Claim becomes an Allowed Claim.   Thereafter, the Disbursing Agent will make a Distribution on, at minimum, a semi-annual basis unless otherwise agreed upon between the Liquidation Trustee and the Oversight Committee or ordered by the Bankruptcy Court upon motion after notice provided in accordance with the Notice Procedure; provided, however, that Distributions will only be made to the extent they are economically feasible and justifiable; and provided further, however, that the Liquidation Trustee will make all Distributions necessary to maintain the Liquidation Trust's status as a "liquidating trust" under Treasury Regulation Section 301.7701-4(d).

### 8.4    **Provisions Concerning Disputed Claims Reserve**.

(a)    **Establishment of Disputed Claims Reserve**.  On the Initial Distribution Date

TTH
H:\Client Matters\- F&R\ClearEdge\PI\CE Inc\DS\5-14-15\v8.docx

67

AMENDED DISCLOSURE STATEMENT FOR JOINT CHAPTER 11 PLAN OF DEBTORS AND OFFICIAL COMMITTEE OF UNSECURED CREDITORS (Dated MAY 14, 2015)

Case: 14-44191    Doc# 665    Filed: 05/14/15    Entered: 05/14/15 12:23:53    Page 74 of 109

for any particular Class of Claims, and in connection with making all Distributions required to be made under the Plan, the Liquidation Trustee will establish the Disputed Claims Reserve solely from assets allocable to, or retained on account of, Disputed Claims for Distributions pertaining to each Disputed Claim in each relevant class, as necessary pursuant to the Plan. All cash distributed into the Disputed Claims Reserve will be maintained in one or more interest-bearing accounts at a qualified institution, consistent with the Liquidation Trust Agreement.

(b) **Amounts to Be Reserved**. On the Initial Distribution Date and on any Subsequent Distribution Date, the Liquidation Trustee will reserve (i) with respect to each Disputed Claim that is liquidated, the Ratable proportion of all cash or Liquidation Trust Assets allocated for Distribution on account of such Disputed Claim based upon the face amount of each such Disputed Claim, or such lesser amount as may be agreed to in writing by the holder of the Claim and the Liquidation Trustee or as may be determined by the Bankruptcy Court, as applicable, or (ii) with respect to each Disputed Claim that is unliquidated (including any unliquidated fees, penalties, charges or other similar amounts), such amounts as will be sufficient, as either (a) determined by Final Order of the Bankruptcy Court upon motion of the Liquidation Trustee seeking a determination as to the appropriate amount to reserve, or (b) agreed to in writing by the holder of the Claim and the Liquidation Trustee as the maximum amount that could be owed in the event the Claim is ultimately Allowed. All cash or Liquidation Trust Assets allocable to the Disputed Claims in the relevant class under the Plan will be distributed by the Liquidation Trustee to the relevant Disputed Claim Reserve on the Initial Distribution Date (or such other date on which Distributions for any particular class of Claims are made pursuant to the Plan).

(c) **Distributions**. Unless otherwise required by the applicable treatment provisions of the Plan, Distributions on any Disputed Claim or, if applicable, Disputed Interest, that becomes an Allowed Claim or Allowed Interest will be made on the first Subsequent Distribution Date after the Claim or, if applicable, Interest, is Allowed. Distributions will be made only to the extent of the aggregate Distributions that the holder of any such Allowed Claim or Allowed Interest would have received had such Claim or Interest been Allowed as of the Effective Date less any taxes paid with respect to amounts held in the Disputed Claims Reserve.

TTH
H:\Client Matters\- F&R\ClearEdge\PI\CE Inc\DS\5-14-15\v8.docx

AMENDED DISCLOSURE STATEMENT FOR JOINT
CHAPTER 11 PLAN OF DEBTORS AND OFFICIAL COMMITTEE
OF UNSECURED CREDITORS (Dated May 14, 2015)

Case: 14-44191    Doc# 665    Filed: 05/14/15    Entered: 05/14/15 12:25:53    Page 75 of
109

(d) **Termination of Disputed Claim Reserve**. Each Disputed Claim Reserve will be closed and extinguished by the Liquidation Trustee when all Distributions and other dispositions of Available Cash or other Liquidation Trust Assets required to be made therefrom under the Plan and the Liquidation Trust Agreement have been made. Upon closure of a Disputed Claim Reserve, all Available Cash and other property held in that Disputed Claim Reserve will revest in the Liquidation Trust, and such Available Cash and property will first be Ratably distributed to the other holders of Allowed Claims in the class in respect of which such Disputed Claims Reserve was created, except as otherwise provided in the Plan, and once the Claims in such class are paid in full, will be distributed to holders of Allowed Claims or Liquidation Trust Interests in the order of the priority established by the Plan.

8.5 **Distribution Addresses and Disputed Identify of Holder**.

Distributions to holders of Allowed Claims and Liquidation Trust Interests will be made by the Disbursing Agent: (a) at the addresses set forth in the Proofs of Claim filed by such holders with the Claims Agent; (b) at the addresses set forth in any written notices of address change filed or delivered after the date on which any related Proof of Claim was filed to (i) if such notice is filed or delivered on or prior to the Effective Date, the Debtors and the Claims Agent or (ii) if such notice is filed or delivered after the Effective Date, the Liquidation Trustee and the Claims Agent; or (c) at the addresses reflected in the Schedules relating to the applicable Allowed Claim if no Proof of Claim has been filed and none of the Debtors or the Liquidation Trustee and the Claims Agent have received a written notice of a change of address.

If any dispute arises as to the identity of a holder of an Allowed Claim or Liquidation Trust Interest who is to receive any Distribution, the Liquidation Trust may, in lieu of making such Distribution to such Entity or Person, make such Distribution into an escrow account until the disposition thereof shall be determined by the Bankruptcy Court or by written agreement among the interested parties to such dispute; provided, however, that if the dispute remains unresolved by Final Order for an unreasonable period of time, the Liquidation Trust may request that the Bankruptcy Court order that the property that is the subject of the dispute shall irrevocably become unclaimed property.

Case: 14-44191    Doc# 665    Filed: 05/14/15    Entered: 05/14/15 12:25:58    Page 76 of
109

Distributions, if any, will be sent to holders of Allowed Interests at the address set forth in the relevant Equity Security Holder list as of the Record Date.

### 8.6 **Setoffs**.

The Liquidation Trust may, but will not be required to, setoff against any Claim (for purposes of determining the Allowed Amount of such Claim on which Distribution will be made), any claims of any nature whatsoever that the Estates or the Liquidation Trust may have against the Claim holder, but neither the failure to do so nor the allowance of any Claim will constitute a waiver or release by the Liquidation Trust of any such claim it may have against such Claim holder. Holders of Allowed Claims retain whatever rights to setoff they are otherwise entitled to assert under Bankruptcy Code Section 553.

### 8.7 **No Distribution in Excess of Allowed Amount of Claim**.

Notwithstanding anything to the contrary in the Plan, no holder of an Allowed Claim will receive in respect of such Claim any Distribution in excess of the Allowed Amount of such Claim. Upon a holder of an Allowed Claim recovering the full amount of its Allowed Claim from another source, it thereafter will no longer have any entitlement to receive Distributions under the Plan.

### 8.8 **Withholding and Reporting Requirements**.

In connection with the Plan and all Distributions thereunder, the Liquidation Trustee will, to the extent applicable, comply with all tax withholding and reporting requirements imposed by any federal, state, provincial, local, or foreign taxing authority, and all Distributions will be subject to any such withholding and reporting requirements. The Liquidation Trustee will be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding and reporting requirements.

### 8.9 **Postpetition Interest on Claims**.

Unless otherwise specifically provided for in the Plan or the Confirmation Order, postpetition interest will not accrue or be paid on Claims or, if applicable, Interests, and no holder of a Claim or Interest will be entitled to interest accruing on or after the Petition Date on any Claim. Interest will not accrue or be paid upon any Claim or, if applicable, Interest in respect of the period from the Effective Date to the date a final Distribution is made thereon if and after such Claim becomes an

TTH
H:\Client Matters\- F&R\ClearEdge\PI\CE Inc\DS\5-14-15\v8.docx

Case: 14-44191    Doc# 665    Filed: 05/14/15    Entered: 05/14/15 12:25:53    Page 77 of 109

Allowed Claim. No holder of a Claim will be entitled to receive interest earned on a Disputed Claim for amounts held in the Disputed Claims Reserve.

### 8.10 **Method of Distributions**.

Any cash payment to be made by the Liquidation Trust pursuant to the Plan may be made, at the sole discretion of the Liquidation Trust, by draft, check, wire transfer, or as otherwise required or provided in any relevant agreement or applicable law. Any payment or Distributions due on a day other than a Business Day will be made, without interest, on the next Business Day.

### 8.11 **De Minimis Distributions**.

With the exception of Creditors who are accorded treatment under Class 4 of the Plan, Distributions of less than $50.00 need not be made on account of any Allowed Claim or Allowed Interest; provided, however, that Distributions that would otherwise be made but for this provision will carry over to the next Distribution Date until the cumulative amount to which any holder of an Allowed Claim or, if applicable, an Allowed Interest is entitled to is at least $50.00, at which time the cumulative amount of such Distributions will be paid to such holder.

### 8.12 **Donation of Excess Cash**.

At such time, if any, as the projected expense of a Distribution exceeds the remaining cash on hand (other than any cash reserved on account of Disputed Claims and Disputed Interests), the Liquidation Trustee or the Disbursing Agent, as applicable, with the consent of the Oversight Committee (until Allowed Claims of Creditors are paid in full) may donate such cash to a nonprofit organization or organizations that are exempt pursuant to Section 501(c) of the Internal Revenue Code (Title 26 of the United States Code); provided, however, that any donations made pursuant to this provision must be made to nonprofit organizations that fund or perform community-based services primarily in or around the counties served by the Bankruptcy Court; provided, further, that the Liquidation Trust will not be obligated to make Distributions to any such nonprofit or exempt organization if the amount of Available Cash is *de minimis* and is not sufficient to warrant the incurrence of costs in making the Distribution.

### 8.13 **Unclaimed Distributions**.

Any Distributions that remain unclaimed or un-negotiated for ninety (90) days following

TTH
H:\Client Matters\- F&R\ClearEdge\Pl\CE Inc\DS\5-14-15\v8.docx
AMENDED DISCLOSURE STATEMENT FOR JOINT
CHAPTER 11 PLAN OF DEBTORS AND OFFICIAL COMMITTEE
OF UNSECURED CREDITORS (Dated May 14, 2015)

Case: 14-44191    Doc# 665    Filed: 05/14/15    Entered: 05/14/15 12:25:53    Page 78 of 109

Distribution or are returned for reasons other than the absence of a current or correct address (unless a current or correct address cannot be determined after reasonable inquiry) will become Liquidation Trust Assets and be considered Available Cash.

8.14 **Exemption From Certain Transfer Taxes**.

Following Confirmation, any sales or transfers will be, to the fullest extent permitted by law, entitled to the exemptions provided for under and to the fullest extent permitted by Section 1146(a) of the Bankruptcy Code. The Plan Proponents reserve all rights to request a determination of legal questions related to the tax effects of the Plan as appropriate under Section 1146(b) of the Bankruptcy Code.

<div align="center">

**ARTICLE IX.**

**PROOFS OF CLAIM; OBJECTIONS**

</div>

9.1 **Time for Filing Proofs of Claim**

Proofs of Claim, when required, must be, or must have been, filed with the Bankruptcy Court no later than the applicable Claims Bar Date, which is: (a) with respect to Claims other than those held by governmental units and with the exception of Claims subject to the (i) ORDER GRANTING EX PARTE MOTION FOR ORDER EXTENDING TIME TO FILE CERTAIN CLAIMS entered on December 3, 2014 [D.E 520] (the "First Claims Bar Date Extension Order") or the (ii) ORDER GRANTING EX PARTE MOTION FOR ORDER EXTENDING TIME TO FILE CERTAIN CLAIMS entered on March 20, 2015 [D.E. 595] (the "Second Claims Bar Date Extension Order"), September 2, 2014; (b) with respect to Claims held by governmental units with the exception of Claims subject to the First Claims Bar Date Extension Order, October 28, 2014; (c) with respect to Claims, including Claims held by governmental units, subject to the First Claims Bar Date Extension Order, January 4, 2015; (d) with respect to Claims, including Claims held by governmental units, subject to the Second Claims Bar Date Extension Order, May 19, 2015; (e) with respect solely to Tax Claims held by governmental units which are unliquidated and undetermined and are subject to the filing of the Debtors' tax returns, the date which is sixty (60) days after of the filing date of any such tax returns; and (f) with respect to Rejection Claims, the Rejection Claims Bar Date.

/ / /

TTH
H:\Client Matters\- F&R\ClearEdge\PI\CE Inc\DS\5-14-15\v8.docx

72

AMENDED DISCLOSURE STATEMENT FOR JOINT
CHAPTER 11 PLAN OF DEBTORS AND OFFICIAL COMMITTEE
OF UNSECURED CREDITORS DATED (MAY 14, 2015)

Case: 14-44191    Doc# 665    Filed: 05/14/15    Entered: 05/14/15 12:23:55    Page 79 of
109

**9.2    Proofs of Interests.**

Equity Security Holders will not be required to file any Proofs of Interest because the Plan affords treatment to Equity Security Holders of record as of the Record Date. The Disbursing Agent, the Liquidation Trustee, and the Liquidation Trust and its professionals will be entitled to recognize and deal for all purposes with only those Equity Security Holders of record as of the Record Date. In the unlikely event of a Distribution under the Plan to holders of Allowed Interests, the Disbursing Agent, the Liquidation Trustee, and the Liquidation Trust and its professionals will have no obligation to recognize any transfer of Interests after the Record Date.

**9.3    Ownership and Transfers of Claims.**

The Disbursing Agent, the Liquidation Trustee, and the Liquidation Trust and its professionals, will be entitled to recognize and deal for all purposes with only those Creditors of record with the Bankruptcy Court as of the Initial Distribution Date. For purposes of any Distribution under the Plan, the Disbursing Agent, the Liquidation Trustee, and the Liquidation Trust and its professionals will have no obligation to recognize any transfer of Claims after the first Distribution Date.

**9.4    Amendments to Claims.**

Except as provided by the Plan or as otherwise permitted by the Bankruptcy Court, the Bankruptcy Rules or applicable law, upon expiration of the applicable Claims Bar Date, Proofs of Claim: (a) may not be filed; and (b) may not be amended later than the date which is thirty (30) days following the applicable Claims Bar Date except for amendments to Proofs of Claim to decrease the amount or priority thereof; provided, however, that the foregoing deadline will not accord a Claim holder a right to amend a Claim that, pursuant to applicable law, is not subject to amendment

**9.5    Claim Objections**

An objection to a Claim must be filed no later than the Claims Objection Date which is the date six (6) months after the Effective Date, subject to extension by the Bankruptcy Court for cause upon the *ex parte* motion of the Liquidation Trust. An objection to an Administrative Claim must be filed no later than the Administrative Claims Objection Date which is the date ninety (90) days after the Effective Date, subject to extension by the Bankruptcy Court for cause upon the *ex parte* motion

TTH
H:\Client Matters\- F&R\ClearEdge\PI\CE Inc\DS\5-14-15\v8.docx

AMENDED DISCLOSURE STATEMENT FOR JOINT
CHAPTER 11 PLAN OF DEBTORS AND OFFICIAL COMMITTEE
OF UNSECURED CREDITORS (DATED MAY 14, 2015)

Case: 14-44191    Doc# 665    Filed: 05/14/15    Entered: 05/14/15 12:25:55    Page 80 of
109

of the Liquidation Trust.  Any party in interest may file an objection to a Claim or an Administrative Claim.  The Liquidation Trust will review all Proofs of Claim filed against the Debtors and file objections as appropriate, and will resolve all Disputed Claims, with the exception of any Claims (a) that have been Allowed prior to the Effective Date pursuant to a written agreement with the Debtors, the Committee and/or the Bankruptcy Court, as appropriate, or (b) that, in the reasonable business judgment of the Liquidation Trustee, are *de minimis* in amount and insufficient to warrant incurring the expense to perform such review.

### 9.6 **Setoff Rights Preserved.**

The Debtors or the Liquidation Trust may, but are not required to, setoff or recoup against any Claim or Interest and the payments or other Distribution to be made under the Plan in respect of such Claim or Interest, claims of any nature whatsoever that arose before the Petition Date that the Debtors may have against the holder of such Claim or Interest to the extent such claims may be setoff or recouped under applicable law, but neither the failure to do so nor the allowance of any Claim or Interest under the Plan will constitute a waiver or release by the Debtors or the Liquidation Trust of any such claim that they may have against such Person.

### 9.7 **Termination of Claims Agent.**

The Liquidation Trustee may move the Bankruptcy Court for an order relieving the Claims Agent of its duties in the Bankruptcy Cases at any time following the Claims Objection Deadline, pursuant to the Notice Procedure.

## ARTICLE X.

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### 10.1 **Treatment of Executory Contracts and Unexpired Leases**.

The Plan Proponents reserve the right to move the Bankruptcy Court prior to Confirmation for authority to assume, assume and assign, or reject, pursuant to Bankruptcy Code Section 365, any and all contracts that are executory and leases that are unexpired.

### 10.2 **Effect of Assumption of Executory Contracts and Unexpired Leases**.

All executory contracts and unexpired leases assumed prior to Confirmation or pursuant to the Plan and not otherwise rejected pursuant to the Plan will remain in full force and effect, be

TTH
H:\Client Matters\- F&R\ClearEdge\PI\CE Inc\DS\5-14-15\v8.docx
AMENDED DISCLOSURE STATEMENT FOR JOINT
CHAPTER 11 PLAN OF DEBTORS AND OFFICIAL COMMITTEE
OF UNSECURED CREDITORS (DATED MAY 14, 2015)

Case: 14-44191    Doc# 665    Filed: 05/14/15    Entered: 05/14/15 12:23:53    Page 81 of
109

unimpaired by the Plan except as specifically modified by the Plan and the Order of Confirmation, and be binding on the parties thereto.

### 10.3 Adding and Removing Executory Contracts and Unexpired Leases.

The provisions of Article X of the Plan may be amended, with appropriate notice to those parties in interest directly affected, at any time prior to the conclusion of the hearing on Confirmation of the Plan, to add or remove executory contracts and unexpired leases to be assumed, assumed and assigned, or rejected pursuant to the Plan. The Debtors are continuing to negotiate with certain parties which may affect the ultimate disposition of certain executory contracts, including ESAs, prior to the Confirmation Hearing which may result in the removal, addition or otherwise modification of the treatment of such contracts under Article X of the Plan.

### 10.4 Defaults.

Unless other treatment is agreed to between the parties to each assumed contract or lease, or unless otherwise set forth in the Purchase Agreement, if there has been a default in an assumed executory contract or unexpired lease other than the kind specified in Section 365(b)(2) of the Bankruptcy Code, the Debtors will, on or before the Effective Date: (a) cure, or provide adequate assurance that they will promptly cure, any such default; (b) compensate, or provide adequate assurance that they will promptly compensate, the other party to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and (c) provide adequate assurance of future performance under such contract or lease.

### 10.5 Assumption of Executory Contracts and Unexpired Leases.

Upon the Effective Date, the Liquidation Trust will assume those executory contracts and unexpired leases listed on Exhibit "C" to the Plan, and Reorganized CEP will assume those executory contracts listed on Exhibit "D" to the Plan. For avoidance of doubt, the fees and expenses of the Debtors' Professionals incurred under the engagement agreements set forth on Exhibit "D" to the Plan will constitute Unearned Fee Claims.

Upon the Effective Date, the Liquidation Trust will assume the Debtors' insurance policies listed on Exhibit "B" to the Plan. With respect to such insurance policies, the Liquidation Trustee will take all steps necessary to modify and/or extend coverage under all insurance policies, including

TTH
H:\Client Matters\- F&R\ClearEdge\PI\CE Inc\DS\5-14-15\v8.docx

75

AMENDED DISCLOSURE STATEMENT FOR JOINT
CHAPTER 11 PLAN OF DEBTORS AND OFFICIAL COMMITTEE
OF UNSECURED CREDITORS (Dated May 14, 2015)

Case: 14-44191    Doc# 665    Filed: 05/14/15    Entered: 05/14/15 12:23:55    Page 82 of
109

the purchase of comprehensive "tail coverage" for the duration of the Bankruptcy Cases where applicable and offered in connection with any D&O Policy or Fiduciary Policy, such that the Liquidation Trustee, the Oversight Committee and its members, the Debtors and their former and current officers and directors are named as co-insured parties under each policy.

As set forth above, the Debtors are in negotiations with certain parties which may affect the ultimate disposition of certain executory contracts. Accordingly, the Plan Proponents may amend Exhibit "B", Exhibit "C", Exhibit "D" and Exhibit "E" (discussed below) to the Plan to remove, add or otherwise modify the respective lists of executory contracts prior to the conclusion of the Confirmation Hearing, and they reserve their rights in all such respects. The Debtors do not believe that there are any cure amounts associated with the executory contracts and leases on Exhibit "B", Exhibit "C", and Exhibit "D".

### 10.6 **Rejection of Executory Contracts and Unexpired Leases**.

Without admitting the validity of any other executory contracts and unexpired leases, all executory contracts and unexpired leases of the Debtors that are not: (a) assumed or rejected prior to Confirmation; (b) the subject of a pending motion to assume filed prior to Confirmation; or (c) assumed pursuant to the Plan, will be rejected by the Debtors as of the Effective Date. Confirmation of the Plan will be deemed to constitute Bankruptcy Court approval of such rejection. Such executory contracts and unexpired leases to be rejected will include, without limitation, those listed on Exhibit "E" to the Plan.

### 10.7 **Rejection Claims**.

Rejection Claims will be classified as Class 5 Claims. The holder of a Rejection Claim must file with the Bankruptcy Court, and serve on counsel for the Liquidation Trust, a Proof of Claim relative to such Rejection Claim on or before the Rejection Claims Bar Date or be forever barred from asserting any such Claim or receiving any payment or other Distribution on account of such Claim. The Rejection Claims Bar Date will be, with the exception of any bar date which already has been established by Court order, the earlier of: (a) thirty (30) days following the Effective Date; or (b) with respect to an executory contract or unexpired lease rejected before the Confirmation Date pursuant to a Final Order, thirty (30) days following the entry of such Final Order.

Case: 14-44191    Doc# 665    Filed: 05/14/15    Entered: 05/14/15 12:25:53    Page 83 of
109

# ARTICLE XI.

## PRESERVATION OF RETAINED CLAIMS

A non-exhaustive description of the Retained Claims is set forth above at Section 7.7.3. Confirmation of the Plan effects no settlement, compromise, waiver or release of any Retained Claim unless the Plan or Order of Confirmation specifically and unambiguously so provides. The failure of the Plan to refer to any particular Retained Claim is not and shall not be construed as a settlement, compromise, waiver, or release of any such Retained Claim. All Retained Claims are preserved under the Plan and will continue to remain valid after the Effective Date.

In the event that any Claims are asserted against the Debtors for which former insiders, officers, directors and employees of the Debtors may be partially or fully responsible, the Debtors and the Liquidation Trust reserve all rights to seek recovery against such former insiders, officers, directors and employees. The Liquidation Trustee will consult with the Oversight Committee with respect to the prosecution of (or decision not to prosecute) Retained Claims as provided in Section 7.11 of the Plan and discussed above at Section 7.7.3. If a dispute arises between the Liquidation Trustee and the Oversight Committee with respect to the prosecution of (or decision not to prosecute) Retained Claims, such dispute will be resolved by a majority vote of the Oversight Committee together with the Liquidation Trustee, as provided in the Liquidation Trust Agreement. In the event that the Liquidation Trustee and members of the Oversight Committee are unable to reach a majority, such dispute will be resolved by the Bankruptcy Court with reference to the Liquidation Trust Agreement, pursuant to a motion filed and served on the Notice Parties on not less than fourteen (14) days' notice. The entry of the Order of Confirmation will not constitute res judicata or otherwise bar, estop or inhibit any actions by the Liquidation Trust relative to any Retained Claims.

# ARTICLE XII.

## RETENTION OF JURISDICTION

The Bankruptcy Court will have exclusive jurisdiction of the Bankruptcy Cases: (a) to enforce the provisions, purposes, and intent of the Plan, including matters or proceedings that relate to the Purchase Transaction and the Liquidation Trust Agreement; (b) to determine the allowance or

TTH
H:\Client Matters\- F&R\ClearEdge\PI\CE Inc\DS\5-14-15\v8.docx
AMENDED DISCLOSURE STATEMENT FOR JOINT CHAPTER 11 PLAN OF DEBTORS AND OFFICIAL COMMITTEE OF UNSECURED CREDITORS (DATED MAY 14, 2015)

Case: 14-44191    Doc# 665    Filed: 05/14/15    Entered: 05/14/15 12:23:58    Page 84 of 109

disallowance of Claims and Interests; (c) to hear and determine proceedings initiated before or after the Confirmation Date and the Effective Date regarding the prosecution of the Retained Claims or any other rights, Claims, causes of action or claims for relief held by the Debtors and/or the Liquidation Trust against any party, including the recovery of property and subordination of Claims and Interests; (d) to fix and approve allowance of compensation and other Administrative Claims, including, if appropriate, payments to be made in connection with the Plan; (e) to adjudicate controversies arising from the terms of the Plan; (f) to hear and determine any proposed modifications of or amendments to the Plan to the extent permitted by Section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019; (g) to enforce or interpret the provisions of the Plan, the Order of Confirmation or any order entered by the Bankruptcy Court in the Bankruptcy Cases; (h) to facilitate the consummation of the Plan; (i) to consider such other matters as may be set forth in the Plan or the Order of Confirmation; (j) to hear and determine any Claim of any Persons of any nature whatsoever against the Committee's Professionals and/or the Debtors' Professionals arising in or related to the Cases; (k) to determine any tax liability pursuant to Section 505 of the Bankruptcy Code; (l) to enter a Final Decree closing the Bankruptcy Cases; and (m) to hear and determine proceedings initiated before or after the Confirmation Date and the Effective Date regarding the calculation and payment of the Reorganized CEP Contribution payments to the Liquidation Trust. If closed, the Bankruptcy Cases may be reopened at any time to facilitate the provisions of Article XII of the Plan which are described above.

## ARTICLE XIII.

## EFFECT OF ORDER OF CONFIRMATION

As of the Confirmation Date, the effect of the Order of Confirmation will be as provided in Section 1141 of the Bankruptcy Code, and as follows:

### 13.1 **Binding Effect of Plan**.

The provisions of the confirmed Plan will bind the Debtors, the Liquidation Trust, the Oversight Committee, the Plan Sponsors, Reorganized CEP, any Entity acquiring property under or otherwise accepting the benefits of the Plan, and every Creditor, Equity Security Holder and Interest holder, whether or not such Creditor, Equity Security Holder or Interest holder has filed a Proof of

TTH
H:\Client Matters\- F&R\ClearEdge\PI\CE Inc\DS\5-14-15\v8.docx

78

AMENDED DISCLOSURE STATEMENT FOR JOINT
CHAPTER 11 PLAN OF DEBTORS AND OFFICIAL COMMITTEE
OF UNSECURED CREDITORS (Dated May 14, 2015)

Case: 14-44191    Doc# 665    Filed: 05/14/15    Entered: 05/14/15 12:25:55    Page 85 of
109

Claim or Interest in the Bankruptcy Cases, whether or not the Claim or Interest of such Creditor, Equity Security Holder or Interest holder is impaired under the Plan, and whether or not such Creditor, Equity Security Holder or Interest holder has accepted or rejected the Plan.

13.2 **Reservation of Powers**.

Nothing in the Plan shall be deemed to have constituted a waiver of any powers held by the Debtors as debtors in possession under the Bankruptcy Code, the Bankruptcy Rules or the Local Rules. The Liquidation Trust will be vested with all powers granted by the Bankruptcy Code, the Bankruptcy Rules and the Local Rules to a trustee or a debtor in possession, including those with respect to recovery of property and objections to, and/or subordination of, Claims and Interests.

13.3 **Exculpation**.

To the fullest extent permissible under Section 1125(e) of the Bankruptcy Code, none of the Debtors, the Committee, the current and former members of the Committee (solely in their capacity as such) and their respective officers, directors, members, managers, employees, advisors, attorneys, agents, or direct and indirect affiliates will have or will incur any liability to any holder of a Claim or Interest, or any other party in interest, or any of their respective directors, officers, members, agents, employees, representative, financial advisors, attorneys or affiliates or any of their predecessors, successors, or assigns, for any act or omission in connection with, relating to, or arising out of, the Bankruptcy Cases, the negotiation and pursuit of Confirmation of the Plan, or Confirmation of the Plan, excluding the obligations of such Persons under the Plan and the Liquidation Trust Agreement, as applicable, and any acts or omissions of any Person covered by this Section constituting willful misconduct, gross negligence, fraud or bad faith, and in all respects such Persons will be entitled to rely on the advice of counsel with respect to their duties and responsibilities under the Plan.

## ARTICLE XIV.

## OTHER PLAN PROVISIONS.

Article XIV of the Plan sets forth a number of additional provisions that govern the Plan. These provisions cover topics such as interpretation, modification and withdrawal of the Plan and waiver of its terms, and where to send notices directed to the Plan Proponents, the Liquidation Trust and the Oversight Committee or the Reorganized Company, among other terms.

TTH
H:\Client Matters\- F&R\ClearEdge\PI\CE Inc\DS\5-14-15\v8.docx

79

AMENDED DISCLOSURE STATEMENT FOR JOINT
CHAPTER 11 PLAN OF DEBTORS AND OFFICIAL COMMITTEE
OF UNSECURED CREDITORS (DATED MAY 14, 2015)

Case: 14-44191   Doc# 665   Filed: 05/14/15   Entered: 05/14/15 12:25:55   Page 86 of
109

# ARTICLE XV.

# RISK FACTORS

Holders of impaired Claims entitled to vote on the Plan should read and consider carefully the factors set forth below, as well as other information set forth in this Disclosure Statement and the documents delivered together herewith and/or incorporated by reference herein prior to voting to accept or reject the Plan.

## 15.1 Claims in Excess of Estimates

The Claims Bar Date with respect to certain Creditors whose scheduled debts were amended does not expire until May 19, 2015. Additionally, other Claims Bar Dates, including, without limitation, the Administrative Claims Bar Date, the Fee Claims Bar Date, and the Rejection Claims Bar Date, will occur after Confirmation, and the Allowed Amount of such Claims may increase the total liabilities of Estates and therefore decrease the amount of Available Cash for Distributions to holders of Allowed Claims. Moreover, if the Debtors and, post-Confirmation, the Liquidation Trust, are unsuccessful in their objections to Disputed Claims, unliquidated Claims and contingent Claims that are asserted against the Estates, the total liabilities will be greater than estimated, thereby potentially reducing any ultimate Distribution to holders of Allowed Claims.

## 15.2 Estimation of Claims and Distribution Risks

In composing the Plan, the Plan Proponents have endeavored to consider what they believe are reasonable possibilities for Distributions, if any, to be made to holders of Allowed Claims. As set forth in Section 6.7.1, the Debtors estimate that Allowed General Unsecured Claims in Class 5 will approximate $57 million. The Plan Proponents' summary analysis of potential Distributions is set forth in Section 19.2 below. However, there can be no certainty that the Plan Proponents' considerations will be accurate and that Creditors will receive Distributions as described in the Plan. The Plan Proponents' considerations will necessarily be affected by, among other things: (1) recoveries by the Liquidation Trust in connection with the liquidation of remaining assets; (2) collection of receivables; (3) recoveries by the Liquidation Trust on the Retained Claims; (4) the outcome of objections to Claims; (5) the outcome of the WARN Action; (6) the ultimate determination of the Allowable Amount of the Estates' Income Tax Liability; (7) taxes, expenses

TTH
H:\Client Matters\- F&R\ClearEdge\PI\CE Inc\DS\5-14-15\v8.docx

80

AMENDED DISCLOSURE STATEMENT FOR JOINT
CHAPTER 11 PLAN OF DEBTORS AND OFFICIAL COMMITTEE
OF UNSECURED CREDITORS (DATED MAY 14, 2015)

Case: 14-44191    Doc# 665    Filed: 05/14/15    Entered: 05/14/15 12:25:53    Page 87 of
109

and other factors impacting the winding down and closing of the Debtors' direct and indirect subsidiaries; and (8) the cost and expenses attendant with all such actions.

Creditors electing to receive treatment in Class 4 may, as a result of their election, ultimately receive less than they otherwise would if they did not so elect and were afforded treatment under Class 5. Conversely, Creditors in Class 5 who are eligible to receive treatment under Class 4 but decline such election, may, as a result of their election to remain in Class 5, ultimately receive less and/or receive Distributions significantly later than they otherwise would if they were afforded treatment under Class 4.

### 15.3 **Bankruptcy Risks**

Section 1122 of the Bankruptcy Code provides that a plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class. The Plan Proponents believe that the classification of Claims and Interests under the Plan complies with the requirements set forth in the Bankruptcy Code. However, there can be no assurance that the Bankruptcy Court will reach the same conclusion.

Even if all classes of Claims that are entitled to vote accept the Plan, the Plan might not be confirmed by the Bankruptcy Court. Section 1129 of the Bankruptcy Code sets forth the requirements for confirmation and requires, among other things, that the value of distributions to dissenting creditors and equity security holders not be less than the value of distributions such creditors and equity security holders would receive if the debtor were liquidated under chapter 7 of the Bankruptcy Code. The Plan Proponents believe that the Plan satisfies all of the requirements for confirmation of a plan under Section 1129 of the Bankruptcy Code.

### 15.4 **Collection Risks**

The Debtors or the Liquidation Trust, as applicable, may experience increasing difficulty collecting remaining outstanding accounts receivable including the receivable owed from the SCAQMD based on the SGIP grant and receivables based on RECs and property tax reimbursements. As a result of certain factors, including, among other things, economic conditions and the impact of the Debtors' Bankruptcy Cases, obligors under the Debtors' accounts receivable may be unable or unwilling to pay for products and services provided by the Debtors and upon

TTH
H:\Client Matters\- F&R\ClearEdge\PI\CE Inc\DS\5-14-15\v8.docx
AMENDED DISCLOSURE STATEMENT FOR JOINT
CHAPTER 11 PLAN OF DEBTORS AND OFFICIAL COMMITTEE
OF UNSECURED CREDITORS (Dated May 14, 2015)

Case: 14-44191    Doc# 665    Filed: 05/14/15    Entered: 05/14/15 12:25:55    Page 88 of
109

which the outstanding accounts receivable have been generated..

15.5 **Obligations Under ESAs**

The Debtors remain parties to several ESAs, some of which are related to their financing arrangements with certain Lenders. Under the ESAs, the Debtors and the respective customers have various apportioned responsibilities with respect to certain matters such as the removal of equipment and site restoration upon termination, environmental remediation, handling and management of hazardous substances, and maintenance of permits and licenses. Such obligations may affect the ability of the Liquidation Agent to liquidate the ESAs and the underlying Fuel Cells. The Debtors have continued to negotiate with respective customer counterparties and related parties regarding the disposition of the remaining ESAs and the resolution of related issues. Pursuant to the Plan, all remaining executory contracts and unexpired leases which are not assumed or previously rejected will be rejected. In the event that ESAs are terminated or rejected, the Debtors may have certain obligations which could result in Rejection Claims and which could require the Liquidation Trust to incur expenses to meet its obligations thereunder. In addition, the inability to meet such obligations could potentially lead to the incurrence of fees and/or penalties. Accordingly, the ultimate disposition of the ESAs may affect the amount of Available Cash available for Distributions to holders of Allowed Claims.

## ARTICLE XVI.

### CERTAIN FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN

16.1 **Introduction.**

THE FOLLOWING IS A SUMMARY OF CERTAIN UNITED STATES FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN THAT MAY BE MATERIAL TO CREDITORS (EACH A "**HOLDER**" AS REFERRED TO IN THIS ARTICLE). THIS DISCUSSION IS INCLUDED FOR GENERAL INFORMATION PURPOSES ONLY AND IS NOT INTENDED TO BE, AND IS NOT, LEGAL OR TAX ADVICE TO ANY PARTICULAR HOLDER. THIS SUMMARY IS BASED ON THE CURRENT PROVISIONS OF THE INTERNAL REVENUE CODE OF 1986, AS AMENDED (THE "**CODE**" AS REFERRED TO IN THIS ARTICLE), THE INCOME TAX REGULATIONS ND OTHER

TTH
H:\Client Matters\- F&R\ClearEdge\PI\CE Inc\DS\5-14-15\v8.docx

82

AMENDED DISCLOSURE STATEMENT FOR JOINT
CHAPTER 11 PLAN OF DEBTORS AND OFFICIAL COMMITTEE
OF UNSECURED CREDITORS (Dated May 14, 2015)

Case: 14-44191    Doc# 665    Filed: 05/14/15    Entered: 05/14/15 12:25:55    Page 89 of
109

LEGAL AUTHORITIES, ALL AS IN EFFECT AS OF THE DATE HEREOF AND ALL OF WHICH ARE SUBJECT TO CHANGE, POSSIBLY WITH RETROACTIVE EFFECT. NO RULINGS FROM THE INTERNAL REVENUE SERVICE (THE "IRS") OR OPINIONS OF COUNSEL HAVE BEEN OR WILL BE REQUESTED CONCERNING THE MATTERS DISCUSSED BELOW. THE TAX CONSEQUENCES SET FORTH IN THE FOLLOWING DISCUSSION ARE NOT BINDING ON THE IRS OR THE COURTS, AND NO ASSURANCE CAN BE GIVEN THAT CONTRARY POSITIONS WILL NOT BE SUCCESSFULLY ASSERTED BY THE IRS OR ADOPTED BY A COURT.

THIS SUMMARY DOES NOT ADDRESS ANY ASPECTS OF STATE TAXATION, LOCAL TAXATION, NON-U.S. TAXATION, OR U.S. FEDERAL TAXATION OTHER THAN INCOME TAXATION.

THE FOLLOWING DISCUSSION IS FOR GENERAL INFORMATION ONLY. THE TAX TREATMENT OF A HOLDER MAY VARY DEPENDING UPON SUCH HOLDER'S PARTICULAR SITUATION. THIS SUMMARY DOES NOT ADDRESS ALL OF THE TAX CONSEQUENCES THAT MAY BE RELEVANT TO A PARTICULAR HOLDER, INCLUDING ANY ALTERNATIVE MINIMUM TAX CONSEQUENCES, AND DOES NOT ADDRESS THE TAX CONSEQUENCES TO A HOLDER THAT HAS MADE AN AGREEMENT TO RESOLVE ITS CLAIM IN A MANNER NOT EXPLICITLY PROVIDED FOR IN THE PLAN. THIS DISCUSSION DOES NOT ADDRESS THE U.S. FEDERAL INCOME TAX CONSEQUENCES TO HOLDERS THAT ARE UNIMPAIRED UNDER THE PLAN OR HOLDERS SUBJECT TO SPECIAL TREATMENT UNDER THE U.S. FEDERAL INCOME TAX LAWS, SUCH AS BROKERS OR DEALERS IN SECURITIES OR CURRENCIES, CERTAIN SECURITIES TRADERS, TAX-EXEMPT ENTITIES, REAL ESTATE INVESTMENT TRUSTS, REGULATED INVESTMENT COMPANIES, FINANCIAL INSTITUTIONS, INSURANCE COMPANIES, FOREIGN PERSONS, PARTNERSHIPS AND OTHER PASS-THROUGH ENTITIES, HOLDERS THAT HOLD CLAIMS AS A POSITION IN A "STRADDLE" OR AS PART OF A "SYNTHETIC SECURITY," "HEDGING," "CONVERSION" OR OTHER INTEGRATED

TTH
H:\Client Matters\- F&R\ClearEdge\PI\CE Inc\DS\5-14-15\v8.docx

83

AMENDED DISCLOSURE STATEMENT FOR JOINT
CHAPTER 11 PLAN OF DEBTORS AND OFFICIAL COMMITTEE
OF UNSECURED CREDITORS (Dated May 14, 2015)

Case: 14-44191    Doc# 665    Filed: 05/14/15    Entered: 05/14/15 12:23:55    Page 90 of
109

TRANSACTION, HOLDERS THAT HAVE A "FUNCTIONAL CURRENCY" OTHER THAN THE UNITED STATES DOLLAR AND HOLDERS THAT HAVE ACQUIRED CLAIMS IN CONNECTION WITH THE PERFORMANCE OF SERVICES.

THE TAX TREATMENT OF HOLDERS AND THE CHARACTER, AMOUNT AND TIMING OF INCOME, GAIN OR LOSS RECOGNIZED AS A CONSEQUENCE OF THE PLAN AND THE DISTRIBUTIONS PROVIDED FOR BY THE PLAN MAY VARY, DEPENDING UPON, AMONG OTHER THINGS: (I) WHETHER THE HOLDER RECEIVES DISTRIBUTIONS UNDER THE PLAN IN MORE THAN ONE TAXABLE YEAR; (II) WHETHER THE HOLDER FALLS INTO ANY SPECIAL CLASS OF TAXPAYERS, SUCH AS THOSE THAT ARE EXCLUDED FROM THIS DISCUSSION AS NOTED ABOVE; (III) THE MANNER IN WHICH THE HOLDER ACQUIRED THE CLAIM; (IV) THE LENGTH OF TIME THAT THE CLAIM HAS BEEN HELD; (V) WHETHER THE CLAIM WAS ACQUIRED AT A DISCOUNT; (VI) WHETHER THE HOLDER HAS TAKEN A BAD DEBT DEDUCTION WITH RESPECT TO THE CLAIM (OR ANY PORTION THEREOF) IN THE CURRENT OR PRIOR YEARS; (VII) WHETHER THE HOLDER HAS PREVIOUSLY INCLUDED IN INCOME ANY AMOUNT WITH RESPECT TO THE CLAIM; (VIII) THE METHOD OF TAX ACCOUNTING OF THE HOLDER; AND (IX) WHETHER THE CLAIM IS A "CAPITAL ASSET" WITHIN THE MEANING OF SECTION 1221 OF THE CODE. THEREFORE, EACH HOLDER SHOULD CONSULT ITS TAX ADVISOR FOR INFORMATION THAT MAY BE RELEVANT TO ITS PARTICULAR SITUATION AND CIRCUMSTANCES, AND THE PARTICULAR TAX CONSEQUENCES TO SUCH HOLDER OF THE TRANSACTIONS CONTEMPLATED BY THE PLAN.

THE FOLLOWING DISCUSSION IS INTENDED ONLY AS A SUMMARY OF CERTAIN U.S. FEDERAL TAX CONSEQUENCES OF THE PLAN AND IS NOT A SUBSTITUTE FOR CAREFUL TAX PLANNING WITH A TAX PROFESSIONAL. THE FOLLOWING DISCUSSION IS FOR INFORMATION PURPOSES ONLY AND IS NOT TAX ADVICE. THE TAX CONSEQUENCES ARE IN MANY CASES UNCERTAIN AND

TTH
H:\Client Matters\- F&R\ClearEdge\PI\CE Inc\DS\5-14-15\v8.docx

AMENDED DISCLOSURE STATEMENT FOR JOINT CHAPTER 11 PLAN OF DEBTORS AND OFFICIAL COMMITTEE OF UNSECURED CREDITORS (Dated May 14, 2015)

Case: 14-44191    Doc# 665    Filed: 05/14/15    Entered: 05/14/15 12:23:58    Page 91 of 109

MAY VARY DEPENDING ON A HOLDER'S PARTICULAR CIRCUMSTANCES. ACCORDINGLY, EACH HOLDER AND PLAN SPONSOR IS STRONGLY URGED TO CONSULT ITS TAX ADVISOR REGARDING THE U.S. FEDERAL, STATE, LOCAL, AND APPLICABLE NON-U.S. TAX CONSEQUENCES OF THE PLAN.

16.2 **U.S. Federal Income Tax Treatment of The Liquidation Trust.**

For all federal income tax purposes, the Debtors, the Liquidation Trust beneficiaries, the Liquidation Trustee and the Liquidation Trust must treat the Liquidation Trust as a "liquidating trust" within the meaning of Treasury Income Tax Regulation Section 301.7701-4(d) and IRS Revenue Procedure 94-95, 1994-2 C.B. 124, and the transfer of the Liquidation Trust Assets to the Liquidation Trust must be treated as a transfer of the Liquidation Trust Assets (excluding any Assets that will be distributable by the Disbursing Agent to holders of Allowed Claims that are not beneficiaries of the Liquidation Trust as well as any Assets that are to be reserved on account of Disputed Claims) by the Debtors to the Liquidation Trust beneficiaries in satisfaction of their Allowed Claims, followed by a transfer of such Liquidation Trust Assets by the Liquidation Trust beneficiaries in exchange for their beneficial interests in the Liquidation Trust. The Liquidation Trust beneficiaries will be treated as the grantors and owners of their respective Pro Rata shares of such Liquidation Trust Assets for federal income tax purposes. The Plan and the Liquidation Trust Agreement generally provide that the beneficiaries of the Liquidation Trust must make a good faith valuation of the Liquidation Trust Assets consistently with the values determined by the Liquidation Trustee for all U.S. federal income tax purposes. Allocations of taxable income of the Liquidation Trust must be allocated to the Liquidation Trust beneficiaries in accordance with each such beneficiary's Pro Rata Share of the Liquidation Trust. The Liquidation Trustee will file with the IRS tax returns for the Liquidation Trust consistent with its classification as a grantor trust pursuant to Treasury Regulation Section 1.671-4(a) and will also send to each Liquidation Trust beneficiary a separate statement setting forth such Liquidation Trust beneficiary's share of items of Liquidation Trust income, gain, loss, deduction, or credit. Each such Liquidation Trust beneficiary will be required to report such items on its U.S. federal income tax return.

The discussion above assumes that the Liquidation Trust will be respected as a liquidating

Case: 14-44191    Doc# 665    Filed: 05/14/15    Entered: 05/14/15 12:25:53    Page 92 of
109

trust for U.S. federal income tax purposes. If the IRS were to challenge successfully such classification, the U.S. federal income tax consequences to the Liquidation Trust and the Liquidation Trust beneficiaries could differ materially from those discussed herein (including the potential for an entity-level tax to be imposed on all income of the Liquidation Trust).

### 16.3 **Consequences to Debtors.**

In connection with the Purchase Transaction, the Debtors may have recognized gain or loss equal to the difference between the purchase price for the Purchased Assets and the adjusted tax basis of such Purchased Assets. The Debtors' tax attributes may offset any income or gain (with any capital losses available to only offset capital gains). The Debtors may recognize alternative minimum tax as a result of the sale of the Purchased Assets. Any tax due with respect to the Purchase Transaction will be paid by the Debtors or the Liquidation Trust to the IRS.

The foregoing conclusions are based on, among other things, the Debtors' assumptions concerning their tax attributes. If the IRS were to prevail in challenging one or more of these assumptions, any resulting tax liability could reduce the funds available to Liquidation Trust beneficiaries.

The discharge of indebtedness gives rise to cancellation of debt ("COD") income, which generally must be included in a debtor's gross income. However, the Code permits a debtor to exclude COD income from gross income if the discharge occurs in a Chapter 11 case. Thus, although the Debtors may realize COD income as a result of satisfaction of the Claims, the Debtors should not be required to recognize COD income. The Debtors are required to reduce some or all of their tax attributes, including, for example, net operating losses, capital losses, general business credits, minimum tax credits, and the tax basis of assets, to the extent COD income is not recognized. However, instead of reducing net operating losses and certain other tax attributes, the Debtors may elect to reduce the tax basis of assets, thereby essentially losing future depreciation but preserving net operating losses and other attributes.

Post-Confirmation, it is unclear whether any net operating losses and other tax attributes, remaining after any write down or COD income, as applicable, will be limited by the Internal Revenue Code (e.g., Section 382).

TTH
H:\Client Matters\- F&R\ClearEdge\PI\CE Inc\DS\5-14-15\v8.docx

86

AMENDED DISCLOSURE STATEMENT FOR JOINT
CHAPTER 11 PLAN OF DEBTORS AND OFFICIAL COMMITTEE
OF UNSECURED CREDITORS (DATED MAY 14, 2015)

Case: 14-44191    Doc# 665    Filed: 05/14/15    Entered: 05/14/15 12:25:53    Page 93 of
109

16.4    **Consequences to Creditors.**

Each Holder will generally recognize gain or loss in its taxable year that includes the Effective Date in an amount equal to the difference between the amount realized or deemed realized in respect of its Allowed Claim and its adjusted tax basis in such Allowed Claim. The amount realized for this purpose should generally equal the amount of cash and the fair market value of any other Assets (net of any applicable liabilities) received or deemed received for U.S federal income tax purposes under the Plan in respect of such Holder's Allowed Claim. Although not free from doubt, Holders of Allowed Claims that are beneficiaries of the Liquidation Trust as of the Effective Date should be treated as receiving from the Debtors their respective shares of the Liquidation Trust Assets in satisfaction or partial satisfaction, as the case may be, of their Allowed Claims, and simultaneously transferring such Liquidation Trust Assets (net of any applicable liabilities) to the Liquidation Trust. Additionally, Holders that are beneficiaries of the Liquidation Trust should generally recognize their allocable share of income, gain, loss and deductions recognized by the Liquidation Trust on an annual basis, as discussed above.

The Plan provides that, to the extent that any Allowed Claim entitled to a Distribution under the Plan is comprised of indebtedness and accrued but unpaid interest thereon, such Distribution shall be allocated to the principal amount of the Claim first and then, to the extent the consideration exceeds the principal amount of the Claim, to the portion of such Claim representing accrued but unpaid interest. Each Holder should consult its tax advisor regarding the determination of the amount of consideration received under the Plan that is attributable to interest (if any).

16.5    **Consequences to Holders of Equity Securities.**

The Plan provides that holders of CEP stock who elect to be Plan Sponsors will retain the legal, equitable and contractual rights to which each such Plan Sponsor is entitled on account of such Interest. The tax basis of Equity Security Holders who are Plan Sponsors will increase by the amount of their proportionate share of the Plan Sponsor Contribution which will reduce the capital gain or increase the capital loss to be recognized upon disposition of CEP's shares at later date.

The Plan provides that holders of CEP stock who do not elect to be Plan Sponsors are not expected to receive any recovery under the Plan. As such, Plan Non-Sponsors will generally

TTH
H:\Client Matters\- F&R\ClearEdge\PI\CE Inc\DS\5-14-15\v8.docx

87

AMENDED DISCLOSURE STATEMENT FOR JOINT
CHAPTER 11 PLAN OF DEBTORS AND OFFICIAL COMMITTEE
OF UNSECURED CREDITORS DATED (May 14, 2015)

recognize loss in an amount equal to such holder's adjusted tax basis in the CEP stock. Each holder of CEP stock should consult its tax advisor regarding the deductibility of tax losses.

### 16.6 **Consequences to Option Holders.**

The Plan provides that all CEP stock options Interests shall be cancelled as of the Effective Date and the holders of such Interests shall not receive or retain any property under the Plan on account of such Interests. As such, a holder of a CEP stock option Interest will generally recognize loss, if any, in an amount equal to such holder's adjusted tax basis in the Interest. Each holder of a CEP stock option Interest should consult its tax advisor regarding the deductibility of tax losses.

### 16.7 **Withholding and Backup Withholding.**

In connection with the Plan and all Distributions under the Plan, the Liquidation Trustee shall comply with all tax withholding and reporting requirements imposed by any federal, state, provincial, local, or foreign taxing authority. The Liquidation Trustee is authorized to take any and all actions that may be necessary or appropriate to comply with such withholding and reporting requirements. For example, if the Debtors are obligated by law to withhold amounts from Distributions to a present or former employee to satisfy such present or former employee's tax or other payroll obligations, the Liquidating Trustee may withhold a portion of such Distributions in such amount as is determined necessary to satisfy such obligations.

A Holder may be subject to backup withholding, currently at the rate of 28%, with respect to any "reportable" payments received pursuant to the Plan unless (i) such Holder is a corporation or comes within certain other exempt categories and, when required, demonstrates this fact or (ii) provides a correct U.S. taxpayer identification number, certifies as to no loss of exemption from backup withholding and complies with applicable requirements of the backup withholding rules. Amounts withheld under the backup withholding rules may be credited against a Holder's tax liability, and a Holder may obtain a refund of any excess amounts withheld under the backup holding rules by timely filing the appropriate claim for refund with the IRS.

/ / /

/ / /

/ / /

TTH
H:\Client Matters\- F&R\ClearEdge\PI\CE Inc\DS\5-14-15\v8.docx

88

AMENDED DISCLOSURE STATEMENT FOR JOINT
CHAPTER 11 PLAN OF DEBTORS AND OFFICIAL COMMITTEE
OF UNSECURED CREDITORS (DATED MAY 14, 2015)

Case: 14-44191    Doc# 665    Filed: 05/14/15    Entered: 05/14/15 12:25:55    Page 95 of 109

# ARTICLE XVII.

## VOTING PROCEDURES AND REQUIREMENTS

### 17.1    Creditors Entitled to Vote.

Only holders of Claims in an impaired (as that term is defined in Section 1124 of the Bankruptcy Code) class of Claims that will receive or retain any property under the Plan are entitled to vote to accept or reject the Plan, unless any such class has been deemed to reject the Plan. Classes 5(a), 5(b) and 5(c) are impaired under the Plan and have not been deemed to reject the Plan. Accordingly, the votes of holders of Claims in Classes 5(a), 5(b) and 5(c) will be solicited with respect to the Plan.

### 17.2    Definition of Impairment.

Section 1124 of the Bankruptcy Code provides in part as follows:

> . . . a class of claims or equity interests is impaired under a plan unless, with respect to each claim or equity interest of such class, the plan-
>
> (1)    leaves unaltered the legal, equitable, and contractual rights of the holder of such claim or interest; or
>
> (2)    notwithstanding any contractual provision or applicable law that entitles the holder of a claim or interest to demand or receive accelerated payment of its claim or interest after the occurrence of a default:
>
> (A)    cures any such default that occurred before or after the commencement of the case under this title, other than a default of a kind specified in section 365(b)(2) of this title or of a kind that section 365(b)(2) expressly does not require to be cured;
>
> (B)    reinstates the maturity of such claim or interest as such maturity existed before such default;
>
> (C)    compensates the holder of such claim or interest for any damages incurred as a result of any reasonable reliance by such holder on such contractual provision or applicable law;
>
> (D)    if such claim or such interest arises from any failure to perform a nonmonetary obligation, other than a default arising from failure to operate a nonresidential real property lease subject to section 365(b)(1)(A), compensates the holder of such claim or such interest (other than the debtor or an insider) for any actual pecuniary loss incurred by such holder as a result of such failure; and
>
> (E)    does not otherwise alter the legal, equitable, or contractual rights to which such claim or interest entitles the holder of such claim or interest.

TTH
H:\Client Matters\- F&R\ClearEdge\PI\CE Inc\DS\5-14-15\v8.docx

89

AMENDED DISCLOSURE STATEMENT FOR JOINT
CHAPTER 11 PLAN OF DEBTORS AND OFFICIAL COMMITTEE
OF UNSECURED CREDITORS (DATED MAY 14, 2015)

Case: 14-44191    Doc# 665    Filed: 05/14/15    Entered: 05/14/15 12:25:55    Page 96 of
109

17.3 **Acceptance by an Impaired Voting Class.**

In accordance with Bankruptcy Code Section 1126(c), and except as provided in Bankruptcy Code Section 1126(e), an impaired class of Claims that votes on the Plan will have accepted the Plan if accepted by the holders of at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of the Allowed Claims of such class that have timely and property voted to accept or reject the Plan.

17.4 **Deemed Acceptances by Classes.**

Claims in Classes 1, 2, 3, and 4 and Interests in Class 6(a) are unimpaired under the Plan. Under Bankruptcy Code Section 1126(f), holders of such unimpaired Claims are conclusively presumed to have accepted the Plan and the votes of holders of such unimpaired Claims will not be solicited.

17.5 **Deemed Rejections by Classes.**

Interests in Classes 6(b) and 7 are impaired. The holders of such Interests are not expected to receive or retain any property under the Plan and are presumed to have rejected the Plan, and the votes of holders of such impaired Interests will not be solicited.

17.6 **Procedures.**

With the Plan and Disclosure Statement, Creditors will receive a Ballot and instructions for voting on the Plan. You should read the Ballot carefully and follow the instructions contained therein. Please use only the Ballot sent to you with this Disclosure Statement and the Plan. Creditors holding General Unsecured Claims who wish to receive treatment under Class 4 must indicate their election to be in Class 4 where indicated on the Ballot.

A Claim to which an objection has been filed is not an Allowed Claim unless and until the Bankruptcy Court rules on the objection. The Bankruptcy Court may temporarily allow a Disputed Claim to which an objection has been filed for purposes of voting on the Plan. Therefore, although holders of Disputed Claims to which an objection has been filed will receive Ballots, these votes will not be counted unless the Bankruptcy Court temporarily allows such Claims for purposes of voting on the Plan.

CREDITORS WISHING TO VOTE ON THE PLAN MUST COMPLETE THE BALLOT

TTH
H:\Client Matters\- F&R\ClearEdge\PI\CE Inc\DS\5-14-15\v8.docx

90

AMENDED DISCLOSURE STATEMENT FOR JOINT
CHAPTER 11 PLAN OF DEBTORS AND OFFICIAL COMMITTEE
OF UNSECURED CREDITORS (Dated May 14, 2015)

Case: 14-44191    Doc# 665    Filed: 05/14/15    Entered: 05/14/15 12:25:53    Page 97 of 109

PROVIDED AND RETURN IT NO LATER THAN _____, 2015, TO:

<div align="center">
Dorsey & Whitney LLP
Attn: Thomas T. Hwang
305 Lytton Avenue
Palo Alto, CA 94301
</div>

IF YOUR BALLOT IS NOT RETURNED BY _____, 2015 (the "<u>VOTING DEADLINE</u>"), IT WILL NOT BE CONSIDERED. BALLOTS WHICH ARE RETURNED BUT NOT PROPERLY EXECUTED WILL NOT BE CONSIDERED. BALLOTS WHICH ARE EXECUTED BUT WHICH FAIL TO INDICATE EITHER ACCEPTANCE OR REJECTION OF THE PLAN WILL BE CONSIDERED AS ACCEPTING THE PLAN.

<div align="center">

**ARTICLE XVIII.**

**CONFIRMATION PROCEDURES; OBJECTIONS TO CONFIRMATION**

</div>

Under the Bankruptcy Code, the following steps must be taken to confirm the Plan:

18.1    **Confirmation Hearing.**

Section 1128(a) of the Bankruptcy Code requires the Bankruptcy Court, after notice, to hold a hearing on Confirmation (approval) of the Plan. The Confirmation Hearing may be postponed from time to time by the Bankruptcy Court without further notice except for an announcement made at the Confirmation Hearing or any postponement thereof. Section 1128(b) provides that any party in interest may object to Confirmation of the Plan. Any objection to Confirmation must be made in writing and filed with the Bankruptcy Court and served on the following parties, together with a certificate of service, no later than _____, 2015:

<div align="center">
Stephen T. O'Neill
Dorsey & Whitney LLP
305 Lytton Avenue
Palo Alto, CA 94301
Telephone: (650) 857-1717
Facsimile: (650) 857-1288
Email: oneill.stephen@dorsey.com

and
</div>

/ / /

/ / /

TTH
H:\Client Matters\- F&R\ClearEdge\PI\CE Inc\DS\5-14-15\v8.docx

91

AMENDED DISCLOSURE STATEMENT FOR JOINT
CHAPTER 11 PLAN OF DEBTORS AND OFFICIAL COMMITTEE
OF UNSECURED CREDITORS (DATED MAY 14, 2015)

Case: 14-44191    Doc# 665    Filed: 05/14/15    Entered: 05/14/15 12:25:53    Page 98 of
109

Cathrine M. Castaldi
Brown Rudnick LLP
2211 Michelson Drive, Suite 700
Irvine, California. 92612
Tel. 949-752-7100
Telephone: (949) 752-7100
Facsimile: (949) 252-1514
Email: ccastaldi@brownrudnick.com

and

Office of the United States Trustee
United States Department of Justice
Attn.: John S. Wesolowski
280 S. First Street, Suite 268
San Jose, CA 95113-0002
Telephone: (408) 535-5525
Facsimile: (408) 535-5532
Email: john.wesolowski@usdoj.gov

Objections to Confirmation of the Plan are governed by Bankruptcy Rule 9014.

## 18.2    **Requirements for Confirmation of the Plan.**

At the Confirmation Hearing, the Bankruptcy Court must confirm the Plan if it determines that all of the requirements of Section 1129 of the Bankruptcy Code have been satisfied.  Applicable requirements are as follows:

(1)    The Plan complies with the applicable provisions of the Bankruptcy Code;

(2)    The Plan Proponents have complied with the applicable provisions of the Bankruptcy Code;

(3)    The Plan has been proposed in good faith and not by any means forbidden by law;

(4)    Any payment made or to be made by the Debtors, or by a person issuing securities or acquiring property under the Plan, for services or for costs and expenses in or in connection with the Cases, or in connection with the Plan and incident to the Cases, has been approved by, or is subject to the approval of, the Court as reasonable;

(5)    The Plan Proponents have disclosed the identity and affiliations of any individual proposed to serve, after Confirmation of the Plan, as a director, officer, or voting trustee

TTH
H:\Client Matters\- F&R\ClearEdge\Pl\CE Inc\DS\5-14-15\v8.docx

92

AMENDED DISCLOSURE STATEMENT FOR JOINT
CHAPTER 11 PLAN OF DEBTORS AND OFFICIAL COMMITTEE
OF UNSECURED CREDITORS (DATED MAY 14, 2015)

Case: 14-44191    Doc# 665    Filed: 05/14/15    Entered: 05/14/15 12:23:33    Page 99 of
109

of the Debtors, an affiliate of the Debtors participating in a joint plan with the Debtors, or a successor to the Debtors under the Plan; and the appointment to, or continuance in, such office of such individual, is consistent with the interests of holders of Claims and Interests and with public policy; and the Debtors have disclosed the identity of any insider that will be employed or retained by the Liquidation Trust, and the nature of any compensation for such insider;

(6)     With respect to each class of impaired Claims or Interests, each holder of a Claim or Interest of such class either (a) has accepted the Plan, or (b) will receive or retain under the Plan on account of such Claim or Interest property of a value, as of the Effective Date of the Plan, that is not less than the amount that such holder would so receive or retain if the Debtors were liquidated on such date under chapter 7 of the Bankruptcy Code;

(7)     Subject to the "cramdown" provisions of the Bankruptcy Code discussed in Section 18.4 below and excepting classes of Interests which are presumed to reject the Plan, each class of Claims has accepted the Plan;

(8)     Except to the extent that the holder of a particular Claim has agreed to a different treatment of such Claim, the Plan provides that incurred, Allowed Administrative Claims will be paid in full on the Effective Date of the Plan and that Allowed Tax Claims will be paid in full over a period not longer than five (5) years from the Petition Date;

(9)     If a class of Claims is impaired under the Plan, at least one class of impaired Claims has accepted the Plan, determined without including any acceptance of the Plan by any insider holding a Claim of such class;

(10)    Confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtors or any successor to the Debtors under the Plan, unless such liquidation or reorganization is proposed in the Plan;

(11)    All fees payable under section 1930 of title 28, as determined by the Court at the hearing on confirmation of the Plan, have been paid or the Plan provides for the payment of all such fees on the Effective Date of the Plan; and

(12)    All transfers of property of the Plan are to be made in accordance with any applicable provisions of non-bankruptcy law that govern the transfer of property by a corporation or

TTH
H:\Client Matters\- F&R\ClearEdge\PI\CE Inc\DS\5-14-15\v8.docx
AMENDED DISCLOSURE STATEMENT FOR JOINT
CHAPTER 11 PLAN OF DEBTORS AND OFFICIAL COMMITTEE
OF UNSECURED CREDITORS (DATED MAY 14, 2015)

Case: 14-44191    Doc# 665    Filed: 05/14/15    Entered: 09/14/15 12:25:55    Page 100 of 109

trust that is not a moneyed, business, or commercial corporation or trust.

### 18.3 Compliance With Confirmation Requirements.

The Plan Proponents believe that the foregoing requirements have been or will be met prior to the Confirmation Hearing. Specifically, they believe: (1) the Plan is in the best interests of Creditors in that holders of all Allowed Claims will receive payments under the Plan having a present value as of the Effective Date of the Plan in amounts not less than the amounts likely to be received if the Debtors were liquidated in a case under chapter 7 of the Bankruptcy Code; and (2) the Plan will be accepted by sufficient votes in impaired Classes 5(a), 5(b) and 5(c) or may be confirmed under the cramdown standards of Bankruptcy Code Section 1129(b) even if sufficient votes are not received.

### 18.4 Cramdown.

In the event that any impaired class of Claims or Interests does not accept the Plan, the Bankruptcy Court may still confirm the Plan at the request of the proponents if, as to each impaired class which has not accepted the Plan, the Plan "does not discriminate unfairly" and is "fair and equitable." A plan of reorganization "does not discriminate unfairly" against a class if the plan allocates value to that class in a manner consistent with the treatment afforded to other classes with similar legal claims against the Debtors. "Fair and equitable" has different meanings for the holders of secured and unsecured claims, and for holders of interests.

With respect to a secured claim, "fair and equitable" means either: (a) the impaired secured creditor retains its liens to the extent of its allowed claim and receives deferred cash payments at least equal to the allowed amount of its claim with a present value as of the effective date of the plan at least equal to the value of such creditor's interest in the property securing its liens; (b) property subject to the lien of the impaired secured creditor is sold free and clear of that lien, with that lien attaching to the proceeds of the sale, and such lien proceeds are treated in accordance with clauses (a) or (c) hereof; or (c) the impaired secured creditor realizes the "indubitable equivalent" of its claim under the plan.

With respect to an unsecured claim, "fair and equitable" means either: (a) each impaired unsecured creditor receives or retains property of a value equal to the amount of its allowed claim; or

TTH
H:\Client Matters\- F&R\ClearEdge\PI\CE Inc\DS\5-14-15\v8.docx

94

AMENDED DISCLOSURE STATEMENT FOR JOINT
CHAPTER 11 PLAN OF DEBTORS AND OFFICIAL COMMITTEE
OF UNSECURED CREDITORS (DATED MAY 14, 2015)

Case: 14-44191    Doc# 665    Filed: 05/14/15    Entered: 05/14/15 12:25:55    Page 101
of 109

(b) the holders of claims and interests that are junior to the claims of the dissenting class will not receive any property under the plan.

With respect to a class of interests, "fair and equitable" means either: (a) the plan provides that each holder of an interest of such class receive or retain on account of such interest property of a value, as of the effective date of the plan, equal to the greatest of the allowed amount of any fixed liquidation preference to which such holder is entitled, any fixed redemption price to which such holder is entitled, or the value of such interest; or (b) the holder of any interest that is junior to the interests of such Class will not receive or retain any property under the plan on account of such junior interest.

Holders of Interests in Classes 6(a), 6(b) and 7 are impaired and presumed to reject the Plan. However, the Plan Proponents believe that the Plan (a) does not discriminate unfairly and (b) is fair and equitable with respect to both classes. In the event that impaired Classes 5(a), 5(b) and 5(c) reject the Plan, the Bankruptcy Court will determine at the Confirmation Hearing whether the Plan is fair and equitable and does not discriminate unfairly against such classes, in addition to Classes 6(a), 6(b) and Class 7.

## ARTICLE XIX.

## BEST INTERESTS TEST

The Bankruptcy Court must independently determine that the Plan is in the best interest of all classes of Creditors and Interest holders. The "best interests" test requires that a plan provide to each dissenting member of each impaired Class a recovery that has a present value at least equal to the present value of the distribution which each such Creditor or Interest holder would receive if the Debtors were liquidated under chapter 7 of the Bankruptcy Code.

### 19.1 **Liquidation Under Chapter 7**

In performing this analysis, the Bankruptcy Court must determine the amount that would be generated from a chapter 7 liquidation of the Debtors' assets after deducting the cost of liquidation. The costs of liquidation in chapter 7 would include, among other things, the chapter 7 trustee's commissions, its expenses, fees for counsel and other professionals retained by it, and Administrative Claims. In addition to liquidating the Debtors' assets, the chapter 7 trustee would

TTH
H:\Client Matters\- F&R\ClearEdge\PI\CE Inc\DS\5-14-15\v8.docx
CHAPTER 11 PLAN OF DEBTORS AND OFFICIAL COMMITTEE
OF UNSECURED CREDITORS (Dated MAY 14, 2015)
AMENDED DISCLOSURE STATEMENT FOR JOINT

also need to decide whether to litigate certain claims and possibly pursue other litigation matters. Generally, no distribution is made in a chapter 7 case until all assets of the bankruptcy estate and all claims have been liquidated, a process that often can take many months and sometimes years. This delay could further impair the value of any Distribution made to holders of Claims under a chapter 7 liquidation. As detailed below, in these Cases, due to the complexity of the Purchase Transaction and the UTC Transaction, and the Debtors' products, operations and corporate and financial structure, the delay and expense required by a trustee in a chapter 7 liquidation is estimated to be substantial.

Furthermore, should these Cases be converted to chapter 7, absent substantive consolidation as proposed by the Plan, potentially three (3) separate chapter 7 trustees would be appointed to administer the separate Estates, resulting in even more substantial administrative expenses. Were a chapter 7 trustee to determine that substantive consolidation is appropriate, there are certain procedures that the chapter 7 trustee would have to follow in order to obtain the same results achieved by the Plan. At a minimum, a chapter 7 trustee would have to file and serve a motion upon all interested parties. Should that motion be contested, if, for example, one of the appointed trustees disagreed with the appropriateness of substantive consolidation, the chapter 7 estates would bear the costs of litigating the motion and negotiating with parties before consolidation could occur.

On the other hand, here, the proposed Liquidation Trustee was selected by the Committee and approved by the Debtors after careful consideration of several potential candidates. The Plan Proponents have conferred with the proposed Liquidation Trustee. They will continue to confer with him leading up to the hearing on Confirmation and familiarized him with the background of the Bankruptcy Cases and the Debtors' operations. They are confident that he will be able to fulfill the obligations under and execute the terms of the Plan in an efficient, timely and competent manner. The Plan Proponents are comfortable with the Liquidation Trustee and are willing to serve, to a reasonable extent, as an informational resource to the Liquidation Trust as needed. Confirmation of the Plan will enable the Liquidation Trustee to collect and distribute all liquidation proceeds which the Plan Proponents believe will result in the highest and best recovery for Creditors. By proceeding as soon as possible after the Effective Date to liquidate the remaining assets and distribute the

TTH
H:\Client Matters\- F&R\ClearEdge\PI\CE Inc\DS\5-14-15\v8.docx

96

AMENDED DISCLOSURE STATEMENT FOR JOINT
CHAPTER 11 PLAN OF DEBTORS AND OFFICIAL COMMITTEE
OF UNSECURED CREDITORS (DATED MAY 14, 2015)

Case: 14-44191    Doc# 665    Filed: 05/14/15    Entered: 05/14/15 12:25:55    Page 103
of 109

Estates' cash proceeds in accordance with the Plan, the Plan Proponents believe that the Liquidation Trust, with the assistance of the Debtors and the Committee, as needed, will be able to effect the Distributions to Creditors contemplated under the Plan, sooner and at a lesser expense.

Further, the Purchase Transaction and the UTC Transaction, and the attendant tax and financial issues emanating therefrom, are complex. Similarly, the Debtors' products, prior operations, business relationships, finances and corporate structure are multifaceted and complex. Moreover, the Plan Proponents have accomplished a substantial amount in terms of administering the Estates, and reconciling, negotiating and disputing Claims during the Bankruptcy Cases. They possess a wealth of distinct and specialized knowledge with respect to the issues, retained professionals, parties in interest and external factors with respect to all resolved, pending and outstanding matters. All such matters require familiarity with the Company in order to maximize the Estates and the potential return to Creditors. Examples of such matters include, without limitation:

- Property, sales, use, payroll, income and other taxes, including the 2013 and 2014 income taxes, tax issues related to the UTC acquisition and the Purchase Transaction, and audits by taxing authorities, among other issues;

- Remaining ESAs and the terms and conditions, and rights and responsibilities thereunder;

- Potential third parties which can be resources in relation to servicing remaining Fuel Cells and/or assuming remaining ESAs;

- Remaining Fuel Cells and the infrastructure, permitting and equipment required to continue operations, and the knowledge of the procedures and methodologies for shutdown and removal;

- The Verizon Agreements and the related properties and purported liens;

- Outstanding accounts receivables including the receivable owed by SCAQMD;

- Remaining Lenders and the related financing arrangements;

- The WARN Action and all related issues; and

- Remaining subsidiary and affiliate companies, including foreign offices, and

TTH
H:\Client Matters\- F&R\ClearEdge\PI\CE Inc\DS\5-14-15\v8.docx
AMENDED DISCLOSURE STATEMENT FOR JOINT
CHAPTER 11 PLAN OF DEBTORS AND OFFICIAL COMMITTEE
OF UNSECURED CREDITORS (DATED MAY 14, 2015)

Case: 14-44191    Doc# 665    Filed: 05/14/15    Entered: 05/14/15 12:25:55    Page 104 of 109

their financial and operational statuses.

The Plan Proponents believe that completing the transition of the institutional knowledge to the Liquidation Trustee will be relatively expedient due to the relationship and rapport they expect to have developed with him by the Effective Date.  Furthermore, the Plan Proponents believe that the Debtors' Professionals and the Committee's Professionals, some of whose services will be necessary after the Effective Date, in addition to Creditors and other parties and interest, will be more willing to work with and/or cooperate with the Liquidation Trustee as the selected Plan representative of the Plan Proponents.  Through management by the Liquidation Trustee who possesses institutional knowledge and access to resources familiar with the Debtors' products and operations, the Estates' affairs will be proficiently wound down and the value of their assets will be maximized in the most cost-effective manner.

The net proceeds of the Liquidation Trust Assets will be distributed in accordance with the priority scheme set forth in the Bankruptcy Code.  Any assets not liquidated prior to Confirmation of the Plan will be liquidated by the Liquidation Trust, acting through the Liquidation Trustee. Therefore, the Debtors believe that liquidation under the Plan will achieve at least the same results as would occur in the conversion of the Cases to chapter 7.  Under the Plan, the result can be achieved without the duplication and incurrence of substantial administrative costs that would result from the appointment of a chapter 7 Trustee and the employment of additional professional persons, and the delay attendant with the administration of the assets in chapter 7.  When factoring in the contribution from the Plan Investors, it is evident that liquidation in chapter 11 under the Plan will result in a more favorable return to those Creditors who are impaired under the Plan, than what they what they would receive if the liquidation was accomplished in chapter 7 cases.

19.2    **Liquidation Analysis**

The Debtors estimate that the ultimate Distribution to Creditors in Classes 5(a), 5(b) and 5(c) will range from 2.9% to 8.6% on each Allowed Claim.  A summary of estimated assets and claims which factor into this estimate is attached hereto as **Exhibit "C"**.  Because of the abundance of unknown variables and contingencies which remain in the Cases (including, for example, the Income Tax Liability, collections on accounts receivables, the return of and liquidation of Assets, the

TTH
H:\Client Matters\- F&R\ClearEdge\PI\CE Inc\DS\5-14-15\v8.docx

98

AMENDED DISCLOSURE STATEMENT FOR JOINT
CHAPTER 11 PLAN OF DEBTORS AND OFFICIAL COMMITTEE
OF UNSECURED CREDITORS (DATED MAY 14, 2015)

Case: 14-44191    Doc# 665    Filed: 05/14/15    Entered: 09/14/15 12:25:55    Page 105
of 109

prosecution of Retained Claims, if any, all as discussed herein), which are largely dependent on factors not within the control of the Liquidation Trust, and which may not be resolved for several years, this estimate represents only the Plan Proponents' good faith approximation based on current information. It also is founded on numerous assumptions including, among other things, the following:

- The net proceeds from the liquidation of remaining assets, including collection on the accounts receivables but excluding Retained Claims, which are not quantifiable as the decision whether or not it is cost-effective to prosecute any such Retained Claims will be made by the Liquidation Trustee) will approximate $700,000;

- Expenses for administration of the Estates which includes, without limitation: (1) tax liabilities which may become due after the Effective Date, (2) compensation of employees, the Liquidation Trustee and the Oversight Committee, (3) compensation of professional fees, (4) United States Trustee fees, and (5) payment of miscellaneous expenses, fall within a range of $800,000 to $1.0 million;

- Administrative Claims, excluding Fee Claims, total between $1,330,000 to $1,430,000;

- Fee Claims total between $1.9 million to $2.0 million;

- Allowed Tax Claims total between $1.5 million and $1.7 million;

- Allowed Secured Claims total between $109,000 and $178,000;

- Allowed Priority Claims total between $2.2 million and $3.7 million;

- Allowed Administrative Convenience Claims total between $600,000 and $1.3 million; and

- Allowed General Unsecured Claims in Class 5 total around $57.5 million.

These are estimates only, and the actual numbers underlying the above assumptions may be higher or lower and could be considerably higher or lower, and therefore, the ultimate Distribution could fall significantly outside of the estimated range. The Plan Proponents have not concluded a

TTH
H:\Client Matters\- F&R\ClearEdge\PI|CE Inc\DS\5-14-15\v8.docx

99

AMENDED DISCLOSURE STATEMENT FOR JOINT
CHAPTER 11 PLAN OF DEBTORS AND OFFICIAL COMMITTEE
OF UNSECURED CREDITORS DATED MAY 14, 2015)

Case: 14-44191    Doc# 665    Filed: 05/14/15    Entered: 09/14/15 12:25:55    Page 106 of 109

review of the entire body of Claims, and the Liquidation Trust will continue and conduct its own review and examination of Claims. The Plan Proponents anticipate that many objections to Disputed Claims will be filed, the outcomes of which will affect the amounts available for Distribution. Moreover, as discussed above and set forth in Article XV, there are numerous other contingencies that will ultimately affect the outcome of these Cases.

## ARTICLE XX.

## FEASIBILITY

The Bankruptcy Court must find that Confirmation of the Plan is not likely to be followed by the liquidation or the need for further financial reorganization of the Debtors unless such liquidation or reorganization is contemplated by the Plan itself. The Plan contemplates the final liquidation and Distribution of the Liquidation Trust Assets, and the liquidation proceeds will be expended to execute the liquidation and Distribution process described in the Plan.

## ARTICLE XXI.

## POST-CONFIRMATION MANAGEMENT

On the Effective Date, the Debtors' assets will vest in the Liquidation Trust which will be managed by the Liquidation Trustee Peter S. Kravitz, Esq. who will also serve as the Responsible Person. Mr. Kravitz earned his juris doctorate degree from Rutgers University Law School in 1995 and previously was a partner at Venable, LLP. Currently, he is a principal at the consulting firm of Province, Inc., which specializes in financial advisory, corporate reorganization, and trustee-related services. Mr. Kravitz has served as Liquidation Trustee in a number of large chapter 11 bankruptcy cases, including Fleetwood Enterprises, Inc., Landsource LLC, Coldwater Creek, Inc., and Friendly's Ice Cream, LLC. As set forth at Section 7.4, Mr. Kravitz will be compensated on a decreasing scale based on the duration of his engagement as follows: (i) for the first six (6) months of the engagement, fifteen thousand dollars ($15,000) per month; (ii) for months seven (7) through twelve (12) of the engagement, twelve thousand five hundred dollars ($12,500) per month; (iii) for months thirteen (13) through eighteen (18) of the engagement, ten thousand dollars ($10,000) per month; and (iv) thereafter, in an amount to be determined by the Oversight Committee, such amount to be subject to review by the Oversight Committee every six (6) months for the duration of the

TTH
H:\Client Matters\- F&R\ClearEdge\PI\CE Inc\DS\5-14-15\v8.docx

100

AMENDED DISCLOSURE STATEMENT FOR JOINT
CHAPTER 11 PLAN OF DEBTORS AND OFFICIAL COMMITTEE
OF UNSECURED CREDITORS DATED (MAY 14, 2015)

Case: 14-44191    Doc# 665    Filed: 05/14/15    Entered: 05/14/15 12:25:55    Page 107 of 109

engagement.

## ARTICLE XXII.

## PLAN INTERPRETATION

The headings contained in the Plan are for convenience of reference only and do not limit or otherwise affect in any way the meaning or interpretation of the Plan. All references in the Plan to the singular are to be construed to include references to the plural and vice versa. All references in the Plan to any one of the masculine, feminine or neuter genders will include references to both other such genders. All Exhibits attached hereto are, by this reference, hereby incorporated herein and into the Plan. All references in the Plan to a Section or an Article means the appropriately numbered Section or Article of the Plan. Whenever the Plan uses the term "including," such reference means "including, but not limited to."

Dated: May 14, 2015                     CEP REORGANIZATION, LLC


                                        By: _/s/ Gloria Fan_____
                                            Gloria Fan
                                            Chief Financial Officer


Dated: May 14, 2015                     CEP REORGANIZATION, INC.


                                        By: _/s/ Gloria Fan_____
                                            Gloria Fan
                                            Chief Financial Officer


Dated: May 14, 2015                     CEP SERVICE REORGANIZATION, LLC


                                        By: _/s/ Gloria Fan_____
                                            Gloria Fan
                                            Responsible Person


Dated: May 14, 2015                     COMMITTEE


                                        By: _/s/ Cathrine M. Castaldi_____
                                            Cathrine M. Castaldi
                                            Authorized Committee Representative

/ / /

TTH
H:\Client Matters\- F&R\ClearEdge\PI\CE Inc\DS\5-14-15\v8.docx

101

AMENDED DISCLOSURE STATEMENT FOR JOINT
CHAPTER 11 PLAN OF DEBTORS AND OFFICIAL COMMITTEE
OF UNSECURED CREDITORS [DATED MAY 14, 2015)

Case: 14-44191    Doc# 665    Filed: 05/14/15    Entered: 05/14/15 12:25:03    Page 108
of 109

**DORSEY & WHITNEY LLP**

By: */s/ Stephen T. O'Neill*
    Stephen T. O'Neill
    Attorneys for Debtors

**BROWN RUDNICK LLP**

By: */s/ Cathrine M. Castaldi*
    Cathrine M. Castaldi
    Attorneys for Official Committee Of
    Unsecured Creditors

TTH
H:\Client Matters\- F&R\ClearEdge\PI\CE Inc\DS\5-14-15\v8.docx

102

AMENDED DISCLOSURE STATEMENT FOR JOINT
CHAPTER 11 PLAN OF DEBTORS AND OFFICIAL COMMITTEE
OF UNSECURED CREDITORS (DATED MAY 14, 2015)

Case: 14-44191    Doc# 665    Filed: 05/14/15    Entered: 05/14/15 12:25:55    Page 109
of 109